1  KEKER, VAN NEST & PETERS LLP
   JOHN W. KEKER - # 49092
2  jkeker@keker.com
   ELLIOT R. PETERS - # 158708
3  epeters@keker.com
   ELIZABETH K. MCCLOSKEY - # 268184
4  emccloskey@keker.com
   NICHOLAS S. GOLDBERG - # 273614
5  ngoldberg@keker.com
   633 Battery Street
6  San Francisco, CA 94111-1809
   Telephone:    415 391 5400
7  Facsimile:    415 397 7188

8  Attorneys for Defendant
   CHRISTOPHER LISCHEWSKI
9

10                UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13  UNITED STATES OF AMERICA,            Case No. 3:18-cr-00203-EMC

14               Plaintiff,              **DEFENDANT CHRISTOPHER
                                         LISCHEWSKI'S MOTION TO COMPEL
15       v.                              COMPLIANCE WITH THE
                                         GOVERNMENT'S OBLIGATIONS
16  CHRISTOPHER LISCHEWSKI,              UNDER BRADY, GIGLIO, THE JENCKS
                                         ACT, AND FEDERAL RULE OF
17               Defendant.              CRIMINAL PROCEDURE 16**

18                                       Date:      April 17, 2019
                                         Time:      2:30 p.m.
19                                       Dept.      Courtroom 5 - 17th Floor
                                         Judge:     Hon. Edward M. Chen
20
                                         Date Filed: May 16, 2018
21
                                         Trial Date:  November 4, 2019
22

23
              **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**
24

25

26

27

28
   ───────────────────────────────────────────────────────────
   DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION TO COMPEL COMPLIANCE WITH THE
   GOVERNMENT'S OBLIGATIONS UNDER BRADY, GIGLIO, THE JENCKS ACT, AND
   FEDERAL RULE OF CRIMINAL PROCEDURE 16
   Case No. 3:18-cr-00203-EMC
   1325232

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................1

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL BACKGROUND .......................................................................................3

        A.      The government's cooperating witnesses develop their testimony after
                dozens of meetings with prosecutors. ............................................................3

        B.      The government relies on incomplete summaries of its meetings with
                cooperating witnesses and their counsel to defend the barebones
                indictment. .......................................................................................................5

        C.      The government denies Mr. Lischewski's requests for production of Brady
                and Giglio materials. .......................................................................................6

        D.      The government's production is incomplete and deficient. ..............................8

III.    ARGUMENT ...............................................................................................................9

        A.      The Court should order the government to produce information related to
                the negotiation of plea and amnesty agreements for cooperating witnesses. ........11

        B.      The Court should order the government to produce original and
                contemporaneous notes from attorney proffers and witness interviews. ..............13

        C.      The Court should order the government to produce grand jury subpoenas,
                civil investigative demands, and related requests and correspondence. ...............16

IV.     CONCLUSION ...........................................................................................................16

i

DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION TO COMPEL COMPLIANCE WITH THE
GOVERNMENT'S OBLIGATIONS UNDER BRADY, GIGLIO, THE JENCKS ACT, AND
FEDERAL RULE OF CRIMINAL PROCEDURE 16
Case No. 3:18-cr-00203-EMC

1325232

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Brady v. Maryland*,
    373 U.S. 83 (1963)...................................................................................................*passim*

*Carriger v. Stewart*,
    132 F.3d 463 (9th Cir. 1997) .................................................................................10

*Giglio v. United States*,
    405 U.S. 150 (1972).............................................................................................*passim*

*Paradis v. Arave*,
    240 F.3d 1169 (9th Cir. 2001) ...............................................................................13

*United States v. Acosta*,
    357 F. Supp. 2d 1228 (D. Nev. 2005) ....................................................................9

*United States v. AU Optronics Corp.*,
    Case No. C 09-0110 SI, 2011 WL 6778520 (N.D. Cal. Dec. 23, 2011)..................11

*United States v. Bagley*,
    473 U.S. 667 (1985)...............................................................................................10

*United States v. Bernal-Obeso*,
    989 F.2d 331 (9th Cir. 1993) ..................................................................................9

*United States v. Buske*,
    Case No. 09-CR-65, 2011 WL 2912707 (E.D. Wis. July 18, 2011)..................11, 12

*United States v. Park*,
    319 F. Supp. 2d 1177 (D. Guam 2004)..............................................................14, 15

*United States v. Price*,
    566 F.3d 900 (9th Cir. 2009) ...........................................................9, 10, 13, 15

*United States v. Service Deli Inc.*,
    151 F.3d 938 (9th Cir. 1998) ...........................................................13, 14, 15

*United States v. Stein*,
    488 F. Supp. 2d 350 (S.D.N.Y. 2007)....................................................................11

*United States v. Sudikoff*,
    36 F. Supp. 2d 1196 (C.D. Cal. 1999) ...............................................................*passim*

DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION TO COMPEL COMPLIANCE WITH THE
GOVERNMENT'S OBLIGATIONS UNDER BRADY, GIGLIO, THE JENCKS ACT, AND
FEDERAL RULE OF CRIMINAL PROCEDURE 16
Case No. 3:18-cr-00203-EMC

1325232

**Federal Statutes**

18 U.S.C. § 3500.................................................................................................................1

**Rules**

Fed. R. Crim. P. 16 ...................................................................................................10, 16

**Other Authorities**

Department of Justice, Frequently Asked Questions About the Antitrust Division's
    Leniency Program and Model Leniency Letters.......................................................4

1325232

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN THIS ACTION:**

**PLEASE TAKE NOTICE** that on April 17, 2019, at 2:30 p.m. or as soon thereafter as counsel may be heard in Courtroom 5, 17th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Christopher Lischewski will and hereby does move the Court, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), the Jencks Act, 18 U.S.C. § 3500, and Rule 16 of the Federal Rules of Criminal Procedure, for an order requiring the government to produce: (1) information related to the negotiation of plea and amnesty agreements with the government's cooperating witnesses, including any draft agreements, any communications between the government and the witness or counsel for the witness, any notes related to those communications, and any other promises, consideration, or inducements made to the witness directly or indirectly concerning those negotiations or agreements; (2) original and contemporaneous notes from all government attendees of conversations with witnesses and conversations with counsel for witnesses; and (3) grand jury subpoenas, civil investigative demands, and related requests and correspondence.

This motion is based upon the instant notice, the following Memorandum of Points and Authorities, the accompanying Declaration of Nicholas S. Goldberg and the exhibits attached thereto, oral argument, and the pleadings and exhibits on file with the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The government's case against Defendant Christopher Lischewski is based, in significant part, on the testimony of cooperating witnesses who, in exchange for lighter sentences or total amnesty, will ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The discovery provided to date shows that cooperating witnesses' testimony evolved over the course of many months, during which first the lawyers for the witnesses "proffered," then engaged in a dialogue with the government concerning these "proffers,"

followed by actual interviews of the witnesses, leading to cooperation agreements ███████

████████████████████████████████████████████████████  The evolution of the

government's cooperating witnesses' testimony and the motivation for it is critically important to

the defense.  When Mr. Lischewski is finally able to see the full picture, he believes the

cooperating witnesses' testimony will prove unworthy of belief beyond a reasonable doubt.

Despite their critical importance, the government has refused to produce documents

concerning the evolution of negotiation of the plea and amnesty agreements with its cooperators,

instead claiming it has satisfied its discovery obligations because it has produced the final

agreements.  But, under *Brady*, *Giglio*, and compelling trial court case law, the government is

required to produce "any information in its possession that reveals the process by which" the plea

and amnesty agreements were reached because such information "may 'cast a shadow' on an

accomplice witness's credibility in a manner that disclosure of only the [final] agreement itself

would not accomplish."  *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1203 (C.D. Cal. 1999).

The government also has refused to provide full and transparent disclosure of the

government's "proffer" sessions with counsel and subsequent face to face meetings with

cooperating witnesses—as *Brady, Giglio*, and the Jencks Act require—and has instead produced

sanitized typewritten summaries of "portions" of these meetings.  The summaries at issue in this

motion are ***not*** FBI 302s prepared contemporaneously by trained law enforcement agents.  They

are ***not*** original contemporaneous notes and appear to have been created well after the meetings

occurred.  Many of them do not purport to record what was actually said during any particular

conversation, and instead repeatedly state ████████████████████████.  In other words,

they appear to have been carefully crafted after the fact to avoid clear attribution to the witness's

agent or to the witness.  This substantially limits their utility as impeachment evidence at trial,

and they appear to have been drafted this way precisely for this purpose, in abrogation of the

government's constitutional duties under *Brady, Giglio*, and their progeny.

Put simply, *Brady* and *Giglio* require the government to produce all information that is

favorable to Mr. Lischewski, including information that undercuts the credibility of government

DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION TO COMPEL COMPLIANCE WITH THE
GOVERNMENT'S OBLIGATIONS UNDER BRADY, GIGLIO, THE JENCKS ACT, AND
FEDERAL RULE OF CRIMINAL PROCEDURE 16
Case No. 3:18-cr-00203-EMC

1325232

witnesses.  The government has refused to do so.  Mr. Lischewski therefore seeks to compel the government's production of three categories of documents: (1) information related to the negotiation of plea and amnesty agreements for cooperating witnesses, (2) contemporaneous, original, and complete notes from the government's meetings with cooperating witnesses and their counsel, and (3) grand jury subpoenas, civil investigative demands, and related requests and correspondence.

## II.   FACTUAL BACKGROUND

### A.   The government's cooperating witnesses develop their testimony after dozens of meetings with prosecutors.

The discovery produced thus far shows that the testimony of the government's cooperating witnesses is the product of *over 100* meetings with prosecutors, meetings which have led to significant shifts in what the government's cooperators claim to be the truth.[1]  The government began conducting attorney proffer sessions with counsel for Bumble Bee and Chicken of the Sea ("COSI") as early as 2015, and with counsel for StarKist and individual cooperating witnesses as early as 2016—long before plea and amnesty agreements had been reached, ███████████████████████████████████.  Taking but a few examples from the discovery provided:

Kenneth Worsham (Fmr. Bumble Bee Senior Vice President of Trade Marketing):
Mr. Worsham and his attorneys met with the government *at least 28 times*, ██████████ ████████████████████████████.  Mr. Worsham's attorneys began meeting with the prosecution well before he pled guilty, and they have met with the government at least 21 times since September 2016.  Mr. Worsham personally met with prosecutors 7 times ██████████ ████████.

Walter Scott Cameron (Fmr. Bumble Bee Senior Vice President of Sales):  Mr. Cameron and his attorneys met with the government *at least 18 times* ██████████████████████

---

[1] For purposes of this motion, "meetings" include in-person, telephonic, and any other direct communications.

3

1     ██████ .  Mr. Cameron's attorneys spoke directly with the government 4 separate times before

2 Mr. Cameron entered into his final plea agreement on November 7, 2016.  The government's

3 meetings with Mr. Cameron and his attorneys did not end there.  The government interviewed

4 Mr. Cameron at least 5 separate times, and thereafter met with Mr. Cameron's attorneys 9 more

5 times, ██████████████████████ .

6          Mr. Worsham and Mr. Cameron are the government's key witnesses against

7 Mr. Lischewski.  It appears to have taken a great deal of time and effort with these two violators

8 of the antitrust laws to arrive at what the government will contend at trial is the truth about

9 Mr. Lischewski.  There is precious little corroboration for what they will say.  Mr. Lischewski is

10 entitled to know with as much specificity as possible what was said back and forth during the

11 nearly fifty occasions in which Mr. Worsham, Mr. Cameron, and their agents discussed their

12 testimony with these prosecutors.  To date, the government has studiously avoided any such

13 candid disclosure.

14     <u>Chicken of the Sea</u>:  COSI is the amnesty applicant in this case.[2]  Pursuant to the terms of

15 its amnesty agreement with the government, ███████████████████████

16 ████████████████████████████████████████

17 ████████████████████████████████████████

18 ████████████████████████████████████████

19 ███████████████████████████████████████

20 ██████████████████████[4]  To obtain amnesty, COSI's lawyers have met with

21 the government **at least 36 times**, including 8 separate attorney proffer sessions over a nine-month

22
23 [2] The Antitrust Division employs a "Leniency Program"—commonly referred to as an "amnesty program"—under which "[t]he first corporate or individual conspirator to confess participation in an antitrust crime, fully cooperate with the Division, and meet all other conditions that the Corporate Leniency Policy or the Leniency Policy for Individuals specifies receives leniency for the reported antitrust crime."  *See* Department of Justice, Frequently Asked Questions About the Antitrust Division's Leniency Program and Model Leniency Letters (last updated Jan. 26, 2017), *available at* https://www.justice.gov/atr/page/file/926521/download.

24
25
26 [3] *See* Declaration of Nicholas S. Goldberg ("Goldberg Decl.") at ¶ 2, Ex. A, COSI Agmt. at 3360-61.

27
28 [4] *Id.* at 3363.

DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION TO COMPEL COMPLIANCE WITH THE
GOVERNMENT'S OBLIGATIONS UNDER BRADY, GIGLIO, THE JENCKS ACT, AND
FEDERAL RULE OF CRIMINAL PROCEDURE 16
Case No. 3:18-cr-00203-EMC

1325232

period *before* the amnesty agreement was entered on April 21, 2016.  Additionally, COSI's witnesses, such as former COSI Chief Executive Officer Shue Wing Chan, met with the government at least *15 times* ▮▮▮▮▮▮▮▮▮.

    <u>Stephen Hodge (Fmr. StarKist Senior Vice President of Sales)</u>:  Mr. Hodge and his attorneys met with the government *at least 7 times* ▮▮▮▮▮▮▮▮▮.

    **B.**    **The government relies on incomplete summaries of its meetings with cooperating witnesses and their counsel to defend the barebones indictment.**

    On May 16, 2018, the grand jury returned the brief one-count indictment charging Mr. Lischewski.  To ascertain the factual basis for the charges, nine days after his indictment, Mr. Lischewski requested a bill of particulars and discovery from the government, including information and documents related to witness statements and "handwritten and other informal or rough notes" regarding the same.[5]

    The government forcefully and successfully resisted supplying a bill of particulars by relying on its production of typewritten summaries of witness interviews to provide the key information.  These typewritten summaries ("witness summaries") are not original notes of the government's meetings with witnesses and they do not appear to have been prepared contemporaneously, or anything close.  On June 6, 2018, during the first status conference, the government emphasized that these "witness statements" are "the backbone to the government's case."  *See* Goldberg Decl., Ex. C, Transcript (June 6, 2018), at 3:24-4:3.  The government claimed that these "very highly probative set of witness interview reports" compensated for the lack of detail in the indictment, *id.* at 17:24-25, and represented that "the statements provided by witnesses . . . will answer the question that defense counsel is raising," *id.* at 21:2-8.

    The government doubled down on the importance of the witness summaries in subsequent hearings, reiterating that it had provided discovery regarding "statements by the coconspirators, themselves, who were subject to daylong interviews," Goldberg Decl., Ex. D, Transcript (Sept. 5, 2018), at 10:17-22, and that the "detailed interview memoranda . . . goes through what the

---

[5] *See* Goldberg Decl. at ¶ 3, Ex. B, Letter from Hur to Wulff and Kumar (May 25, 2018).

witnesses will say in this case." *Id.*, Ex. E, Transcript (Oct. 24, 2018), at 23:24-25.  Indeed, in its

opposition to Mr. Lischewski's motion for a bill of particulars, the government devoted an entire

section of its brief to an argument that "full discovery obviates the need for a bill of particulars."

*See* ECF 71, Opp'n to Mot. for Bill of Particulars, at 14-17 (Oct. 10, 2018).  The government's

opposition further acknowledged that the witness summaries are relevant to Mr. Lischewski's

"impeachment strategy for trial."  *Id.* at 15.  The Court denied Mr. Lischewski's motion for a bill

of particulars, relying on the government's transmission of a September 12, 2018 "detailed letter"

that includes "factual citations."  ECF 82, Criminal Minutes (Oct. 24, 2018), at 1.  The

September 12, 2018 letter on which the Court relied contains eight citations to witness

summaries.[6]

**C.   The government denies Mr. Lischewski's requests for production of *Brady* and *Giglio* materials.**

On the heels of the government's repeated emphasis on witness summaries and the

Court's denial of his request for particularization, Mr. Lischewski reiterated his requests for full

discovery of statements by the government's cooperating witnesses and their counsel.  On

November 14, 2018, counsel for Mr. Lischewski sent a letter to the government outlining specific

categories of requested discovery, including: (1) documents reflecting the government's

communications with witnesses and counsel that would encompass oral and written promises, and

negotiations of plea and amnesty agreements with the government's cooperating witnesses;

(2) documents relating to proffer sessions by potential government witnesses and their counsel,

including the government's original and complete notes of those meetings; and (3) production of

---

[6] *See* Goldberg Decl. at ¶ 7, Ex. F, Letter from San Francisco Office of the Antitrust Division to Peters (Sept. 12, 2018).

DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION TO COMPEL COMPLIANCE WITH THE
GOVERNMENT'S OBLIGATIONS UNDER BRADY, GIGLIO, THE JENCKS ACT, AND
FEDERAL RULE OF CRIMINAL PROCEDURE 16
Case No. 3:18-cr-00203-EMC

1325232

1  grand jury subpoenas, civil investigative demands, and related requests and correspondence.[7]

2  In response, on November 30, 2018, the government acknowledged its duty to "embrace

3  [its] obligations under *Brady* and *Giglio*" and the Jencks Act, but rebuffed Mr. Lischewski's

4  requests, including Mr. Lischewski's request for documents revealing plea and amnesty

5  agreement negotiations.[8]  The government claimed that, because it had produced final versions of

6  plea and amnesty agreements for its cooperating witnesses, the government was not required to

7  produce documents reflecting the negotiation of those agreements.  The government nonetheless

8  indicated that it would review "factual attorney proffers" it had received for potentially

9  discoverable material and would produce that material on a rolling basis.[9]  However, as discussed

10  further below, the government's subsequent production of attorney proffer information in the

11  form of witness summaries was incomplete and deficient.

12  From December 2018 through February 2019, Mr. Lischewski and the government

13  exchanged several letters regarding Mr. Lischewski's outstanding requests and the government's

14  unduly narrow interpretation of its obligation to produce *Brady*, *Giglio*, and Jencks Act material,

15  but the government refused to budge.[10]  In addition, the government refused to provide any

16  substantive response to Mr. Lischewski's questions aimed at evaluating the completeness of the

17  government's production of the witness summaries of "portions" of meetings with counsel for the

18  government's cooperating witnesses, rather than the complete set of original notes from those

19  meetings.  Counsel for Mr. Lischewski repeatedly asked the government to explain, "What

20  [7] *See* Goldberg Decl. at ¶ 8, Ex. G, Letter from Peters to Wulff, Kumar, and Schupanitz (Nov. 14,
21  2018).  In addition, Mr. Lischewski requested scripts the government used in meetings with
   witnesses and their counsel, as well as information regarding the government's effort not to hear
22  and record exculpatory evidence—two categories of information for which the government
   subsequently denied existence.  Mr. Lischewski also requested the date of and participants in
23  meetings with witnesses and/or their counsel, which the government later represented had already
   been fully produced.  In reliance on the government's representations, Mr. Lischewski does not
24  currently seek production of the foregoing categories of materials.

25  [8] *See* Goldberg Decl. at ¶ 9, Ex. H, Letter from Kumar to Peters (Nov. 30, 2018).

   [9] *See id.*
26
   [10] *See* Goldberg Decl. at ¶ 10, Ex. I, Letter from Peters to Wulff, Kumar, and Schupanitz (Dec.
27  21, 2018); *id.* at ¶ 11, Ex. J, Letter from Kumar to Peters (Jan. 22, 2019); *id.* at ¶ 12, Ex. K, Letter
   from Goldberg to Kumar (Feb. 15, 2019); *id.* at ¶ 13, Ex. L, Letter from Kumar to Goldberg (Feb.
   22, 2019).

28

DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION TO COMPEL COMPLIANCE WITH THE
GOVERNMENT'S OBLIGATIONS UNDER BRADY, GIGLIO, THE JENCKS ACT, AND
FEDERAL RULE OF CRIMINAL PROCEDURE 16
Case No. 3:18-cr-00203-EMC

portions of your notes did the government omit?  Why?  Who made this determination?  How?"[11]

But instead of answering these questions directly, the government responded with the circular

explanation that it had "exclude[d] material that is outside the scope of *Brady/Giglio* or Jencks."[12]

The government also continued to refuse any production of, or make available for inspection,

original, contemporaneous notes from those meetings.

### D.    The government's production is incomplete and deficient.

The government has refused to produce any draft plea and amnesty agreements or any

communications or documents related to the negotiation of these agreements with the

government's cooperating witnesses.[13]  Accordingly, Mr. Lischewski is in the dark as to the

motivating factors for key witnesses' testimony in this case.

For both attorney proffers and witness interviews, the government has withheld all

contemporaneous notes and has refused to produce notes taken by government attorneys during

these conversations.[14]  Instead, the government has produced witness summaries that appear to be

some sort of long-after-the-fact assemblage of notes authored by government paralegals.  *See,*

*e.g.,* Goldberg Decl. at ¶¶ 17-18, Exs. Q-R, Exemplar Witness Summaries for Attorney Proffers;

*id.* at ¶¶ 19-20, Exs. S-T, Exemplar Witness Summaries for Witness Interviews.  It is unclear

when, how, why, and who prepared these memoranda, and the government refused to explain any

---

[11] *See* Goldberg Decl. at ¶ 10, Ex. I, Letter from Peters to Wulff, Kumar, and Schupanitz (Dec. 21, 2018); *id.* at ¶ 11, Ex. J, Letter from Kumar to Peters (Jan. 22, 2019); *id.* at ¶ 12, Ex. K, Letter from Goldberg to Kumar (Feb. 15, 2019); *id.* at ¶ 13, Ex. L, Letter from Kumar to Goldberg (Feb. 22, 2019).

[12] *See* Goldberg Decl. at ¶ 13, Ex. L, Letter from Kumar to Goldberg (Feb. 22, 2019).

[13] ████████████████████████████████████████████████████  *See* Goldberg Decl. at ¶ 2, Ex. A, COSI Agreement, at ¶ 4.

[14] The government has ***not*** disputed that contemporaneous notes exist, and among its production the government included some documents labeled "handwritten notes," but the produced documents are typewritten.  Accordingly, the government has handwritten contemporaneous notes in its possession but instead of producing that evidence, it gave Mr. Lischewski typed witness summaries.

1325232

1   of those critical details.  Nor has the government explained what aspects of the conversations

2   were excluded from the memoranda.

3        For the attorney proffers in particular, the witness summaries contain additional

4   deficiencies.  They consist of some "factual information" from "portions" of the government's

5   notes, they are written in a stilted format to avoid direct attribution of factual assertions to counsel

6   for the cooperators or the cooperators themselves, and they omit identification of the government

7   participants in the conversation.[15]  Underscoring the incompleteness of the government's

8   production of notes from the attorney proffers, the government has included a disclaimer that its

9   production of witness summaries for attorney proffers is "not intended and should not be read as

10  an exhaustive accounting of all communications or meetings between the government and

11  counsel for these witnesses and companies."[16]

12       Having received an incomplete production, and having reached an impasse in its

13  discussions with the government, Mr. Lischewski was left with no choice but to seek relief from

14  the Court so that he can have access to materials he is entitled to and which he needs to defend

15  himself at trial.

16  **III.   ARGUMENT**

17       Under *Brady, Giglio*, and their progeny, the government is obligated to "disclose all

18  evidence relating to guilt or punishment which might reasonably be considered favorable to the

19  defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to

20  admissible evidence."  *United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) (quoting

21  *United States v. Acosta*, 357 F. Supp. 2d 1228, 1239-40 (D. Nev. 2005) (citing *Sudikoff*, 36 F.

---

22  [15] *See* Goldberg Decl. at ¶¶ 18-19, Exs. Q-R, Exemplar Witness Summaries for Attorney

23  Proffers; *id.* at ¶ 14, Ex. M, Letter from Kumar to Peters (Dec. 7, 2018); *id.* at ¶ 15, Ex. N, Letter
from Kumar to Peters (Dec. 14, 2018); *id.* at ¶ 16, Ex. O, Letter from Kumar to Peters (Jan. 25,

24  2019); *id.* at ¶ 17, Ex. P, Letter from Kumar to Peters (Feb. 22, 2019).  The February 22, 2019
letter from the government does not characterize the production as containing "portions of our

25  notes of information proffered" by witnesses' counsel, but instead states "[a]s with the previous
productions, we have produced factual information that is or arguably could be attributable to a

26  witness."

27  [16] Goldberg Decl. at ¶ 14, Ex. M, Letter from Kumar to Peters (Dec. 7, 2018); *id.* at ¶ 15, Ex. N,
Letter from Kumar to Peters (Dec. 14, 2018); *id.* at ¶ 16, Ex. O, Letter from Kumar to Peters
(Jan. 25, 2019); *id.* at ¶ 17, Ex. P, Letter from Kumar to Peters (Feb. 22, 2019).

28

9

1325232

1  Supp. 2d 1196)).  The "materiality standard usually associated with *Brady* . . . should not be

2  applied to *pretrial* discovery of exculpatory materials." *Id.* (emphasis added).  Instead, "the

3  proper test for pretrial disclosure of exculpatory evidence" boils down to "whether the evidence is

4  favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach

5  the prosecutor's witnesses." *Id.*; *see also United States v. Bernal-Obeso*, 989 F.2d 331, 334 (9th

6  Cir. 1993) ("[The prosecutor's] responsibility includes the duty as required by *Giglio* to turn over

7  to the defense in discovery *all* material information casting a shadow on a government witness's

8  credibility.").  And, "[i]f doubt exists, it should be resolved in favor of the defendant and full

9  disclosure made." *Price*, 566 F.3d at 913 n.14.[17]

10      The government's obligation to produce *Brady/Giglio* material is particularly important in

11  the context of information regarding the testimony of cooperating witnesses.  "[C]riminals who

12  are rewarded by the government for their testimony are inherently untrustworthy, and their use

13  triggers an obligation to disclose material information to protect the defendant from being the

14  victim of a perfidious bargain between the state and its witness." *Sudikoff*, 36 F. Supp. 2d at 1206

15  (quoting *Carriger v. Stewart*, 132 F.3d 463, 479 (9th Cir. 1997)).  Indeed, evidence that could be

16  used to impeach a government cooperator is highly relevant and "may make the difference

17  between conviction and acquittal." *United States v. Bagley*, 473 U.S. 667, 676 (1985).

18      Accordingly, under *Brady*, *Giglio*, the Jencks Act, and Rule 16 of the Federal Rules of

19  Criminal Procedure, Mr. Lischewski requests that the Court order the government to produce:

20  (1) information related to the negotiation of plea and amnesty agreements, including any draft

21  agreements, any communications between the government and the witness or counsel for the

22  witness concerning the negotiations or agreements, any notes related to those communications,

23

24  [17] Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act provide additional
    grounds for Mr. Lischewski to seek the pretrial discovery requested herein.  Among other things,
25  Rule 16 requires the government to "permit the defendant to inspect and to copy or
    photograph . . . documents . . . if the item is within the government's possession, custody, or
26  control and . . . the item is material to preparing the defense."  Fed. R. Crim. P. 16(a)(1)(E).  "The
    purpose of the *Jencks* Act is to allow the defense the opportunity to impeach prosecution
27  witnesses if their prior statements were inconsistent," and it requires disclosure of statements that
    "relate to the witness's trial testimony." *Sudikoff*, 36 F. Supp. 2d at 1205.

28

DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION TO COMPEL COMPLIANCE WITH THE
GOVERNMENT'S OBLIGATIONS UNDER BRADY, GIGLIO, THE JENCKS ACT, AND
FEDERAL RULE OF CRIMINAL PROCEDURE 16
Case No. 3:18-cr-00203-EMC

1325232

1   and any other promises, consideration, or inducements made to the witness directly or indirectly;

2   (2) original and contemporaneous notes from all government attendees of conversations with

3   witnesses and conversations with counsel for witnesses; and (3) grand jury subpoenas, civil

4   investigative demands, and related requests and correspondence.  All the requested information is

5   highly relevant, favorable to Mr. Lischewski, and should be produced.

6       **A.    The Court should order the government to produce information related to the
            negotiation of plea and amnesty agreements for cooperating witnesses.**
7

8           Information related to plea and amnesty agreement negotiations is favorable to

9   Mr. Lischewski because it reveals the witness's motivations and may explain variations in a

10  witness's story.  But the government has withheld from Mr. Lischewski draft agreements and

11  other communications from the negotiations leading to the final agreements.  Instead, the

12  government has produced only final plea and amnesty agreements, which is insufficient.

13          With the government's cooperating witnesses' credibility front and center in this case,

14  information regarding plea and amnesty negotiations must be disclosed because that information

15  "may 'cast a shadow' on an accomplice witness's credibility in a manner that disclosure of only

16  the [final] agreement itself would not accomplish."  *Sudikoff*, 36 F. Supp. 2d at 1203.  As the

17  court explained in *Sudikoff*, "[t]he motive behind an accomplice witness's agreement to testify

18  may range from a simple quid pro quo to an earnest desire to disclose the truth.  The defense

19  cannot distinguish between such motives unless the government reveals information about the

20  negotiation leading to the agreement."  *Id.*  Another court has similarly explained that

21  "[d]isclosure of the give and take as to what [the cooperating party] was prepared to admit and

22  what the government unsuccessfully sought is likely to shed light on matters at issue in [the]

23  case" and to "play an important role in uncovering admissible evidence, aiding witness

24  preparation, corroborating testimony, or assisting impeachment or rebuttal."  *United States v.*

25  *Stein*, 488 F. Supp. 2d 350, 359 (S.D.N.Y. 2007).  As a result, "proffers of an accomplice witness

26  that led to a leniency agreement and information that reveals the negotiation pursuant to which

27  that agreement was reached might reasonably be considered favorable to the defendant's case"

28

1325232

1    and therefore must be disclosed.[18]  *Sudikoff*, 36 F. Supp. 2d at 1201; *see also Stein*, 488 F. Supp.

2    2d at 369 (ordering the production of draft versions of deferred prosecution agreement and related

3    communications leading up to the agreement).

4         Furthermore, the evidence produced thus far shows that the government's plea and

5    amnesty negotiations with cooperators spanned several months (or years) and, during that time, it

6    appears that the cooperating witnesses' testimony evolved considerably.  Thus, it is all the more

7    likely that the requested information will reveal additional inconsistencies and explain the

8    cooperators' motive for their shifting testimony—evidence that is undoubtedly favorable for the

9    defense.  As the court in *Sudikoff* explained: "Because this process can be lengthy and because it

10   often carries some of the typical negotiating give-and-take, it is possible, maybe even likely, that

11   the witness's proposed testimony that was proffered at the beginning of the process differed in

12   some respects from the testimony proffered at the end of the process."  36 F. Supp. 2d at 1202.

13        While the government has attempted to evade discovery by relying on conclusory

14   assertions that it has satisfied its *Brady/Giglio* obligations (while simultaneously touting the

15   robustness of its discovery to the Court to avoid particularization), the government's assertions

16   should not be credited.  For one, the government cannot reliably determine whether the requested

17   information would be favorable to Mr. Lischewski.  Indeed, "[n]either the government nor the

18   Court is aware of the details of the defense strategy and therefore neither the government nor the

19   Court can accurately determine which variations are important."  *Id.*  Moreover, the government

20   has viewed its disclosure obligations too narrowly.  For example, the government has contended

21   that it provided information from which inconsistencies may be derived, but "inconsistencies" is a

22

23   _____

     [18] In refusing Mr. Lischewski's discovery requests, the government has relied on two inapposite
24   cases.  First, the government cited *United States v. AU Optronics Corp.*, but the one-paragraph
     analysis in that unpublished case recognizes that "if the documents contain a material inconsistent
25   statement of a witness[,] the government may have a separate obligation to disclose" such
     materials.  *United States v. AU Optronics Corp.*, Case No. C 09-0110 SI, 2011 WL 6778520, at
26   *2 (N.D. Cal. Dec. 23, 2011).  Second, the government cited *United States v. Buske*, an
     unpublished case from the Eastern District of Wisconsin in which the defendant had not made any
27   factual proffers to the government and information related to the negotiations would therefore not
     shed light on a witness's inconsistency and "may confuse more than enlighten."  *United States v.
28   Buske*, Case No. 09-CR-65, 2011 WL 2912707, at *4 (E.D. Wis. July 18, 2011).

DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION TO COMPEL COMPLIANCE WITH THE
GOVERNMENT'S OBLIGATIONS UNDER BRADY, GIGLIO, THE JENCKS ACT, AND
FEDERAL RULE OF CRIMINAL PROCEDURE 16
Case No. 3:18-cr-00203-EMC

1325232

broad term that encompasses a witness's transition from providing a "less detailed version of his testimony than he would once it became more likely that an agreement would be reached." *Sudikoff*, 36 F. Supp. 2d at 1202.  "Though such variations could stem entirely from the nature of this process, a defendant implicated by the accomplice witness could reasonably argue that they stem from the accomplice witness's tendency to embroider on the truth" and therefore, "the existence of such variations might reasonably be held to be favorable to the defense." *Id.*

In this case, the sheer number of "proffer" sessions, their duration, and the migration of the witnesses' testimony during this period of overwhelming prosecutorial leverage justify the relief sought.  At trial, Mr. Lischewski must be permitted to reveal to the jury the coercive circumstances under which the government's evidence came to exist.

Because information related to plea and amnesty negotiations in this case is favorable to Mr. Lischewski, his request for this information should be granted.  *See Price*, 566 F.3d at 913 n.14.  The Court should order the government to produce all information related to the negotiation of plea and amnesty agreements, including but not limited to any draft agreements, any communications between the government and witnesses (or their counsel) concerning those negotiations or agreements, and any other promises, consideration, or inducements made to the witness directly or indirectly.

**B.     The Court should order the government to produce original and contemporaneous notes from attorney proffers and witness interviews.**

Mr. Lischewski has already identified inconsistencies in the witness summaries.  But those witness summaries are sanitized, made-for-litigation records of critical meetings with cooperators and their agents.  Under *Brady* and *Giglio*, the government is required to produce better evidence in its possession of these critical meetings.  It must be ordered to produce a complete set of its contemporaneous notes from the participants at those meetings because such notes more directly reflect what was said.  *See United States v. Service Deli Inc.*, 151 F.3d 938, 943 (9th Cir. 1998) (*Brady* violation where the government's case rested on the testimony of a witness and "[a]ny impeachment evidence, therefore, falls within the *Brady* rule and should have

13

DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION TO COMPEL COMPLIANCE WITH THE GOVERNMENT'S OBLIGATIONS UNDER BRADY, GIGLIO, THE JENCKS ACT, AND FEDERAL RULE OF CRIMINAL PROCEDURE 16
Case No. 3:18-cr-00203-EMC

1325232

1  been produced by the government"); *Paradis v. Arave*, 240 F.3d 1169, 1173 (9th Cir. 2001)

2  (*Brady* violation where the government failed to produce prosecutor's handwritten notes from an

3  interview with a government witness); *Sudikoff*, 36 F. Supp. 2d at 1201 ("[T]o the extent the

4  proffers and other information reveal that the witness's proposed testimony may have varied over

5  time, they may reveal inconsistencies relevant to the accomplice witness's credibility and within

6  the scope of *Brady*.").

7          The refusal here of the antitrust division prosecutors to turn over their complete

8  contemporaneous notes from attorney proffers and witness interviews mirrors their misconduct in

9  a Ninth Circuit case in which the court found a *Brady* violation and reversed a defendant's

10  conviction for price-fixing.  *See Service Deli*, 151 F.3d at 942-43.  In *Service Deli*, the

11  government produced a "typewritten summary" of a witness interview, but refused to produce the

12  contemporaneous handwritten notes taken by an antitrust division attorney at the interview.  *See*

13  *id.* at 942.  "In submitting the summary, the government represented to the district court that the

14  memorandum contained the substance of the December 6 interview."  *Id.*  After comparing the

15  notes to the typewritten summary, the Ninth Circuit concluded that "the government violated the

16  due process rights of the defendant by failing to disclose material information contained in the

17  December 6 notes."  *Id.*  Because the Ninth Circuit in *Service Deli* applied the more stringent

18  ***post-trial*** standard, *a fortiori* Mr. Lischewski has satisfied the more lenient ***pre-trial*** standard,

19  which does not require a showing of materiality.

20          The circumstances here present an even more compelling case than in *Service Deli* for

21  three reasons.  ***First***, the carefully curated, long-after-the-fact witness summaries may omit

22  material information that undercuts the witness's credibility, and which therefore must be

23  disclosed.  *See Service Deli*, 151 F.3d at 943-44.  By their nature, summaries do not capture all

24  information in contemporaneous notes, especially where what most matters is the words actually

25  spoken and where (as here) the government has attempted to obscure witness statements in

26  summaries that use stilted language to caveat witness statements ███████████

27  ███.  In turn, "because the government is not necessarily privy to the defense's strategy,

28

1325232

1   seemingly innocuous or immaterial statements by a witness may not be included in a summary"

2   even though such information may be important for purposes of impeachment when viewed in the

3   context of "different facts known to the defense." *United States v. Park*, 319 F. Supp. 2d 1177,

4   1179 (D. Guam 2004); *see also Sudikoff*, 36 F. Supp. 2d at 1202.

5          ***Second***, although multiple government attorneys and agents attended the meetings with

6   counsel and then with the witnesses, the government has refused to produce original notes taken

7   by each government attendee.  Various attendees' notes may capture more or different

8   information than other attendees, while the *post-hoc* witness summaries appear to have been

9   prepared by a single paralegal, likely interpreting other attendees' notes.  As a result, it is

10   probable that the original notes of each government participant in these meetings will provide the

11   most accurate and useful impeachment material.  Indeed, "[d]ifferent individuals may hear or read

12   the same words and summarize their meaning differently." *Park*, 319 F. Supp. 2d at 1179.

13          ***Third***, the witness summaries may capture what the witness eventually stated but omit

14   equivocation, contradictions, or important context from the interview or proffer session, all of

15   which could be used to undercut the witness's credibility.  *See Service Deli*, 151 F.3d at 943-44;

16   *see also Park*, 319 F. Supp. 2d at 1179 ("[C]ontext, emphasis, and subtle distinctions may not be

17   precisely captured by summaries.  For example, it may be significant that a witness repeated an

18   answer multiple times.  The general topics being discussed at the time a statement is made may

19   also explain the statement.").  As occurred in *Service Deli*, the contemporaneous notes—in

20   contrast to the witness summary—showed that the witness initially "denied sharing specific price

21   information" during the interview but by the end of the interview, admitted sharing price

22   information.  *See id.*  Such inconsistencies are no less important than identifying inconsistencies

23   between separate interviews or proffer sessions, and Mr. Lischewski is entitled to both categories

24   of information.

25          Because the original and contemporaneous notes from meetings with witnesses and their

26   counsel "might reasonably be considered favorable to the defendant's case," *Price*, 566 F.3d at

27   913 n.14, the Court should order the government's production of those materials.  Particularly

28

15

1325232

1 here, where the witnesses have developed their testimony over the course of many months and in

2 dozens of meetings with prosecutors, and where inconsistencies are already evident in the

3 government's production, Mr. Lischewski's request should be granted.

4 **C.   The Court should order the government to produce grand jury subpoenas, civil investigative demands, and related requests and correspondence.**

5

6 Finally, Mr. Lischewski requests the government's production of grand jury subpoenas,

7 civil investigative demands, and related requests and correspondence, all of which are material to

8 the preparation of Mr. Lischewski's defense and therefore within the scope of discovery required

9 by Rule 16.  *See* Fed. R. Crim. P. 16(a)(1)(E)(i).  While the government may have been willing to

10 forgo certain categories of information from its subpoena targets for purposes of its investigation,

11 that same information may be critical to Mr. Lischewski's defense and may warrant issuance of a

12 Rule 17 subpoena.  The government's failure to produce information showing the government's

13 discovery process has already prejudiced Mr. Lischewski's ability to prepare Rule 17 subpoenas,

14 which he has been forced to begin preparing without the benefit of knowing the scope of

15 produced and unproduced information.  For Mr. Lischewski to have an opportunity to fully

16 exercise his rights under Rule 17, the Court should order the government to produce grand jury

17 subpoenas, civil investigative demands, and related requests and correspondence reflecting what

18 information was sought, what information was identified by the non-government entities, and

19 what information was actually obtained by the government.

20 **IV.   CONCLUSION**

21 For the foregoing reasons, Mr. Lischewski's motion to compel should be granted and the

22 Court should order the government to produce: (1) information related to the negotiation of plea

23 and amnesty agreements, including any draft agreements, any communications between the

24 government and the witness or counsel for the witness concerning these negotiations or

25 agreements, any notes related to those communications, and any other promises, consideration, or

26 inducements made to the witness directly or indirectly; (2) original and contemporaneous notes

27 from all government attendees of conversations with witnesses and conversations with counsel

28

1  for witnesses; and (3) grand jury subpoenas, civil investigative demands, and related requests and

2  correspondence.

3

4    Dated:  March 28, 2019                        KEKER, VAN NEST & PETERS LLP

5

6                                    By:   */s/ Elliot R. Peters*

7                                          JOHN W. KEKER
                                        ELLIOT R. PETERS

8                                          ELIZABETH K. MCCLOSKEY
                                        NICHOLAS S. GOLDBERG

9                                          Attorneys for Defendant
                                        CHRISTOPHER LISCHEWSKI

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION TO COMPEL COMPLIANCE WITH THE
GOVERNMENT'S OBLIGATIONS UNDER BRADY, GIGLIO, THE JENCKS ACT, AND
FEDERAL RULE OF CRIMINAL PROCEDURE 16
Case No. 3:18-cr-00203-EMC

1325232