UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>CHRISTOPHER LISCHEWSKI,<br>Defendant. | Case No. 18-cr-00203-EMC-1<br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION FOR AN ORDER THAT THE RULE OF REASON APPLIES**<br>Docket No. 113 |

## I. BACKGROUND

The indictment herein charges Defendant Christopher Lischewski with one count of price-fixing in violation of the Sherman Act, 15 U.S.C. § 1. The price-fixing count is the sole count listed in the indictment. The indictment alleges that "[b]eginning in or about November 2010 and continuing until in or about December 2013, the exact dates being unknown . . . , the defendant and coconspirators knowingly entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing prices for packaged seafood sold in the United States." Docket No. 1, Indictment ¶ 7. The indictment describes that "[t]he charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and coconspirators, the substantial terms of which were to fix and maintain prices of packaged seafood sold in the United States." *Id.* ¶ 8.

Included in the indictment is an explanation of the means and methods of the conspiracy. The indictment states:

> For the purpose of forming and carrying out the charged
> combination and conspiracy, the defendant and coconspirators . . . ,
> among other things:

    a) participated in meetings, conversations, and communications concerning prices of packaged seafood to be sold in the United States;
    b) agreed during those meetings, conversations, and communications on prices for packaged seafood sold in the United States;
    c) ***agreed during those meetings, conversations, and communications to limit and restrict competition between the conspirators as to certain types and categories of products, including, but not limited to, competition for products based on certain types of fishing methods***;
    d) collected, exchanged, monitored, and discussed information on prices, sales, supply, demand, and the production of packaged seafood for the purpose of reaching agreements on prices and monitoring and enforcing adherence to the agreements reached;
    e) issued pricing announcement and pricing guidance for packaged seafood in accordance with the agreements reached;
    f) sold packaged seafood in the United States at collusive and noncompetitive prices;
    g) accepted payments for packaged seafood sold in the United States at collusive and noncompetitive prices; and
    h) employed measures to conceal their conduct, including, but not limited to, using code when referring to coconspirators, meeting at offsite locations to avoid detection, limiting distribution and discouraging retention of documents reflecting conspiratorial contacts, and providing misleading justifications for prices.

*Id.* ¶ 10 (emphasis added).

        Defendant explains that the "fishing methods" referred to in paragraph 10(c) are "Fish Aggregating Devices" or "FADs." FADs are "floating structures that attract fish, which are then scooped up in large nets called purse seines." Docket No. 113, Motion to Dismiss ("Mot.") at 1. Defendant acknowledges that he spoke out against selling FAD-free branded products, but he claims he did so not as a means of price-fixing, but instead because he believed that FAD-free branding is misleading to consumers. Defendant explains in detail the benefits of FAD fishing and distinguishing what he describes as the reality of FADs from "Greenpeace's demonization" of FAD fishing. Ultimately, Defendant attempts to reframe the issue by arguing that "it is not unlawful, *per se* or otherwise" to tout the benefits of FAD fishing methods "and convince others of their merit," *id.* at 5, and in the process refrain from engaging in the sale of FAD free branded products.

        The pending motion arises from Defendant's issue with the inclusion of paragraph 10(c) in the indictment. It is his position that even though the charge of price-fixing is subject to the per se

rule of the Sherman Act, if the agreement described in paragraph 10(c) were a separate Sherman Act charge, it would be subject to the rule of reason analysis. He asks the Court to dismiss the indictment for duplicity (on that ground that the sole count alleges two crimes) or in the alternative, for an order that rule of reason applies to the entire indictment.

## II. DISCUSSION

A. Legal Standard

"Rule 12(b) of the Federal Rules of Criminal Procedure permits consideration of any defense 'which is capable of determination without the trial of the general issue.'" *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993). "A motion to dismiss is generally 'capable of determination' before trial 'if it involves questions of law rather than fact.'" *Id.* (quoting *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), *cert. denied*, 478 U.S. 1007 (1986)). In some instances, the Court is permitted to make "preliminary findings of fact necessary to decide the legal questions presented by the motion," however, "the court may not 'invade the province of the ultimate finder of fact.'" *Nukida*, 8 F.3d at 669 (9th Cir. 1993) (quoting *Shortt Accountancy Corp.*, 785 F.2d at 1452). When evaluating whether an indictment is subject to dismissal for duplicity, "[t]he court limits its review to a reading of the indictment itself to determine whether it may be read to charge a single violation." *United States v. King*, 200 F.3d 1207, 1212 (9th Cir. 1999).

B. Analysis

Defendant argues that the indictment must be dismissed for duplicity because he contends it charges two crimes: the crime of price-fixing and an additional Sherman Act violation described in paragraph 10(c) *i.e.*, the FAD agreements. He concludes that because the conduct described in the indictment under means and methods could be considered anticompetitive behavior under the Sherman Act, it must be considered a separate charge thereby making the indictment duplicitous. For this reason, he asks the Court to dismiss the indictment.

"An indictment is duplicitous where a single count joins two or more distinct and separate offenses." *United States v. Thomas*, 545 F. Supp. 2d 1018, 1024 (N.D. Cal. 2008) (quoting *United States v. Ramirez–Martinez*, 273 F.3d 903, 913 (9th Cir. 2001), *overruled on other grounds by*

3

*United States v. Lopez*, 484 F.3d 1186 (9th Cir.2007)). "The vices of duplicity arise from breaches of the defendant's Sixth Amendment right to knowledge of the charges against him, since conviction on a duplicitous count could be obtained without a unanimous verdict as to each of the offenses contained in the count." *Id.* (quoting *United States v. Aguilar*, 756 F.2d 1418, 1420 n.2 (9th Cir.1985)). When evaluating whether an indictment is duplicitous, the question for the Court is "whether the indictment itself can be read to charge only one violation in each count." *United States v. Mancuso*, 718 F.3d 780, 792 (9th Cir. 2013) (quoting *United States v. Martin*, 4 F.3d 757, 759 (9th Cir.1993)).

Where a conspiracy is alleged, "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for 'The conspiracy is the crime, and that is one, however diverse its objects.'" *United States v. Smith*, 891 F.2d 703, 712 (9th Cir. 1989), *amended*, 906 F.2d 385 (9th Cir. 1990) (quoting *Braverman v. United States*, 317 U.S. 49, 54 (1942)). "The law of this circuit . . . takes a broad view of single scheme: 'the defrauding of different people . . . using different means and representations, may constitute but one scheme.'" *United States v. Morse*, 785 F.2d 771, 774 (9th Cir. 1986) (quoting *United States v. Mastelotto*, 717 F.2d 1238, 1245). "A single conspiracy can include subgroups or subagreements . . . ." *United States v. Bauer*, 84 F.3d 1549, 1560 (9th Cir. 1996).

The plain language of the indictment clearly states that paragraphs 10(a)-(g) describes the means of carrying out the alleged price-fixing conspiracy. Paragraph 10(c) is not a stand-alone charge. The critical question is whether, under a fair reading of the indictment, the FAD agreement is alleged as merely one of the means of furthering the price-fixing conspiracy.[1] The Court has no difficulty so reading the indictment. In addition to the plain text of the indictment, there is a logical relationship between the conduct described in Paragraph 10(c) and the price-fixing scheme. By removing a product (FAD free branded tuna) from the market that was more

---

[1] Defendant would like the Court to invade the province of the jury by determining whether the FAD labeling agreements were actually in furtherance of the conspiracy to price-fix or were separate, unrelated agreements. The Court will not do so. *See Nukida*, 8 F.3d at 671 (a court determining the point at which interstate movement has ended invades the fact-finding role of a jury). Ultimately, whether the FAD agreements furthered the alleged conspiracy is a question of fact for the jury and not appropriate for determination by a motion to dismiss.

4

expensive to produce and less profitable than other items (as Defendant asserts), the conspirators could increase profits for limiting consumer choice to traditional tuna products which were the subject of the alleged price-fixing. Also, it allowed the defendants to achieve greater control over the tuna market as a whole by limiting the arena of competition. Thus, it is irrelevant whether the conduct alleged in paragraph 10(c) is illegal or would be subject to the rule of reason if it were charged as a separate offense.

As other courts have found, "[a] single count indictment" of conspiracy, "charging a number or variety of acts is not duplicitous." *United States v. Baltimore & O. R. R.*, 538 F. Supp. 200, 205-06 (D.D.C. 1982). "The 'Means and Methods of the Conspiracy' section of the indictment, which sets forth the manner and means used to carry out the conspiracy . . . does not change the indictment from charging a single conspiracy to charging multiple related conspiracies." *United States v. Northcutt*, 2008 WL 162753, at *6 (S.D. Fla. Jan. 16, 2008) (rejecting a duplicity argument). It is not uncommon for an indictment alleging conspiracy to describe the means thereof without having those means treated as a stand-alone crime. This is evidenced by paragraph 10(a) which includes lawful conduct. *See* Indictment ¶ 10(a) (describing as a means that Defendant "participated in meetings, conversations, and communications concerning prices of packaged seafood to be sold in the United States"). Tellingly, Defendant has not cited to a conspiracy case in which duplicity has been found based solely on alleged conspiracy means.

Defendant's citations to inapposite perjury cases where numerous allegedly false statements were included in a single count do not persuade the Court, because here the government is not asserting that each of the means were necessarily illegal and will not seek a conviction for that conduct. In this case, there is only one count, and there is no risk that facts presented at trial about FAD agreements alone will lead to a price-fixing conviction. The Court will instruct the jury on the single charge of price-fixing, not on the illegality of restricting competition in FAD free products. The government stated that it would be amenable to a jury instruction clarifying any jury confusion regarding FAD-free labeling agreements if necessary. In

1    sum, the indictment is not duplicitous.[2]

2    For all the reasons detailed above, Defendant's argument that the rule of reason applies to
the indictment is also meritless. Defendant argues that if the Court finds that the indictment
consists of one charge, that one charge includes conduct subject to the rule of reason. Thus, the
whole indictment must be subject to the rule of reason. As previously explained a plain reading of
the indictment is that there is one charge. The alleged means does not constitute an independent
crime and thus does not drive the analysis. Defendant has been charged with one count of price-
fixing which is subject the per se rule. *See Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 784
(9th Cir. 1996) (Under the Sherman Act, "[a] per se rule is applied when 'the practice facially
appears to be one that would always or almost always tend to restrict competition and decrease
output. . . . [H]orizontal price fixing, division of markets . . . are ordinarily held to be
unreasonable restraints on trade under the per se approach"); *United States v. Joyce*, 895 F.3d 673,
677 (9th Cir. 2018) ("The Supreme Court has held that horizontal price fixing is a per se violation
of the Sherman Act").

The Court finds *United States v. Apple, Inc.* on point. In *Apple*, Second Circuit explained
that the alleged horizontal pricing scheme in restraint of trade is what determines whether the per
se rule applies. In that case, Apple engaged in a series of agreements with publishing companies
to fix the price of ebooks, but Apple argued because the agreements were vertical agreements its
conduct was subject to the rule of reason. *United States v. Apple, Inc.*, 791 F.3d 290, 297 (2d Cir.
2015). The Second Circuit disagreed and found that orchestrating a price-fixing scheme by
entering into a series of vertical agreements with companies that compete was subject to the per se

---

[2] Defendant makes several additional arguments for dismissal of the indictment. He argues it was lawful to collectively agree to not sell FAD-free tuna. As the Court has explained herein, a means of furthering a conspiracy can be lawful. Defendant's contention that his FAD agreements were protected by the First Amendment is also irrelevant. Similarly, because the FAD agreement conduct is not a stand-alone charge, the Court rejects his request that the indictment be dismissed because the FAD agreements took place outside the statute of limitations. Finally, Defendant makes the argument in his reply brief that the per se rule is unconstitutional because it denies him a jury determination as to every element. Apart from the fact that this belatedly raised argument was waived, the Ninth Circuit has rejected this exact argument. *United States v. Manufacturers' Ass'n of Relocatable Bldg. Indus.*, 462 F.2d 49, 50 (9th Cir. 1972) ("Appellants' contention that the per se rule constitutes an unconstitutional conclusive presumption misunderstands the Sherman Act").

rule. *Id.* at 324. Rather than focusing on whether the agreements were vertical or horizontal, the Second Circuit instead focused on whether the agreements were used to control ebook prices. The *Apple* Court held that "the relevant 'agreement in restraint of trade' in this case is the price-fixing conspiracy identified by the district court, not Apple's vertical contracts with the Publisher Defendants." *Id.* at 325. "[A]ny conspiracy 'formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity . . . is illegal per se,' and the precise 'machinery employed . . . is immaterial.'" *Id.* at 327 (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940)).

In the case at bar, the FAD agreement was intended to further the goals of the price-fixing conspiracy; that conspiracy (and not the "precise machinery" by which the conspiracy was accomplished) is subject to the per se rule. The Court rejects Defendant's argument the rule of reason applies.

### III. CONCLUSION

The Court hereby **DENIES** Defendant's motion to dismiss the indictment. The Court further **DENIES** Defendant's request for an order that the rule of reason applies to the one count in the indictment.

This order disposes of Docket No. 113.

**IT IS SO ORDERED**.

Dated: May 24, 2019

_____
EDWARD M. CHEN
United States District Judge