KEKER, VAN NEST & PETERS LLP
JOHN W. KEKER - # 49092
jkeker@keker.com
ELLIOT R. PETERS - # 158708
epeters@keker.com
ELIZABETH K. MCCLOSKEY - # 268184
emccloskey@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
CHRISTOPHER LISCHEWSKI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>CHRISTOPHER LISCHEWSKI,<br><br>  Defendant. | Case No. 3:18-cr-00203-EMC<br><br>**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE NO. 1**<br><br>Date:   August 27, 2019<br>Time:   10:30 a.m.<br>Dept.   Courtroom 5 – 17th Floor<br>Judge:  Hon. Edward M. Chen<br><br>Date Filed: May 16, 2018<br><br>Trial Date: November 4, 2019 |

## I.   INTRODUCTION

In its Motion *in Limine* No. 1, the government contends that because this Court has held that the *per se* rule applies to the sole charge of the indictment, defendant Christopher Lischewski "should not be permitted to introduce evidence and argument justifying or excusing his conduct." Gov't MIL 1 at 2.[1] But the *per se* rule does not and cannot impose such a draconian restriction on Mr. Lischewski's constitutional right to present evidence in his defense. The *per se* rule is not a rule of evidence at all. Instead, it merely establishes that price fixing, *if proved*, is unreasonable; it does not limit—much less preclude—evidence indicating that Mr. Lischewski *did not conspire to fix prices*. *See, e.g., United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 229–31 (1940). Mr. Lischewski must be allowed to rebut the government's "allegation of conspiracy by showing a plausible and justifiable reason for [his] conduct that is consistent with proper business practice." *In re Citric Acid Litig.*, 191 F.3d 1090, 1094 (9th Cir. 1999) (citation omitted). For example, a defendant may counter evidence of identical "*list prices*" with evidence that the defendant "did price aggressively in actual contracts," and increased its market share. *Id.* at 1102 (emphasis in original). More generally, "evidence as to similarity of costs, operations, marketing, standardized character of the products, competitive nature of the business and other economic factors common to the defendants influencing uniform price changes in the [relevant] area *should be admitted*," under the *per se* rule, because the jury could find that the "prices resulted from these other factors, and were not the result of agreements entered into by the defendants." *Cont'l Baking Co. v. United States*, 281 F.2d 137, 145–46 (6th Cir. 1960) (emphasis added). Thus, as further demonstrated below, the Court should deny the government's motion.

## II.   ARGUMENT

### A.   Mr. Lischewski must be permitted to introduce evidence to disprove the government's allegations that he conspired to fix "noncompetitive prices."

The government argues that the *per se* rule precludes, for example, evidence indicating that the prices at issue here were determined by the cost of fish, as opposed to the alleged price-

---

[1] As explained in detail in Mr. Lischewski's trial brief, the rule of reason should apply in this case, and in any criminal antitrust case. Nevertheless, Mr. Lischewski assumes for the purposes of this opposition only that the *per se* rule applies, but preserves all of his arguments for applying the rule of reason instead.

fixing conspiracy. *See* Gov't MIL 1 at 2–3. But courts have repeatedly rejected the government's argument. In *Continental Baking*, for instance, the court rejected the government's effort to exclude "explanatory evidence of economic causation and conscious price parallelism," as opposed to price fixing. 281 F.2d at 143. The trial judge had granted the government's motion, but in doing so, he improperly "performed the function of the jury. He determined that the Government had established the ultimate fact—that the defendants had entered into price-fixing agreements. Whether or not a conspiracy to fix prices had been established was for the jury to say and the Court could not determine this issue as a matter of law." *Id.*; *see also*, *e.g.*, *United States v. Nu-Phonics, Inc.*, 433 F. Supp. 1006, 1012 (E.D. Mich. 1977) ("The government in this case asks the court to exclude significant defense evidence because the activities charged in the indictment are price-fixing schemes as a matter of law. This argument must be rejected for the simple reason that to so hold would establish a violation of section 1 without proof of all the essential elements of the offense."); *In re Processed Egg Prods. Antitrust Litig.*, No. 08-MD-2002, 2016 WL 3912843, at *5 (E.D. Pa. July 19, 2016) ("[P]laintiffs ignore the fact that they have not yet proven the existence of a conspiracy or [defendant's] participation in it. . . . Because the plaintiffs' argument essentially assumes the ultimate issue in this case, ruling in their favor now on the evidentiary issue would be premature.").

As the court emphasized in *Continental Baking*, it is important to distinguish between attempts to justify admitted price fixing as reasonable versus evidence offered to support the defendant's denial that he conspired to fix prices. *See* 281 F.2d at 143. The *per se* rule precludes the former but **not** the latter. *See id.* "A defendant cannot say 'I have entered into a price-fixing agreement, but the prices fixed are reasonable ones dictated by economic pressures.'" *Id.* at 144. But where, as here, the defendant **denies** that he conspired to fix prices, he is "entitled to set before the jury [his] explanation of what brought about the similar prices." *Id.* Accordingly, it is "prejudicial error" to exclude such "explanatory economic evidence," including "evidence as to similarity of costs, operations, marketing, standardized character of the products, competitive nature of the business and other economic factors common to the defendants influencing uniform price changes in the [relevant] area." *Id.* at 145.

The rule in the Ninth Circuit is the same. In *Citric Acid*, for example, the Ninth Circuit reaffirmed, as it has held many times, that a defendant may rebut allegations that he conspired to fix prices "by showing a plausible and justifiable reason for [his] conduct that is consistent with proper business practice." 191 F.3d at 1094 (quoting *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987); citing *City of Long Beach v. Standard Oil Co. of California*, 872 F.2d 1401, 1406 (9th Cir. 1989); *Wilcox v. First Interstate Bank of Oregon*, 815 F.2d 522, 526–28 (9th Cir. 1987); and *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 635 (9th Cir. 1987)). In *Citric Acid*, several companies admitted to conspiring to fix citric acid prices, but the defendant denied participating in the conspiracy. *Id.* at 1093. The plaintiff, like the government here, argued that the defendant's "list prices mirrored those of its competitors," and that this was "evidence of conspiracy." *Id.* at 1102. But the defendant countered with evidence that, although there was "little competition in citric acid *list prices*," the defendant "did price aggressively in actual contracts," selectively competed for strategic accounts, and grew its market share. *Id.* (emphasis in original). "Considered as a whole, the evidence in the record, though it clearly shows that several citric acid producers conspired to fix prices and to allocate market shares, does not tend to exclude the possibility that" the defendant "acted independently—and thus does not support a reasonable inference that" the defendant "was involved in the citric acid price-fixing conspiracy." *Id.* at 1106.

Similarly, the court in *United States v. Goodman*, 850 F.2d 1473 (11th Cir. 1988), held that the district court erred in excluding evidence that the defendants' prices were competitive and not artificially high, whereas their competitor's prices were below-cost and predatory. Although the competitiveness of prices is not an element of the *per se* violation alleged in *Goodman*, the indictment alleged that the noncompetitive prices were an effect of the alleged conspiracy, and the government offered proof at trial that the defendants had been underbid by a competitor. *See id.* at 1476–79. "Since the evidence of [the competitor] undercutting [the defendants'] prices was introduced by the government, and the indictment with allegations of artificially high and non-competitive prices was submitted to the jury, they also should have had the benefit of" the defendants' evidence that their prices were competitive whereas their competitor's prices were

3

below cost. *Id.* at 1479. "Without these documents the jury could not properly weigh the evidence to determine the inferences to draw therefrom. The trial court may not exclude relevant evidence which is crucial to the establishment of a valid defense." *Id.* Because the trial court did so, the defendants' convictions were reversed. *Id.* at 1480.

Here, as in *Goodman*, the government alleges in its indictment that Mr. Lischewski conspired to fix prices at levels that, according to the government, were "collusive and noncompetitive." Indictment ¶ 10(f)-(g). Even if the government is not required to prove that the prices were noncompetitive, that is what it has alleged in the indictment, and presumably will attempt to prove at trial. *See id.*[2] Thus, evidence that the prices were competitive, and that lower prices would have been below-cost or even predatory, is relevant and admissible because such evidence makes the conspiracy alleged in the indictment "less probable." *Goodman*, 850 F.2d at 1478. "Clearly, the court must permit the defendants to produce evidence that tends to establish that such an agreement did not have 'the effects of raising, depressing, fixing, pegging or establishing' prices as it has relevance to the charge in the indictment," which alleges such effects. *Nu-Phonics*, 433 F. Supp. at 1014; *see* Indictment ¶ 10(f)-(g). Accordingly:

> The defendants in this case have the right to establish by any and all relevant evidence that there was no agreement; that they were not participants in an agreement; that [the alleged agreements], if they existed, did not have an anticompetitive objective or purpose; that their actions had no anticompetitive effects, as defined herein; and that their actions were not in or did not affect interstate commerce, as required by the Sherman Act. They must be given the opportunity to present all relevant evidence in support of any defense which is open to them. The jury must be free to draw its own inferences from the evidence, in accordance with the instructions which will be given to it.

*Nu-Phonics*, 433 F. Supp. at 1014.

Indeed, the government's contrary argument is refuted by the model jury instructions the government itself cites as authoritative:

> Evidence that the defendants and alleged coconspirators actually competed with each other has been admitted to assist you in deciding whether they actually

---

[2] The fact that the government's proof at trial remains to be seen is all the more reason to deny its motion. The Court can and should decide these issues at trial, rather than preemptively. *See, e.g., Processed Egg Prod.*, 2016 WL 3912843, at *5 ("the ultimate relevance determination of the challenged evidence" should be "made in light of the direct or circumstantial evidence offered by the plaintiffs at trial"; "ruling in their favor now on the evidentiary issue would be premature").

> entered into an agreement to fix prices. . . . Evidence of the prices actually charged by the [alleged conspirators] has been admitted to assist you in deciding whether they entered into an agreement to fix prices. Such evidence may lead you to conclude that the [alleged conspirators] never entered into the agreement charged in the indictment or that they did enter into the agreement.

*Model Jury Instructions in Criminal Antitrust Cases* 57–58 (ABA Section of Antitrust Law, eds., 2009); *cf.* Gov't MIL 1 at 5–6 (relying on the ABA model instructions); *see also*, *e.g.*, *Cont'l Baking*, 281 F.2d at 145 ("[T]he portion of the charge to the jury instructing them to disregard any evidence of cost factors which may have been introduced was erroneous.").

None of the cases the government relies on support its argument. Of the Supreme Court cases the government cites, several held that the *per se* rule did not apply, and certainly do not hold that evidence should be excluded based on that rule. *See*, *e.g.*, *State Oil Co. v. Khan*, 522 U.S. 3 (1997); *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007); *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717 (1988). Of the remaining Supreme Court cases cited by the government, only *Socony-Vacuum* addressed the exclusion of evidence, and that case—as the Sixth Circuit explained in *Continental Baking*—does not support the exclusion of explanatory economic evidence, but its **admission**. *See Cont'l Baking*, 281 F.2d at 144–45. In *Socony-Vacuum*, the Supreme Court distinguished between attempts to defend price fixing as reasonable, which the *per se* rule precludes, and evidence "aimed at establishing and evaluating other contributory causes for the price rise and market stability during the indictment period." 310 U.S. at 229. The record in *Socony-Vacuum* was "replete with evidence showing the condition of the oil industry," and "ample testimony bearing on the other causal factors which respondents contend were primarily responsible for the price rise and market stability during the indictment period." *Id.* at 229–30. The Court did not disagree that such evidence is relevant and admissible, but merely held that the district court did not abuse its discretion in excluding "cumulative" evidence given the "great mass of [such] evidence" that it admitted. *Id.* at 230–31.

The government also relies on *United States v. Joyce*, 895 F.3d 673 (9th Cir. 2018), but the plaintiff there did "**not contest** that the conduct described in the indictment was classic bid rigging or that the evidence presented at trial was insufficient to establish he engaged in bid rigging." *Id.* at 677 (emphasis added). Here, however, Mr. Lischewski **does** contest the

government's allegation that he conspired to fix prices.[3]  Accordingly, Mr. Lischewski is "entitled to set before the jury [his] explanation of what brought about the similar prices." *Cont'l Baking*, 281 F.2d at 144; *accord, e.g.*, *Processed Egg Prods.*, 2016 WL 3912843, at *2–5.  And, again, because the government has alleged "collusive and noncompetitive prices," Indictment ¶ 10(f)-(g), Mr. Lischewski is entitled to present evidence to the contrary, *see Goodman*, 850 F.2d at 1476–80; *Nu-Phonics*, 433 F. Supp. at 1014.

Furthermore, as this Court recognized at the hearing on Mr. Lischewski's motion to dismiss, the parties' contentions relating to fishing methods and, in particular, Fish Aggregating Devices ("FADs"), present conflicting inferences that the jury must decide between.  *See* May 7, 2019 Tr. at 5–6.  Mr. Lischewski, therefore, must be allowed to present evidence about, for example, his "effort to not succumb to the propaganda of Green Peace" about FADs.  *Id.* at 5.  If the Court does not allow the jury to hear Mr. Lischewski's side of that story, the jury will not be able to "properly weigh the evidence to determine the inferences to draw therefrom," *Goodman*, 850 F.2d at 1479, and any conviction will be subject to reversal, *id.* at 1480.

**B.    There is no merit to the government's arguments about intent and knowledge of illegality.**

The government also argues that "Defendant should not be permitted to introduce evidence and argument that he did not intend any anti-competitive results or that he acted with good intentions."  Gov't MIL 1 at 4.  The government cites *United States v. Alston*, 974 F.2d 1206, 1213 (9th Cir. 1992), for the proposition that "it is irrelevant that a defendant did not specifically intend to produce anticompetitive effects or violate the Sherman Act."  Gov't MIL 1

---

[3] The other cases the government cites are likewise either inapposite or support Mr. Lischewski's opposition to the government's motion.  In *United States v. Brighton Bldg. & Maint. Co.*, 598 F.2d 1101 (7th Cir. 1979), the defendants were allowed to present "a theory of defense that none of them entered into any agreement to submit collusive, non-competitive, highway construction bids, as charged against them in the indictment," based on evidence "showing circumstances designed to demonstrate that the bids were more probably the result of economic factors, independently considered, than of agreement among defendants."  *Id.* at 1107.  In *United States v. Suntar Roofing, Inc.*, 897 F.2d 469 (10th Cir. 1990), the court only excluded certain evidence after concluding at trial "that the government had established the violation charged."  *Id.* at 473. And *United States v. Kemp*, 907 F.3d 1264 (10th Cir. 2018), was decided on the pleadings and thus had nothing to do with the exclusion of evidence at trial.

at 5. But that is not what *Alston* held. The Ninth Circuit observed that "the government need not ***prove*** specific intent to produce anticompetitive effects," 974 F.2d at 1213 (emphasis added), but that does not make lack of such intent ***irrelevant***. The indictment here alleges that Mr. Lischewski "knowingly entered into and engaged in a combination and conspiracy to suppress and eliminate competition." Indictment ¶ 7. The government further alleges that Mr. Lischewski agreed "to limit and restrict competition," and both sold and accepted payment for packaged seafood "at collusive and noncompetitive prices." *Id.* ¶ 10(c), (f) & (g). Mr. Lischewski is entitled to counter these allegations with evidence tending to disprove them. *See, e.g., Goodman*, 850 F.2d at 1476–80; *Nu-Phonics*, 433 F. Supp. at 1014; Fed. R. Evid. 401.

Moreover, the actual ruling in *Alston* undermines the government's argument. In *Alston*, the Ninth Circuit upheld the district court's decision that, although the defendants agreed to a common fee schedule for their dental services, they lacked the mens rea necessary to support a conviction for price fixing. 974 F.2d at 1213. Although the dentists "need not have entered the agreement with the specific intent to violate the Sherman Act, mere acquiescence in a fee schedule proposed or approved by [dental] plans does not an anti-trust *conspiracy* violation make." *Id.* (emphasis in original). As the Ninth Circuit noted, uniform fee schedules "are standard operating procedure when medical plans are involved." *Id.* at 1214. The Ninth Circuit also noted that many things that might occur at a meeting of dentists "would escape the per se rule and might be perfectly legal under the rule of reason," including commiserating and even "sabre-rattling" about low fee schedules. *Id.* Although *Alston* was governed by the *per se* rule, the Ninth Circuit emphasized that courts should be wary of wholesale adoption of legal principles that originated "in the civil enforcement context." *Id.* at 1215. Indeed, the *per se* rule itself is such a principle. *See Addyston Pipe & Steel Co. v. United States*, 175 U.S. 211, 212 (1899). This Court, therefore, should not limit Mr. Lischewski's right to offer any evidence tending to show that he "lacked the mens rea necessary for a price-fixing conspiracy." *Alston*, 974 F.2d at 1213. Mr. Lischewski is entitled to at least as much latitude in defense as the government will take in prosecution. *Nu-Phonics*, 433 F. Supp. at 1012. To rule otherwise would be to fail in this

Court's "task of safeguarding the rights of criminal defendants." *Alston*, 974 F.2d at 1213 (citation omitted).

The government also relies on *United States v. Brown*, 936 F.2d 1042 (9th Cir. 1991), but the instructions in that case "required the jury to find that the defendants knowingly joined a conspiracy whose purpose was illegal and that they understood the illegality of that purpose." *Id.* at 1046 n.3. The jury was further instructed that a conspiracy "is a kind of partnership in criminal purpose," that the "gist of the offense is a combination or agreement to disobey or disregard the law," and that "what the evidence in the case must show beyond a reasonable doubt is that the members in some way or manner or through some contrivance positively or tacitly came to a mutual understanding to try and accomplish a common and unlawful plan." *Id.* Thus, the very case on which the government relies refutes its argument. Under *Brown*, Mr. Lischewski must be allowed to introduce evidence tending to show that he did not understand that the purpose of the alleged conspiracy was "illegal," did not himself have a "criminal purpose," did not intend to "disobey or disregard the law," and did not try to accomplish an "unlawful plan." *Id.*

**C.    Evidence about industry practices is relevant and admissible.**

The government also seeks to exclude evidence about practices in the packaged-seafood industry, but its argument is belied by *Alston*, on which the government elsewhere relies (as discussed above). In *Alston*, the Ninth Circuit expressly relied on "standard operating procedure" in the dental field in upholding the district court's determination that the government had failed to prove the requisite mens rea. 974 F.2d at 1214.

Furthermore, although the government relies on *United States v. Apple Inc.*, 952 F. Supp. 2d 638 (S.D.N.Y. 2013), for the proposition that it is "no defense to participation in an illegal price fixing conspiracy to suggest that others did it too," *id.* at 699, the court in *Apple* did ***not*** exclude any evidence on that basis. On the contrary, although the court ultimately concluded that Apple violated the antitrust laws, it reached that conclusion "based on an evaluation of the entirety of the evidentiary record, including those portions on which Apple relies in arguing that it acted in ways that were consistent with its independent business interests," *id.* at 698, and including evidence about other industry participants, *see id.* at 699. The finder of fact "is

obligated to consider the totality of the evidence." *Id.*; *see also Processed Egg Prod.*, 2016 WL 3912843, at *5 (holding that, as in *Apple*, "the ultimate relevance determination of the challenged evidence would be made in light of the direct or circumstantial evidence offered by the plaintiffs at trial," and that "ruling in their favor now on the evidentiary issue would be premature").

### D. The government's arguments based on Rule 403 have no merit.

Finally, the government argues that it will be prejudiced by the admission of the evidence it so broadly seeks to exclude. But the prejudice that should concern this Court is that which would arise from limiting Mr. Lischewski's defense in the manner the government proposes. As the court aptly observed in *Nu-Phonics*—"one of the first, if not the first case, to come to trial" after Congress made violation of the Sherman Act a felony—courts must make "certain that persons charged with a felony antitrust violation are given the same protections as persons charged with more traditional felonies." 433 F. Supp. at 1010. Yet the government asks this Court to use the *per se* rule as, in effect, an excuse to strip Mr. Lischewski of those all-important protections. The *per se* rule must not be used for that improper and unconstitutional purpose, as the government's own cases make clear. *See*, *e.g.*, *Alston*, 974 F.2d at 1213–15.

### III. CONCLUSION

Thus, the Court should deny the government's Motion *in Limine* No. 1.

Dated: August 13, 2019

KEKER, VAN NEST & PETERS LLP

By: */s/ Elliot R. Peters*
JOHN W. KEKER
ELLIOT R. PETERS
ELIZABETH K. MCCLOSKEY
NICHOLAS S. GOLDBERG

Attorneys for Defendant
CHRISTOPHER LISCHEWSKI