MICAH L. RUBBO (CSBN 267465)
LESLIE A. WULFF (CSBN 277979)
MIKAL J. CONDON (CSBN 229208)
ANDREW SCHUPANITZ (CSBN 315850)
U.S. Department of Justice, Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
Telephone: (415) 934-5300
micah.rubbo@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER LISCHEWSKI,<br><br>Defendant. | No. 18-cr-00203-EMC<br><br>**UNITED STATES' OBJECTIONS TO DEFENDANT'S WITNESS LIST**<br><br>Date: August 27, 2019<br>Time: 10:30 a.m.<br>Judge: Hon. Edward M. Chen<br>Courtroom: 5, 17th Floor |

In accordance with the Court's Pretrial Order for Criminal Jury Trial and Briefing Schedule (Dkt. No. 95) ("Pretrial Order"), the United States hereby submits its objections to defendant's witness list.

On August 6, 2019, defendant submitted a list of over fifty witnesses and reserved the right to amend or supplement his list at any time "as trial progresses." (Dkt. No. 251 at 4:6-7.) Just as he did with the joint exhibit list, defendant selectively complied with the Court's Pretrial Order. While defendant provided the names of some witnesses (others go unnamed), he failed to

briefly set forth for each witness "the substance of their testimony" as required. Because of this failure, it is difficult, if not impossible, for the government to make meaningful objections to witnesses and for the Court to determine whether such testimony is proper. The government therefore asks the Court to require defendant to comply with its Pretrial Order and reserves the right to object to witnesses once defendant has disclosed the purpose and substance of their testimony. Defendant's citation to *United States v. Hicks*, 103 F.3d 837, 841 (9th Cir. 1996), for the proposition that that Court has no authority to require the defendant to do so, is misplaced. The Ninth Circuit's holding in *Hicks* that courts have no authority to require pretrial disclosures by either party was gutted by the court's subsequent decision in *United States v. W.R. Grace*, 526 F. 3d 499 (9th Cir. 2008) (en banc). *W.R. Grace* held that courts have inherent authority to manage their dockets and can therefore compel the disclosure of a witness list, at least with respect to the government. *Id*. at 508-13. As defendant only passingly acknowledged in a footnote, however, *W.R. Grace* expressly declined to decide the question of whether that inherent authority applies to the defense as well. *Id.* at 509 n.7. That question remains open. *See also United States v. Ornelas*, 906 F.3d 1138, 1150 (9th Cir. 2018) (noting that distinction between the government and defense in *W.R. Grace* related to "the appropriate standard for *excluding a witness as a 'sanction'*" and finding that the court did not "cabin our earlier, independent holding that simply enforcing reasonable deadlines established in a pretrial order is not a sanction in the first place." (emphasis added)); *see also id.* at 1150 n.14 ("[W]e did not decide in *W.R. Grace* whether or to what extent the defense can be compelled to disclose a list of its witnesses before trial." (internal quotation marks omitted)).[1] Moreover, *W.R. Grace* expressly rejected the *reasoning* of *Hicks*—not just its holding—and used the opportunity to reaffirm the basic principle that courts have inherent authority to manage their dockets:

> We begin with the principle that the district court is charged with effectuating the speedy and orderly administration of justice. There is universal acceptance in the federal courts that, in carrying out this mandate, a district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to

---

[1] It is a separate question whether exclusion is an available remedy for a failure to comply with the order.

engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly.

*Id*. at 508-09.  Although the court did not decide the question of whether this inherent authority extends to the defense, that question was not before the court.  What is clear, however, is that the reasoning of *W.R. Grace*—not *Hicks*—now controls.  *Id*. at 509 ("Although our decision in [*Hicks*], would suggest otherwise, we disapprove of *Hicks' reasoning* and overrule it to the extent that it conflicts with our decision today.") (emphasis added).  Because the specific disclosures requested below are supported by *W.R. Grace* as necessary to ensure "that the relevant issues to be tried are identified" and that "the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly," and because defendant has failed to show that such disclosures would impede his defense, the Court should require defendant to make a supplemental disclosure reasonably before trial.  *Id*. at 508-09; s*ee also Aloe Vera of Am., Inc. v. United States*, 376 F.3d 960, 964–65 (9th Cir. 2004) (per curiam) ("[A]ll federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders.") (citation and quotations omitted).

In addition to its standing objection to defendant's failure to comply with the Court's order, the government makes the following specific objections to the disclosed witnesses:

**1.   Jill Irvin**

Jill Irvin is and was at the time of the charged conspiracy Bumble Bee's General Counsel. On November 30, 2018 and again on December 21, 2018, the government wrote defendant a letter asking whether he would be asserting an advice of counsel defense at trial.  Defendant responded that he was not required to disclose this information.  To the extent defendant is noticing Irvin to assert an advice of counsel defense, the government objects to her testimony.

First, an advice of counsel defense is not available in this case because defendant has not been charged with a crime requiring willfulness.[2]  *See, e.g.*, *United States v. Smith*, 7 Fed. Appx. 772, 775-76 (9th Cir. 2001) (advice of counsel defense not available unless a crime involves

---

[2]   "Advice of counsel is not a distinct defense to any crime but is instead an indicator of good faith that may be considered by the trier of fact in deciding the issue of intent." *Bisno v. United States*, 299 F.2d 711, 719 (9th Cir. 1961).

willful and unlawful intent); *United States v. Wood,* 446 F.2d 505, 507 (9th Cir. 1971) (no advice of counsel defense available unless specific intent is an element of the charged crime (citing *Williamson v. United States*, 207 U.S. 425, 453 (1908) (finding that a defendant who reasonably relies on the advice of counsel may "not be convicted of [a] crime which involves willful and unlawful intent"))); *see also Bryan v. United States*, 524 U.S. 184, 191-92 (1998) ("As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.' In other words, in order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'") (citation omitted). The Sherman Act, 15 U.S.C. § 1, does not require a specific intent to restrain trade or violate the law.  It is blackletter law that "[i]n a criminal antitrust prosecution, the government need not prove specific intent to produce anticompetitive effects where a *per se* violation is alleged." *United States v. Alston*, 974 F.2d 1206, 1213 (9th Cir. 1992); *see also United States v. Brown*, 936 F.2d 1042, 1046 (9th Cir. 1991) (in Sherman Act prosecution, government does not need to show that the defendant acted "with the purpose of achieving anticompetitive effects or with the knowledge that such effects likely would result").  Despite defendant's attempt to argue otherwise in his proposed jury instructions (*see* Dkt. No. 256 at 5 (elements of a Sherman act violation)), there is no willful and unlawful intent required in this case.  Therefore, there is no valid advice of counsel defense, and Irvin's testimony is not relevant.

Even if an advice of counsel defense were somehow available to defendant in this case (it is not), such testimony only underscores the need for specificity regarding Irvin's testimony. First, an advice of counsel defense is only available once several prerequisites have been established.  Defendant has not made this showing and would need to do so in order to assert the advice of counsel defense.  In order to assert an advice of counsel defense, a defendant must show that he (1) made a full disclosure of all material facts to his attorney, (2) received advice as to the specific course of conduct that he followed, and (3) relied on the advice in good faith. *See United States v. Ibarra-Alcarez*, 830 F.2d 968, 973 (9th Cir. 1987).  Before Irvin is permitted to testify, therefore, defendant should have to provide a summary of her anticipated testimony and a factual proffer establishing these requisite foundational requirements.  Should defendant not do

so and raise an advice of counsel defense for the first time at trial, it would prejudice the government, lead to a burdensome mid-trial evidentiary procedure, waste the Court's and jury's time, delay the close of trial, and risk confusing the jury.

Second, in order for defendant to assert the (unavailable) advice of counsel defense, Bumble Bee would need to waive its attorney-client privilege. Defendant would thus have to provide a summary of Irvin's anticipated testimony to determine the appropriate scope of the waiver. A defendant cannot use the attorney-client privilege as both a "shield and a sword" to "prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991). Therefore, defendant would have to disclose any and all privileged communications giving rise to his ostensible defense, including providing the government the opportunity to interview the attorneys who provided such advice and review documents previously withheld as privileged. *See id*. at 1292-94. The government should have the opportunity to interview Irvin and potentially others regarding the facts disclosed to counsel, the advice defendant sought from counsel based on those facts, whether counsel advised that the charged conduct was unlawful, and whether defendant acted in good faith on such advice.

Because there are substantial issues yet to be resolved with respect to Irvin's (impermissible) potential testimony, and given the Court's desire to resolve trial and evidentiary issues at the pretrial conference, the government requests an order requiring the defendant to disclose his intent to assert any advice of counsel defense and the foundation for any such defense, including the specific communications with counsel, the material facts disclosed and the advice received in response thereto, and any and all privileged communication that gave rise to the advice of counsel. If defendant does intend to rely on such a defense, the government will seek to exclude the defense and, in the alternative, an order allowing the government to review certain privileged documents and interview witnesses on any relevant privileged communications with counsel, including communications between the government's witnesses and Bumble Bee's counsel.

//

**2. Character Witness(es)**

Defendant noticed an indefinite number of undisclosed character witnesses to testify regarding undisclosed topics. Defendant must be required to disclose the name of, and therefore specific number of, character witnesses he intends to call as well as a summary of their anticipated testimony. As outlined in the United States' Motion *in Limine* # 2, character evidence is admissible only in certain situations and typically must be reputation testimony to be admissible. (*See* Dkt. No. 221 at 6:15-7:12.). Because of the limited scope of character witness testimony that is permissible under the Federal Rules of Evidence, it is particularly important that defendant identify the witnesses and explain their expected testimony.

**3. Expert witness(es), including James Levinsohn, Ph.D.**

The Court ordered all expert witnesses to be disclosed on July 26, 2019. Defendant noticed one witness, Dr. James Levinsohn, without noticing the scope of Dr. Levinsohn's anticipated testimony. Now defendant claims Dr. Levinsohn is just *one* of the expert witnesses he may call. He does not identify any of the additional expert witnesses, nor has he provided even a cursory roadmap of their anticipated testimony.

As an initial matter, defendant should be required to disclose the name of *all* expert witnesses he intends to call at trial and provide a description of their proposed testimony. As described in the United States' Trial Brief, in order to ensure the efficient presentation of evidence at trial, the Court should require defendant to give a typical Rule 16 disclosure of anticipated expert testimony, including a summary describing "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications," for Dr. Levinsohn and any other expert defendant intends to call. *See* Fed. R. Crim. P. 16(b)(1)(C)(ii); *Ornelas*, 906 F.3d at 1150 (9th Cir. 2018). The Court must be given sufficient information regarding expert witnesses' background, qualifications, and the bases or reasons for their proposed testimony to be able to determine whether the testimony is proper under Rules 702 and 703 and to allow the government to make any necessary *Daubert* motions. These issues should be addressed pretrial to avoid undue delay and wasting the jury's time. This was part of the Court's rationale for requiring both parties to disclose expert witnesses on July 23, 2019. (*See* January 9, 2019 Hr'g

1  Tr. at 15-18.)  Therefore, the government requests that this disclosure be made for *all* expert
2  witnesses no later than September 3, 2019.  Once that disclosure is made, the government may
3  move to exclude the expert testimony as unreliable under *Daubert v. Merrell Dow Pharma.*, 509
4  U.S. 579, 589 (1993), and as irrelevant and prejudicial under Federal Rules of Evidence 401,
5  402, and 403.  At that time, the government will also request that the Court set a briefing
6  schedule on the government's proposed motion to exclude expert testimony.
7        Finally, as explained in the United States' Motion *in Limine* # 1, any expert testimony
8  regarding the effects of the conspiracy is irrelevant in a *per se* case and would serve to mislead
9  the jury and distract from the sole issue in this case: whether defendant participated in a
10 conspiracy to fix the prices of canned tuna.  Therefore, the government anticipates, while not
11 knowing its exact counters, that Dr. Levinsohn's testimony (as well as that of the unidentified
12 experts) is irrelevant and impermissible.
13       **4.  Bill Fox**
14       Bill Fox is the Vice President of Fisheries of the World Wildlife Fund.  According to that
15 organization's website, Fox has worked on "fishery management" policies and has introduced
16 "economic tools to promote sustainably managed fisheries."  The government is not aware of
17 any evidence indicating that Fox has knowledge of the existence of the price-fixing conspiracy or
18 defendant's participation therein.  The government is then left to speculate as to the nature of
19 Fox's testimony and believes it may be offered instead to explain what methods of fishing tuna
20 are and are not "sustainable."  As explained in the government's Trial Brief, however, that issue
21 is completely irrelevant in this trial.  The sole question as to the fishing-methods agreement is
22 whether the competitors entered into it to further the price-fixing conspiracy.  Not only is the
23 issue of the environmental impact of certain fishing methods irrelevant to that question, it is also
24 likely to create a lengthy sideshow and distract the jury.  Evidence regarding the sustainability of
25 alternate fishing methods should be excluded under Rule 403 to avoid confusing the issues,
26 misleading the jury, and wasting time.  For that reason, so should Fox's testimony.
27 //
28 //

### 5. Former and Current Government Employees

The defendant has noticed over 40 current and former Department of Justice paralegals and Federal Bureau of Investigation agents. The Department of Justice has regulations, generally referred to as Touhy regulations, that govern, among other things, when employees or former employees can testify at a trial about matters within the scope of their official duties. *See* 28 C.F.R. § 16.21 *et seq*. Those regulations provide that "[i]f oral testimony is sought by a demand in a case … in which the United States is a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought must be furnished to the Department attorney handling the case or matter." 28 C.F.R. § 16.23(c). Thus, a current or former Department employee cannot be authorized to testify until that summary is provided. To date, the government has not received this requisite Touhy summary and has no reason to believe that the testimony of over 40 current or former government witnesses is relevant or necessary.

### 6. Document Custodians

The government has offered to stipulate to the authenticity of documents covered by 902(11) and 902(14) certifications, which should eliminate the need to call many of these witnesses.

### 7. Patty Chavez

Chavez was defendant's Executive Assistant during the charged conspiracy. The government has no indication that Chavez has any information relevant to the existence of the charged price-fixing conspiracy or defendant's participation therein. Moreover, defendant cannot elicit his own statements through Chavez, which are not opposing party statements under Rule 801(d)(2). A summary of her anticipated testimony is therefore needed in order to determine whether her testimony is admissible.

### 8. Summary Witness(es)

While objecting to the government's use of a summary witness (*see* Joint Pretrial Conference Statement, Dkt. No. 249 at 13-18), defendant has himself noticed an intent to use

//

summary witnesses, without explaining who the witness(es) are, what documents they will seek to introduce, or the basis for the introduction of those exhibits into evidence.

As the government explained in its Trial Brief, a summary witness is appropriate and permissible under the Court's Rule 611(a) authority, where the testimony would be helpful to the jury. (Dkt. No. 246.) *See also United States v. Olano*, 62 F.3d 1180, 1203-04 (9th Cir. 1995) (holding that it is permissible to use a summary witness to summarize the evidence already presented by the government's preceding witnesses); *United States v. Baker*, 10 F.3d 1374, 1411-12 (9th Cir. 1993) (same), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000); *United States v. Gardner*, 611 F.2d 770, 776 (9th Cir. 1980) (finding a summary chart admissible in tax evasion case under Rule 611(a) because it "contributed to the clarity of the presentation to the jury, avoided needless consumption of time and was a reasonable method of presenting the evidence."). As such, the government explained its intended use of its FBI summary witness in its Witness List and Trial Brief and specifically identified the limited number of documents it will seek to introduce using a summary witness on its exhibit list. (*See* Dkt. Nos. 260, 246.) These documents are, for the most part, documents written by the defendant himself or other coconspirators who are likely to invoke the Fifth Amendment if called to testify. As explained with more specificity in the joint exhibit list, the documents the government seeks to introduce through a summary witness are admissible without a percipient witness as they are self-authenticating and either not hearsay or satisfy an exception to the hearsay rule. This testimony is helpful to the jury because otherwise the jury would not see these documents and they would just be entered into the record.

Defendant, on the other hand, provided no information regarding his proposed use of a summary witness. Defendant has refused to disclose the scope or even the subject matter of the summary witnesses; whether these witnesses will be summarizing testimony, documents, or both; which documents those witnesses will be introducing; and whether he will be introducing a summary chart of any kind. Because defendant similarly refused to disclose the sponsoring witness or trial purpose for his noticed exhibits, the government also does not know what documents defendant seeks to introduce through a summary witness. In order to determine

whether such testimony would be proper, therefore, defendant must fully comply with the Court's Pretrial Order and disclose the documents intended to be introduced through summary witnesses and a brief summary of their anticipated testimony.

\* \* \*

The government also asks the Court to deny defendant's request to supplement and amend the list at any time for any reason. (Dkt. No. 251 at 4:6-7.) While the government believes both sides should have the opportunity to amend, it should be only for the "good cause shown" required by the Court's Pretrial Order.

Finally, the government is concerned at the sheer number of witnesses noticed. As the Court may recall, the trial is estimated to be three weeks, but the size of the defendant's witness list indicates that the trial may go substantially longer.

Dated: August 13, 2019

Respectfully submitted,

/s/ *Micah L. Rubbo*
MICAH L. RUBBO
LESLIE A. WULFF
MIKAL J. CONDON
ANDREW SCHUPANITZ
Trial Attorneys
U.S. Department of Justice
Antitrust Division