KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
CHRISTOPHER C. KEARNEY - # 154101
ckearney@keker.com
ELIZABETH K. MCCLOSKEY - # 268184
emccloskey@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
CHRISTOPHER LISCHEWSKI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER LISCHEWSKI,<br><br>Defendant. | Case No. 3:18-cr-00203-EMC<br><br>**DEFENDANT'S FURTHER RESPONSE TO THE GOVERNMENT'S OBJECTION TO THE USE OF ATTORNEY PROFFERS**<br><br>Date:       October 1, 2019<br>Time:      9:30 a.m.<br>Dept.      Courtroom 5 – 17th Floor<br>Judge:    Hon. Edward M. Chen<br><br>Date Filed: May 16, 2018<br><br>Trial Date: November 4, 2019 |

## I.  INTRODUCTION

In its September 4, 2019 minute order, the Court tentatively sustained the government's objection to defendant Christopher Lischewski's use of government notes of attorney proffers in examining the government's cooperating witnesses, but the Court invited Mr. Lischewski to submit authority that such use of attorney proffers is permissible.  *See* Dkt. No. 310 at 6. Authorities establishing that it is permissible to use attorney proffers to refresh recollection or for impeachment include *United States v. Triumph Capital Group, Inc.*, 544 F.3d 149, 162–63 (2d Cir. 2008), *Spicer v. Roxbury Correctional Institute*, 194 F.3d 547, 556–57 (4th Cir. 1999), *United States v. Reyes*, 239 F.R.D. 591, 598, 601–04 (N.D. Cal. 2006), and *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1204–05 (C.D. Cal. 1999), as discussed below.  Even if the Court is concerned that the use of attorney proffers may implicate the attorney-client privilege— although, as shown below, the law is clear that such information is ***not*** privileged—the Court should address its concern on an individualized basis.  In other words, the Court should defer ruling until a particular question has been asked and objected to, so that the Court can decide, based on the specific circumstances, whether the question actually implicates the attorney-client privilege, rather than simply presuming that it would.  Indeed, as the Ninth Circuit held in *United States v. Ruehle*, 583 F.3d 600 (9th Cir. 2009), it is "legal error" to impose a "broad, blanket suppression order" based on "a presumption that the privilege attached."  *Id.* at 608–09.  Thus, the Court should overrule the government's blanket objection to the use of attorney proffers.

## II.  ARGUMENT

It is well established that "a client's communications of proposed testimony made with the intent that the lawyer relay the communications to the government are not protected by the lawyer-client privilege."  *Sudikoff*, 36 F. Supp. 2d at 1205; *see also*, *e.g.*, *Ruehle*, 503 F.3d at 605, 607–09 (information proffered by attorneys to outside auditors and the FBI is not privileged); *United States v. Edison*, No. CR 07-0074 WHA, 2008 WL 170660, at *2 (N.D. Cal. Jan. 17, 2008) ("communications made to [an attorney] but intended to be communicated to third parties such as the government are not protected by the privilege"); *United States v. Bergonzi*, 216 F.R.D. 487, 493 (N.D. Cal. 2003) ("communications between client and attorney for the purpose

1

of relaying communication to a third party is not confidential and not protected by the attorney-client privilege") (citing *Sudikoff*).

Furthermore—and crucially here—such communications may be "**admissible as prior inconsistent statements—that is, for impeachment purposes**." *Reyes*, 239 F.R.D. at 601 (emphasis added); *see also*, *e.g.*, *United States v. Perez*, No. 10CR3044 WQH, 2011 WL 1259823, at *2 (S.D. Cal. Mar. 29, 2011) ("an attorney proffer may form the basis for an inconsistent statement"); *accord Triumph*, 544 F.3d at 162–63; *Spicer*, 194 F.3d at 556–57. Not only may attorney proffers be used for impeachment, preventing such use is grounds for reversal.

For example, in *Triumph*, a defendant named Spadoni was convicted of bribing a former public official named Silvester, who pleaded guilty and cooperated with the government. At trial, Silvester testified, in effect, that Spadoni had bribed him. "By contrast, when Silvester first proffered (through his attorney) to the government, his statements strongly suggested that Spadoni had declined to make payments that would amount to a bribe." *Triumph*, 544 F.3d at 162. An FBI agent named Urso took notes of that attorney proffer, but the government failed to produce those notes until after trial. The Second Circuit reversed Spadoni's bribery conviction:

> By suppressing Urso's notes of that proffer, the government deprived Spadoni of exculpatory evidence going to the core of its bribery case against him. ***Spadoni could have used the proffer notes not merely to support his version of his conversation with Silvester, but also to impeach Silvester's credibility. While the notes did not record Silvester's words, Spadoni could have attributed them to him through cross-examining Silvester, questioning Agent Urso, and if necessary calling Silvester's attorney***. The notes were taken at a meeting where Silvester's attorney approached the government on Silvester's behalf to relate Silvester's account of his criminal activity in an attempt to convince the government to offer him a cooperation agreement. Spadoni could have argued that Silvester initially authorized his attorney to tell the truth, which inculpated others and exculpated Spadoni, but that once he began to cooperate with the government he fabricated a new, inculpatory version of his dealings with Spadoni to enhance the value of his cooperation and his expected reward.

*Id.* at 162–63 (emphasis added) (internal citation omitted).

Likewise, in *Spicer*, the defendant's conviction was reversed because the state failed to disclose an attorney proffer that was inconsistent with what the witness himself told the state's attorney, the grand jury, and the jury at trial. The Fourth Circuit rejected the argument that the witness's statements to his attorney "were not of impeachment character because they had not

been made directly by [the witness] to the state." *Spicer*, 194 F.3d at 556. The "impeaching nature of the statements does not depend on whether the state was a direct or indirect audience." *Id.* The witness's "statement to his attorney, specifically, was impeachment evidence." *Id.* And the "discrepancy between [the witness's] testimony in court and his prior statements to his attorney would have provided [the defendant] with significant impeachment material." *Id.* at 557.

The law in the Ninth Circuit—and this District—is no different. For example, in *Reyes*, Judge Breyer ordered two law firms to comply with subpoenas for notes of witness interviews that had been proffered to the government. "Generally speaking, the attorney-client privilege is waived upon the voluntary disclosure of protected information by a client, or by an attorney at the behest of a client." *Reyes*, 239 F.R.D. at 598. And "every appellate court that has considered the issue" in more than forty years has concluded that clients and their attorneys "cannot waive the attorney-client privilege selectively." *Id.* at 603; *see also In re Pac. Pictures Corp.*, 679 F.3d 1121, 1127–29 (9th Cir. 2012) (confirming this rule in the Ninth Circuit). Moreover, if witnesses who provided information to attorneys to convey to the government are called to testify at trial, "***their prior statements to internal investigators could become admissible as prior inconsistent statements—that is, for impeachment purposes***." *Reyes*, 239 F.R.D. at 601 (emphasis added).

Similarly, in *Sudikoff*, Judge Pregerson of the Central District of California held that attorney proffers "***may be admissible to impeach; and the information may be used to refresh a witness's recollection***." *Sudikoff*, 36 F. Supp. 2d at 1204 (emphasis added). Judge Pregerson expressly rejected the government's argument that, because the proffers were made by the witness's lawyer, rather than the witness himself, the attorney-client privilege might be "improperly violated should the information be disclosed." *Id.* On the contrary, "the disclosure of witness proffers would not violate any privilege" because "a client's communications of proposed testimony made with the intent that the lawyer relay the communications to the government are not protected by the lawyer-client privilege." *Id.* at 1204–05.

Finally, although it did not address the use of attorney proffers for impeachment, the Ninth Circuit's opinion in *Ruehle* is instructive. There, attorneys had conducted an investigation with the intent to turn the information over to outside auditors and government regulators. *See id.*

at 603.  Those attorneys later proffered that information to the FBI, which summarized the information in Form 302 reports.  *See id.* at 605.  The district court excluded the information as privileged, *see id.* at 606 & n.6, but the Ninth Circuit reversed.  The statements at issue were not privileged because they were made for the purpose of disclosure to outside auditors.  *See id.* at 609.  Furthermore, "a fundamental flaw in the district court's analysis" was that it "applied a liberal view of the privilege that conflicts with the strict view applied under federal common law, which governs here.  By approaching the exclusion question with a presumption that the privilege attached, the district court inverted the burden of proof," which "the party asserting the privilege" must carry.  *Id.* at 608–09 (internal citation omitted).  That party—in this case, the government— is "obliged by federal law to establish the privileged nature of the communications and, if necessary, to segregate the privileged information from the non-privileged information."  *Id.* at 609.  "Under federal law, the attorney-client privilege is strictly construed," and the district court's "overly broad, blanket suppression order" was erroneous.  *Id.*

Here, even if the Court were correct that impeaching cooperating witnesses using their attorney proffers may implicate the attorney-client privilege—which is incorrect, as shown above—the Court's tentative ruling is still "overly broad."  *Id.*  Rather than issue a blanket ruling now, the Court should wait until it has a specific witness, question, objection, and proffer before it.  Doing so will be no less efficient because, in order to ensure the preservation of Mr. Lischewski's appellate rights, his counsel will likely need to make such a record in any event.  On the other hand, ruling in advance, as the Court has proposed, based on "a presumption that the privilege attached," is legal error that contravenes the rule that the attorney-client privilege must be strictly construed.  *Id.*  That rule follows from the "fundamental principle that the public has a right to every man's evidence."  *Pac. Pictures*, 670 F.3d at 1126 (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)).  As a defendant in a criminal case, Mr. Lischewski is entitled to exercise that right *a fortiori*.  "Under such circumstances, there simply is no justification to shut off judicial inquiry into these communications."  *Id.* at 1127.

### III.    CONCLUSION

Thus, the Court should overrule the government's objection to the use of attorney proffers.

Dated:  September 13, 2019                                        KEKER, VAN NEST & PETERS LLP

                                                        By:    /s/ Elliot R. Peters

                                                        ELLIOT R. PETERS
                                                        CHRISTOPHER C. KEARNEY
                                                        ELIZABETH K. MCCLOSKEY
                                                        NICHOLAS S. GOLDBERG

                                                        Attorneys for Defendant
                                                        CHRISTOPHER LISCHEWSKI