MANISH KUMAR (CSBN 269493)
LESLIE A. WULFF (CSBN 277979)
MIKAL J. CONDON (CSBN 229208)
ANDREW SCHUPANITZ (CSBN 315850)
U.S. Department of Justice, Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
Telephone: (415) 934-5300
manish.kumar@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER LISCHEWSKI,<br><br>Defendant. | No. 18-cr-00203-EMC<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO "FAD-FREE" FISHING AGREEMENT**<br><br>Date: October 1, 2019<br>Time: 9:30 a.m.<br>Judge: Hon. Edward M. Chen<br>Courtroom: 5, 17th Floor |

**INTRODUCTION**

A federal grand jury in this district charged defendant with participating in a "conspiracy to suppress and eliminate competition by fixing prices for packaged seafood sold in the United States." (Indictment, Dkt. No. ¶ 7.) That indictment alleges that one of the means and methods that the conspirators used to effectuate the charged conspiracy was agreeing "to limit and restrict competition between the conspirators as to certain types and categories of products, including but

1   not limited to, competition for products based on certain types of fishing methods." (*Id.* ¶ 10(c).)

2   Defendant does not deny this allegation and admits that he and his competitors reached a

3   horizontal agreement not to offer branded "FAD-free" tuna. Nevertheless, he seeks to exclude

4   evidence of this means and methods because he believes the agreement had other justifications.

5        Defendant's motion should be denied because this evidence has significant probative

6   value that is not substantially outweighed by the factors listed in Rule 403. Two elements of the

7   offense that the trial jury must decide are: (1) whether the conspiracy existed, and (2) whether

8   the defendant knowingly joined the conspiracy. This evidence is highly probative on both issues.

9   First, concerted activity by the tuna companies that limited competition among them regarding

10  the types of tuna they would sell is probative of whether they agreed to "suppress and eliminate

11  competition" through price fixing. (*Id.* ¶ 7.) Indeed, despite vigorous argument on this issue,

12  defendant fails to offer any explanation for why *concerted* action among competing companies

13  (as opposed to unilateral action) was necessary. Second, defendant was personally involved in

14  the FAD-free agreement and the evidence is highly probative of his knowingly joining in the

15  price-fixing conspiracy. Third, defendant has indicated that he intends to introduce evidence that

16  the companies engaged in vigorous competition during the conspiracy. Defendant's cooperation

17  with his competitors in reducing competition through the FAD-free agreement rebuts this

18  defense.

19       The proffered evidence readily meets the test for admissibility under Rules 402 and 403.

20  The jury is entitled to assess evidence of the competitors' FAD-free agreement in deciding

21  whether the charged price-fixing conspiracy among those same competitors existed and whether

22  defendant joined it. Additionally, this evidence does not present any danger of unfair prejudice

23  or undue delay. The FAD-free evidence is an important but small part of the government's case,

24  and any Rule 403 concerns can be cured by an appropriate limiting instruction or stipulation.

25                              **ARGUMENT**

26  **I.      The Nature and Scope of the Price-Fixing Conspiracy Is a Question for the Jury**

27       As reflected in the indictment, the grand jury charged that the FAD-free agreement was

28  one of the means and methods by which the conspirators effectuated the price-fixing conspiracy.

1    The trial jury should be permitted to hear evidence of this allegation, because the "nature or

2    scope of a conspiracy 'is a question of fact, not of law, to be determined by the jury.'" *United*

3    *States v. Lynch*, 903 F.3d 1061, 1072 (9th Cir. 2018) (quoting *United States v. DiCesare*, 765

4    F.2d 890, 900 (9th Cir. 1985)).  Consequently, courts "strongly favor[] admitting evidence that

5    may or may not relate to the indicted conspiracy and allowing the jury to decide whether the

6    evidence relates to the conspiracy at issue (and thus is relevant evidence) or whether it relates to

7    a separate and unrelated conspiracy (and, consequently, is irrelevant)." *United States v. Costa*,

8    947 F.2d 919, 923 (11th Cir. 1991) (citing *United States v. Gonzalez*, 940 F.2d 1413, 1422, 1422

9    n.17 (11th Cir. 1991)).

10        Here, defendant's participation in an agreement among competitors not to offer FAD-free

11   tuna is undisputed.  Defendant instead disputes whether that agreement was related to the price-

12   fixing conspiracy.  Because the nature and scope of the conspiracy is a question for the jury, that

13   argument is not a basis to exclude the evidence.  *See Lynch*, 903 F.3d at 1072.  For example, in

14   *Lynch*, the district court admitted evidence that the defendant's employee was involved in a drug

15   transaction even though the court "did not believe that the government had proven [defendant's]

16   actual knowledge of this transaction."  *Id.*  In affirming the defendant's conviction, the Ninth

17   Circuit held that the district court's belief "does not bear on the question of exclusion" because

18   the jury was responsible for determining whether the drug transaction at issue was part of the

19   charged conspiracy.  *Id.*  Courts have long held that a jury is responsible for determining whether

20   a particular act furthered the charged conspiracy.  *See, e.g.*, *United States v. Olmstead*, 5 F.2d

21   712, 714 (W.D. Wash. 1925) ("And whether the alleged overt act is such is a question of fact for

22   the jury.").[1]  Thus, even if the Court is skeptical that the FAD-free agreement actually furthered

23   the conspiracy, the jury should be permitted to make this assessment for itself.

24        The jury may conclude that the price-fixing conspiracy existed and was effectuated by

25   the FAD-free agreement based on the timing of that agreement, its anticompetitive nature, the

26   //

27   [1]    "An indictment charging a violation of section one of the Sherman Act is not required to
allege any overt act…in furtherance of the conspiracy."  *United States v. Miller*, 771 F.2d 1219,
28   1226 (9th Cir. 1985).  Accordingly, showing that the FAD-free agreement furthered the
conspiracy is a sufficient, but not necessary, basis for admissibility of the evidence at trial.

1  fact that the agreement implicated the same product alleged in the indictment (branded canned

2  tuna), and defendant and coconspirators' participation in the agreement.  *See, e.g., United States*

3  *v. Williford*, 764 F.2d 1493, 1500 (11th Cir. 1985) ("Direct evidence of the elements of a

4  conspiracy is not necessary; circumstantial evidence is sufficient, such as acts committed by the

5  defendant which further the purpose of the conspiracy, or inferences from the conduct of the

6  defendant or circumstances indicating a plan or scheme.") (internal citations omitted).  Indeed,

7  when it denied defendant's motion to dismiss, the Court recognized that the FAD-free agreement

8  has a logical relationship with the price-fixing conspiracy.  (*See* Dkt. No. 177 at 4-5 (describing

9  the "logical relationship between the conduct described in Paragraph 10(c) and the price-fixing

10  scheme")).  Other courts have similarly observed a close relationship between agreements

11  restricting output and price fixing.  *See In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827,

12  867 (N.D. Ill. 2010) ("An agreement among competitors to restrict the production of a certain

13  good equates to a price-fixing agreement, because conspiracies to limit output are designed to

14  raise, stabilize, or otherwise fix the price of goods." (citing *Westinghouse Elec. Corp. v. Gulf Oil

15  Corp.*, 588 F.2d 221, 226 (7th Cir. 1978)).[2]

16     Moreover, the government already has proffered sufficient evidence connecting the FAD-

17  free agreement to the price-fixing conspiracy to permit the jury to consider this evidence.  *See*

18  Fed. R. Evid. 401 ("Evidence is relevant if it has *any tendency* to make a fact more or less

19  probable than it would be without the evidence, and the fact is of consequence in determining the

20  action.") (emphasis added).  For example, Chicken of the Sea CEO Shue Wing Chan stated in a

21  civil deposition that the purpose of the agreement was to prevent one company from gaining a

22  competitive advantage over the other companies if they sold FAD-free tuna under their national

23  brand, and avoiding a situation where the other companies felt obligated to offer a product that

24  //

25  //

26  [2]    *See also In re Packaged Seafood Prod. Antitrust Litig.*, 2017 WL 35571, at *11 (S.D.
    Cal. Jan. 3, 2017) (characterizing the FAD-free agreement as an output restriction and illegal per
27  se).  While the government has not alleged that the FAD-free agreement was illegal in and of
    itself, Judge Sammartino's ruling as to the manifestly uncompetitive nature of the agreement is
28  nonetheless relevant in assessing whether the agreement could have furthered the price-fixing
    conspiracy.

1    potentially carried lower sales volume and lower profits.  Defense Trial Ex. 2472 at 314-15.[3]

2    Another coconspirator, Ken Worsham, predicted financial consequences to his company if the

3    industry adopted a branded FAD-free product.  Government Trial Ex. 268.  In other words, the

4    coconspirators understood that a purpose of the agreement not to offer FAD-free tuna was to

5    restrict competition on canned tuna.

6        Greater variation in their product lines would have made it more difficult for the tuna

7    companies to continue the conspiracy.  At best, it would have required additional coordination to

8    include those products in the conspiracy.  At worst, as Chan admitted, it could have upset the

9    competitive balance among the tuna companies.  Without a stable competitive balance, it would

10   have been impossible to "fix and maintain prices of packaged seafood."  (Indictment ¶ 8.).

11   Accordingly, such evidence shows far more than a "general concern about profits."  (Sept. 4,

12   2019 Hr'g Tr. at 26:5.)  Rather, the evidence shows a concern, during the charged price-fixing

13   conspiracy, about limiting competition on canned tuna—the very product market alleged in the

14   indictment.  Given the anticompetitive nexus between the stated purpose of the agreement and

15   the purpose of the price-fixing conspiracy, the jury is entitled to consider evidence of the FAD-

16   free agreement in deciding whether the price-fixing conspiracy existed.

17       Whether each company had its own independent justification not to offer FAD-free tuna

18   does not negate the probative value of the agreement in proving the price-fixing conspiracy.

19   First, defendant has not offered *any* explanation for why his opposition to FAD-free fishing

20   methods justified a horizontal agreement between competitors as opposed to unilateral action

21   from Bumble Bee.  Second, even if taken as true, defendant's explanation for the agreement with

22   his competitors to restrict FAD-free tuna—namely that he was driven by a sincere opposition to

23   //

---

24   [3]   The government interviewed Mr. Chan on September 17, 2019.  Chan confirmed the
25   anticompetitive purpose of the agreement.  Chan did not think that the FAD-free agreement had
     any effect on his agreement with defendant not to discount aggressively, since he believed such
     an understanding would have applied to any potential FAD-free product as well.  Nevertheless,
26   Chan believed that FAD-free branded tuna had the potential to attract consumers away from the
27   companies' traditional branded tuna, depending on its cost. (Ex. A, Declaration of Andrew
     Schupanitz in Support of United States' Opposition to Defendant's Motion to Exclude Evidence
28   and Argument Relating to "FAD-Free" Fishing.) The government has not yet had a chance to re-
     interview other individuals on its witness list with knowledge of the FAD-free agreement.

1  the merits of FAD-free fishing—is not mutually exclusive with the FAD-free agreement

2  effectuating the price-fixing conspiracy.  *See United States v. Camacho*, 528 F.2d 464, 470 (9th

3  Cir. 1976) ("Even though each defendant plays a different role and may have had dissimilar

4  motives for participating in the transaction, this does not mean that a single conspiracy did not

5  exist.") (citing *United States v. Jones*, 425 F.2d 1048, 1051 (9th Cir. 1970)).  Third, even if

6  defendant's purported basis for entering into the agreement not to offer FAD-free tuna tends to

7  rebut the explanation of his conspirators that a purpose of the agreement was to reduce

8  competition, the fact that evidence can support conflicting inferences does not justify

9  withholding it from the jury.  *Blacher v. McEwen*, No. C-12-4775, 2014 WL 4955180, at *6

10  (N.D. Cal. 2014) ("That a case presents conflicting inferences cannot by itself sustain a claim of

11  insufficiency of the evidence.").

12        Accordingly, because the government has proffered evidence sufficient for the jury to

13  conclude that defendant's agreement with his competitors not to offer FAD-free tuna effectuated

14  the charged price-fixing conspiracy, defendant's motion should be denied.

15  **II.     Rule 403 Does Not Provide a Basis to Exclude Evidence of the FAD-Free Agreement**

16        Defendant's request to exclude evidence of the FAD-free agreement under Rule 403

17  should be denied because its probative value is not substantially outweighed by any danger of

18  unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting

19  cumulative evidence.  *See* Fed. R. Evid. 403.  Excluding evidence under Rule 403 is considered

20  "an extraordinary remedy to be used sparingly because it permits the trial court to exclude

21  otherwise relevant evidence." *United States v. Patterson*, 819 F.2d 1495, 1505 (9th Cir. 1987)

22  (quoting *United States v. Meester,* 762 F.2d 867, 875 (11th Cir. 1985)) (internal quotations

23  omitted).  Moreover, "a court may not exclude relevant evidence . . . on the ground that it does

24  not find the evidence to be credible." *United States v. Evans*, 728 F.3d 953, 963 (9th Cir. 2013)

25  (citing *United States v. Candoli,* 870 F.2d 496, 509 (9th Cir. 1989)).  Rather, "[w]eighing

26  probative value against unfair prejudice under [Rule] 403 means probative value with respect to

27  a material fact *if the evidence is believed,* not the degree the court finds it believable." *Evans*,

28  728 F.3d at 963 (emphasis in original) (citing *Bowden v. McKenna*, 600 F.2d 282, 284-85 (1st

1   Cir. 1979)).  When balancing the probative value of the evidence, the Court need only assess

2   whether a rational juror *could* believe the agreement helped effectuate the conspiracy.

3   Accordingly, the evidence should be admitted to allow the jury to decide whether the evidence

4   relates to and is probative of the conspiracy at issue.  *Costa*, 947 F.2d at 923.

5          The two cases on which defendant's motion relies, *Thurman Industries, Inc. v. Pay 'N*

6   *Pak Stores, Inc.*, 875 F.2d 1369 (9th Cir. 1989), and *Weit v. Continental Illinois Nat. Bank and*

7   *Trust Co. of Chicago*, 641 F.2d 457 (7th Cir. 1981), do not lead to a different result.  First, both

8   are civil cases determining whether plaintiffs produced sufficient evidence to avoid summary

9   judgment.  Of course, "[t]here is no summary judgment procedure in criminal cases.  Nor do the

10  rules provide for a pre-trial determination of sufficiency of the evidence."  *United States v.*

11  *Critzer*, 951 F.2d 306, 307 (11th Cir. 1992).  Defendant's invitation to the Court to weigh the

12  sufficiency of the evidence proffered by the government is improper at this stage.[4]  *See* Dkt. No.

13  177 at 4 n.1 ("Defendant would like the Court to invade the province of the jury by determining

14  whether the FAD labeling agreements were actually in furtherance of the conspiracy to price-fix

15  or were separate, unrelated agreements.  The Court will not do so.") (citing *United States v.*

16  *Nukida*, 8 F.3d 665, 671 (9th Cir. 1993)).

17         Second, neither case supports excluding the evidence here.  In *Thurman Industries*, the

18  Ninth Circuit upheld the exclusion of evidence in a Section 2 monopolization claim, which

19  requires a showing of specific intent to eliminate competition.  Specific intent may be inferred in

20  such cases if a plaintiff puts forth evidence of a defendant's power in the relevant market.  In

21  *Thurman Industries*, the plaintiff had not done so.  The excluded evidence at issue was

22  "aggressive behavior among intense competitors," which the court found "inappropriate as a

23  basis for inferring specific intent to monopolize" and thus irrelevant absent any evidence of the

24  defendant's market power.  875 F.2d at 1379.  Here, by contrast, the relevance to the price-fixing

25  conspiracy of a horizontal agreement among competitors to limit the types of products they

26  //

---

27  [4]     Of course, defendant may make a motion for acquittal pursuant to Federal Rule of
    Criminal Procedure 29.  A Rule 29 motion, however, presumes that the "government is entitled
28  to marshal and present its evidence at trial" before its sufficiency is tested.  *United States v.*
    *DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000).

1    offered does not hinge on a showing of market power or any other separate threshold issue.

2    Moreover, defendant's coconspirators have stated the purpose of the agreement was to reduce

3    competition in the very product market—canned tuna—alleged in the indictment.  Similarly, in

4    *Weit*, the court excluded evidence of defendants' concerted lobbying activities under Rule 403,

5    both because such conduct was immune from antitrust liability under the *Noerr-Pennington*

6    doctrine and because plaintiffs lacked any other probative evidence.  641 F.2d at 467 ("*Given the*

7    *lack of any substantial evidence of an antitrust conspiracy in the instant case*, the threat of

8    prejudice from admission of this evidence is considerable.  The lack of other probative evidence

9    of conspiracy would serve to focus the jury's attention on the lobbying evidence.") (emphasis

10   added).  Here, the government is not seeking to convict defendant based solely on his

11   participation in the FAD-free agreement (and would agree to an appropriate limiting instruction

12   to this effect), nor does such an agreement implicate constitutionally protected speech.  The

13   relative probative value and potential for prejudice between the evidence here and the evidence

14   in *Thurman Industries* and *Weit* render those cases inapposite.

15         Defendant's contention that admitting evidence of the FAD-free agreement will cause

16   jury confusion and undue prejudice are unfounded.  There is no such danger because the

17   government does not oppose a limiting instruction that the Court deems appropriate.  And as the

18   government previously represented to the Court and defendant, the government will not argue

19   that the FAD-free agreement, in and of itself, provides a basis to convict defendant of price

20   fixing.  Therefore, the jury will not convict defendant based solely on his participation in the

21   FAD-free agreement.  Similarly, as noted by the Eleventh Circuit in *Costa*, the Court can give a

22   Rule 104(b) instruction that the jury may only consider evidence of the FAD-free agreement if it

23   determines that the agreement effectuated the price-fixing conspiracy.

24         Nor will admission of the evidence result in unnecessary delay.  Presenting evidence of

25   the FAD-free agreement will not increase the number of government witnesses.  *See Evans*, 728

26   F.3d at 965, n.14 (finding undue delay and wasting time carried "minimal weight in the Rule 403

27   balancing test" when the same witnesses were required to present such evidence at trial).  It is

28   not necessary for the parties to litigate the relative merits of various fishing methods or

1  independent justifications for opposing FAD-free fishing.  The government is willing to stipulate

2  that any individual tuna company may have had legitimate reasons not to offer FAD-free

3  products.  The government simply intends to introduce evidence of the agreement between

4  competitors not to sell FAD-free tuna and argue that it effectuated the price-fixing conspiracy by

5  reducing competition among the tuna companies.  Defendant certainly can challenge the

6  government's evidence and argument on these issues, but such challenges go to the weight of the

7  evidence—not its admissibility.  *Candoli,* 870 F.2d at 509.

8                                          **CONCLUSION**

9         For all the foregoing reasons, the Court should deny defendant's motion to exclude

10  evidence and argument pertaining to the agreement among defendant and his competitors not to

11  offer branded FAD-free tuna.

12

13  Dated: September 20, 2019                        Respectfully submitted,

14

15                                                  /s/ *Manish Kumar*
                                                    MANISH KUMAR
16                                                  LESLIE A. WULFF
                                                    MIKAL J. CONDON
17                                                  ANDREW SCHUPANITZ
                                                    Trial Attorneys
18                                                  U.S. Department of Justice
                                                    Antitrust Division
19

20

21

22

23

24

25

26

27

28