KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
CHRISTOPHER C. KEARNEY - # 154101
ckearney@keker.com
ELIZABETH K. MCCLOSKEY - # 268184
emccloskey@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
CHRISTOPHER LISCHEWSKI

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER LISCHEWSKI,<br><br>Defendant. | Case No. 3:18-cr-00203-EMC<br><br>**DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS**<br><br>Date:          October 1, 2019<br>Time:         9:30 a.m.<br>Dept.         Courtroom 5 - 17th Floor<br>Judge:        Hon. Edward M. Chen<br><br>Date Filed:  May 16, 2018<br><br>Trial Date:  November 4, 2019 |

At the Pre-Trial Hearing on September 4, 2019, the Court explained that it "intends to []
closely adhere to the ABA Model Instructions (criminal and civil editions)."  *See* 9/4/2019
Criminal Minutes at 4; *see also* 9/4/2019 Pre-Trial Hearing Tr. 48:14-49:22.  In accordance with
the Court's guidance, Defendant Christopher Lischewski hereby submits his First Amended Jury
Instructions.

Mr. Lischewski's First Amended Jury Instructions are based, with a few exceptions,
either on the ABA Model Jury Instructions in Criminal[1] and Civil Antitrust Cases[2] or on the
Ninth Circuit Model Jury Instructions.[3]  For the Court's convenience, Mr. Lischewski first lists
the instructions to which the Government has proposed alternative instructions, (pp. 1-27),
followed by the instructions to which the Government objects to in whole, (pp. 28-54).  At the
end of each proposed instruction, Mr. Lischewski has included (1) the relevant legal authorities;
(2) a redline against the relevant model instruction, if applicable; and (2) a brief explanation of
changes made to the model instructions and differences with the Government's corresponding
alternative instructions.

Mr. Lischewski understands that the Government is also requesting certain instructions in
its separate filing on topics for which the defense is not proposing any instruction.[4]  The basis for
Mr. Lischewski's objections to each of the instructions the Government is explained further
below. (pp. 55-64)

---

[1] ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009).

[2] ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases (2016).

[3] 2010 edition of the Ninth Circuit Manual of Model Criminal Jury Instructions that was last
updated in June 2019.

[4] On Thursday, September 19, 2019, the Government informed the defendant that it "continue[s]
to review the instructions and may make further stylistic edits."  The defendant reserves all rights
to object to any such revisions.

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

In addition, Mr. Lischewski requests the stipulated instructions contained in the Parties' simultaneously filed First Revised Joint Statement Regarding Jury Instructions and continues to request the following Ninth Circuit Model Instructions, if applicable.

- No. 2.6: Deposition as Substantive Evidence
- No. 4.13: Missing Witness
- No. 4.15: Dual Role Testimony

Mr. Lischewski respectfully reserves the right to supplement, amend, or tailor the instructions based on the Court's rulings and the evidence and arguments offered at trial.

To assist the Court with its review of the parties' proposed instructions, a table follows that lists each of Mr. Lischewski's proposed instructions and shows, where applicable, the alternative instruction proposed by the Government.

**PROPOSED JURY INSTRUCTIONS**

| Def. Instr. No. | Title | Page | Gov's Alternative |
|---|---|---|---|
| **Instructions to which the Parties Propose Alternative Languages** | | | |
| | 1.2 THE CHARGE—PRESUMPTION OF INNOCENCE | 1 | Gov. Instr. No. 1 |
| 1 | DEF. NO. 1—REASONABLE DOUBT—DEFINED | 3 | Gov. Instr. No. 2 |
| 2 | DEF. NO. 2—ELEMENTS OF A SHERMAN ACT VIOLATION | 5 | Gov. Instr. No. 3 |
| 3 | DEF. NO. 3—FIRST ELEMENT—CONSPIRACY | 9 | Gov. Instr. No. 6 |
| 4 | DEF. NO. 4—FIRST ELEMENT—PRICE-FIXING | 12 | Gov. Instr. No. 5 |
| 5 | DEF. NO. 5—FIRST ELEMENT—INDEPENDENT ACTION | 15 | Gov. Instr. No. 5 |
| 6 | DEF. NO. 6—FIRST ELEMENT—SINGLE V. MULITIPLE CONSPIRACIES | 18 | Gov. Instr. No. 9 |
| 7 | DEF. NO. 7—SECOND ELEMENT—"KNOWINGLY" JOINING | 22 | Gov. Instr. No. 11 |
| 8 | DEF. NO. 8—SECOND ELEMENT—EVIDENCE OF COMPETITION | 25 | Gov. Instr. No. 5 |
| 9 | DEF. NO. 9—CONTEMPORANEOUS LIMITING INSTRUCTIONS—LAWFUL AGREEMENTS | 27 | Gov. Instr. Nos. 16, 17 |
| **Defendant's Separately Proposed Instructions** | | | |
| 10 | DEF. NO. 10—SPECIFIC ISSUE UNANIMITY IS NECESSARY | 28 | |
| 11 | DEF. NO. 11—BACKGROUND EVIDENCE PRECEDING CHARGE PERIOD | 29 | |
| 12 | DEF. NO. 12—DEFENDANT'S REPUTATION | 30 | |

| 13 | DEF. NO. 13—OFFICERS OF THE SAME CORPORATION CANNOT CONSPIRE AMONG THEMSELVES | 32 | |
| 14 | DEF. NO. 14—CONSCIOUSLY FOLLOWING EACH OTHER'S PRICE IS NOT ILLEGAL | 34 | |
| 15 | DEF. NO. 15—EXCHANGING PRICING INFORMATION IS NOT ILLEGAL | 38 | |
| 16 | DEF. NO. 16—POSSESSION AND USE OF COMPETITOR INFORMATION IS NOT ILLEGAL | 40 | |
| 17 | DEF. NO. 17—PARTICIPATING IN TRADE ASSOCIATIONS IS NOT ILLEGAL | 41 | |
| 18 | DEF. NO. 18—GEAR-TYPE AGREEMENT CANNOT BE THE SOLE BASIS | 43 | |
| 19 | DEF. NO. 19—PREDATORY PRICING IS ILLEGAL | 44 | |
| 20 | DEF. NO. 20—THEORY OF DEFENSE | 45 | |
| 21 | DEF. NO. 21—THIRD ELEMENT—INTENT TO UNREASONABLY RESTRAIN TRADE (RULE OF REASON) | 46 | |
| 22 | DEF. NO. 22—THIRD ELEMENT—RULE OF REASON—PROOF OF COMPETITIVE HARM | 47 | |
| 23 | DEF. NO. 23—THIRD ELEMENT—RULE OF REASON—MARKET DEFINITION | 49 | |
| 24 | DEF. NO. 24—THIRD ELEMENT—RULE OF REASON—RELEVANT PRODUCT MARKET | 50 | |
| 25 | DEF. NO. 25—THIRD ELEMENT—RULE OF REASON—RELEVANT GEOGRAPHIC MARKET | 52 | |
| 26 | DEF. NO. 26—THIRD ELEMENT—RULE OF REASON—EVIDENCE OF COMPETITIVE BENEFITS | 53 | |
| 27 | DEF. NO. 27—THIRD ELEMENT—RULE OF REASON—BALANCING THE COMPETITIVE | 54 | |

| | | | |
|---|---|---|---|
| | EFFECTS | | |
| **Defendant's Objections to the Government's Separately Proposed Instructions** | | | |
| | DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INSTRUCTION NO. 4: ON OR ABOUT—DEFINED | 55 | Gov. Instr. No. 4 |
| | DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INSTRUCTION NO. 7: PER SE VIOLATION | 56 | Gov. Instr. No. 7 |
| | DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INSTRUCTION NO. 8: ACTS AND STATEMENTS OF COCONSPIRATORS | 57 | Gov. Instr. No. 8 |
| | DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INSTRUCTION NO. 10: PROOF OF OVERT ACT UNNECESSARY | 58 | Gov. Instr. No. 10 |
| | DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INSTRUCTION NO. 12: INDIVIDUAL LIABILITY | 59 | Gov. Instr. No. 12 |
| | DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INSTRUCTION NO. 13: IGNORANCE OF THE LAW | 62 | Gov. Instr. No. 13 |
| | DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INSTRUCTION NO. 14: PROOF OF INTENT | 63 | Gov. Instr. No. 14 |
| | DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INSTRUCTION NO. 15: DISPOSITION OF CHARGE AGAINST COCONSPIRATORS | 64 | Gov. Instr. No. 15 |

## 1.2 THE CHARGE—PRESUMPTION OF INNOCENCE

This is a criminal case brought by the United States government. The government charges the defendant with knowingly entering into and engaging in a combination and conspiracy to suppress and eliminate competition by fixing prices for canned tuna sold in the United States. The charge against the defendant is contained in the indictment. The indictment simply describes the charge the government brings against the defendant. The indictment is not evidence and does not prove anything.

The defendant has pleaded not guilty to the charge and is presumed innocent unless and until the government proves the defendant guilty beyond a reasonable doubt. In addition, the defendant has the right to remain silent and never has to prove innocence or to present any evidence.

[In order to help you follow the evidence, I will now give you a brief summary of the elements of the crime[s] which the government must prove to make its case: [*supply brief statement of elements of crime[s] in accordance with the Court's resolution on the instruction on "Elements of a Sherman Act Violation," which is still disputed*].]

**Authority**: Ninth Circuit Model Jury Instructions for Criminal Cases, No. 1.2 (tailored with language from the indictment)

Compared against Ninth Circuit Model Jury Instructions for Criminal Cases, No. 1.2:

This is a criminal case brought by the United States government. The government charges the defendant with knowingly entering into and engaging in a combination and conspiracy to suppress and eliminate competition by fixing prices for canned tuna sold in the United States[*specify crime[s] charged*]. The charge[s] against the defendant [is] [are] contained in the indictment. The indictment simply describes the charge[s] the government brings against the defendant. The indictment is not evidence and does not prove anything.

The defendant has pleaded not guilty to the charge[s] and is presumed innocent unless and until the government proves the defendant guilty beyond a reasonable doubt. In addition, the

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1  defendant has the right to remain silent and never has to prove innocence or to present any

2  evidence.

3         [In order to help you follow the evidence, I will now give you a brief summary of the

4  elements of the crime[s] which the government must prove to make its case: [*supply brief*

5  *statement of elements of crime[s]* *in accordance with the Court's resolution on the instruction on*

6  *"Elements of a Sherman Act Violation," which is still disputed*].]

7

8  <u>Defendant's Argument:</u>
   The defendant objects to the government's modification of the standard jury instruction 1.2

9  because its description of the charge is inconsistent with the indictment which charges a
   conspiracy "to suppress and eliminate competition by fixing prices for packages seafood sold

10  in the United States."  Indictment ¶ 7.  Because this is the first time the jury will hear of the
   charge, the defendant believes it is important that the jury be given an accurate description of

11  the charge alleged in the Indictment.

12  With respect to the recitation of the elements, the elements should mirror those the Court

13  ultimately decides to give under "Elements of a Sherman Act Violation."  *See infra* at p. 5.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DEF. NO. 1—REASONABLE DOUBT—DEFINED

The law does not require a defendant to prove his innocence or produce any evidence at all. The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant. It is for you alone to decide whether the government has proven that the defendant is guilty of the crime charged solely on the basis of the evidence and subject to the law as I charge you.

While the government's burden of proof is a strict or heavy burden, it is not necessary that the defendant's guilt be proved beyond all possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt. A "reasonable doubt" is based upon reason and common sense after careful and impartial consideration of all the evidence in the case. Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs. If you are convinced that the accused has been proven guilty beyond a reasonable doubt, say so. If you are not convinced, say so.

**Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 2, Section 6B (tailored only to remove inappropriate pronouns); *Holland v. United States*, 348 U.S. 121, 140 (1954) (approving instruction that defined reasonable double as "the kind of doubt" which "would make a person hesitate to act" in "the more serious and important affairs of your own lives").

Compared against ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 2, Section 6B:

The law does not require a defendant to prove [his] [her] [its] innocence or produce any evidence at all. The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant. It is for you alone to decide whether the government has proven that the defendant is guilty of the crime charged solely on the basis of the evidence and subject to the law as I charge you.

While the government's burden of proof is a strict or heavy burden, it is not necessary that the defendant's guilt be proved beyond all possible doubt. It is only required that the

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1  government's proof exclude any "reasonable doubt" concerning the defendant's guilt. A

2  "reasonable doubt" is based upon reason and common sense after careful and impartial

3  consideration of all the evidence in the case. Proof beyond a reasonable doubt, therefore, is proof

4  of such a convincing character that you would be willing to rely and act upon it without hesitation

5  in the most important of your own affairs. If you are convinced that the accused has been proven

6  guilty beyond a reasonable doubt, say so. If you are not convinced, say so.

7

8  Defendant's Argument:
   The Court should use the ABA Model Instruction for defining "Reasonable Doubt."  The ABA

9  instruction better explains the abstract concept of "Reasonable Doubt" than the Ninth Circuit
   Model Instruction No. 3.5 as it describes proof beyond a reasonable doubt in relation to the level

10 of conviction one must have in deciding the most important of one's own affairs.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEF. NO. 2—ELEMENTS OF A SHERMAN ACT VIOLATION

The defendant is charged in the indictment with knowingly entering into and engaging in a combination and conspiracy to suppress and eliminate competition by fixing prices for canned tuna sold in the United States in violation of Section 1 of Title 15 of the United States Code, commonly known as the Sherman Antitrust Act.  In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning in or about November 2010 and continuing until in or about December 2013, there was an agreement between two or more persons to suppress and eliminate competition by fixing prices of canned tuna sold in the United States as alleged in the indictment;

Second, the defendant knowingly—that is, voluntarily and intentionally—became a member of the charged conspiracy, knowing that the object of the agreement was to suppress and eliminate competition by fixing prices of canned tuna sold in the United States and intending to accomplish that goal; [and]

[Third, by joining the conspiracy, the defendant intended to unreasonably restrain competition; and]

[Third or Fourth], that the conspiracy described in the indictment occurred within the flow of, or substantially affected, interstate commerce.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all of the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

[To be tailored depending on the evidence at trial]

**Authority:** Ninth Circuit Model Jury Instructions for Criminal Cases, No. 8.20 (tailored); ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 3, Section C (last two paragraphs); *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.20 (1978) ("In a conspiracy, two different types of intent are generally required-the basic intent to agree,

5

1  which is necessary to establish the existence of the conspiracy, and the more traditional intent to
2  effectuate the object of the conspiracy."); *United States v. Melchor-Lopez*, 627 F.2d 886, 891 (9th
   Cir. 1980) ("[I]t is clear that mere association with members of a conspiracy, the existence of an
3  opportunity to join a conspiracy, or simple knowledge, approval of, or acquiescence in the object
   or purpose of the conspiracy, without an intention and agreement to accomplish a specific illegal
4  objective, is not sufficient to make one a conspirator."); *United States v. Alston*, 974 F.2d 1206,
   1210 (9th Cir. 1992) (approving the instruction that the jury must find "that the defendant
5  knowingly-that is, voluntarily and intentionally-became a member of the conspiracy charged in
   the indictment, knowing of its goal and intending to help accomplish it."); Jury Instructions at 18,
6  *United States v. Swanson*, No. 4:06-cr-00692-PJH (N.D. Cal. Mar. 10, 2008) ECF 337 ("Second,
   the defendant knowingly—that is, voluntarily and intentionally—became a member of the
7  conspiracy charged in the indictment."); Jury Instructions at 11, *United States v. Bai*, No. 3:09-cr-
8  00110-SI (N.D. Cal. Dec. 9, 2013) ECF 1251 ("Second, that the defendant knowingly—that is,
   voluntarily and intentionally—became a member of the conspiracy charged in the indictment,
9  knowing of its goal and intending to help accomplish it.")

10  <u>Compared against Ninth Circuit Model Jury Instructions for Criminal Cases, No. 8.20:</u>

11      The defendant is charged in ~~[Count _____ of]~~ the indictment with ~~conspiring to~~ _____
12  knowingly entering into and engaging in a combination and conspiracy to suppress and eliminate
13  competition by fixing prices for canned tuna sold in the United States in violation of Section
14  ~~_____~~1 of Title ~~_____~~15 of the United States Code, commonly known as the Sherman
15  Antitrust Act.  In order for the defendant to be found guilty of that charge, the government must
16  prove each of the following elements beyond a reasonable doubt:

17      First, beginning ~~on~~ in or about ~~[date], and ending on~~ November 2010 and continuing until
18  in or about ~~[date]~~December 2013, there was an agreement between two or more persons to
19  ~~commit at least one crime as charged~~ suppress and eliminate competition by fixing prices of
20  canned tuna sold in the United States as alleged in the indictment; ~~[and]~~

21      Second, the defendant ~~became~~ knowingly—that is, voluntarily and intentionally—became a
22  member of the charged conspiracy ~~knowing of at least one of its objects~~, knowing that the object
23  of the agreement was to suppress and eliminate competition by fixing prices of canned tuna sold
24  in the United States and intending to ~~help~~accomplish it~~[.] [;~~that goal; ~~[and]~~
25      ~~[Third, one of the members of the conspiracy performed at least one overt act [on or after~~
26  ~~[date]] for the purpose of carrying out the conspiracy.]~~

27
28

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1    A conspiracy is a kind of criminal partnership—an agreement of two or more persons to

2  commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful;

3  it does not matter whether the crime agreed upon was committed.

4    For a conspiracy to have existed, it is not necessary that the conspirators made a formal

5  agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that

6  they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped

7  one another. You must find that there was a plan to commit at least one of the crimes alleged in

8  the indictment as an object of the conspiracy with all of you agreeing as to the particular crime

9  which the conspirators agreed to commit.

10    One becomes a member of a conspiracy by willfully participating in the unlawful plan

11  with the intent to advance or further some object or purpose of the conspiracy, even though the

12  person does not have full knowledge of all the details of the conspiracy. Furthermore, one who

13  willfully joins an existing conspiracy is as responsible for it as the originators. On the other hand,

14  one who has no knowledge of a conspiracy, but happens to act in a way which furthers some

15  object or purpose of the conspiracy does not thereby become a conspirator. Similarly, a person

16  does not become a conspirator merely by associating with one or more persons who are

17  conspirators, nor merely by knowing that a conspiracy exists.

18    [Third, by joining the conspiracy, the defendant intended to unreasonably restrain

19  competition; and]

20    [Third or Fourth], that the conspiracy described in the indictment occurred within the flow

21  of, or substantially affected, interstate commerce.

22    If you find from your consideration of all the evidence that each of these elements has

23  been proved beyond a reasonable doubt, then you should find the defendant guilty.

24    If, on the other hand, you find from your consideration of all of the evidence that any of

25  these elements has not been proved beyond a reasonable doubt, then you should find the

26  defendant not guilty.

27

28

7

1   [An overt act does not itself have to be unlawful. A lawful act may be an element of a

2   conspiracy if it was done for the purpose of carrying out the conspiracy. The government is not

3   required to prove that the defendant personally did one of the overt acts.]

4

5

6   Defendant's Argument:
    The Court should instruct the jury using the Ninth Circuit Model Instruction No. 8.20 on

7   Conspiracy, rather than the ABA Model Instruction that the Government proposes.

8   In particular, the defendant objects to the government's recitation of the "knowingly" element,
    which fails to communicate that the jury must find both intent to agree and intent to carry out the

9   object of the agreement.  *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.20 (1978)
    ("In a conspiracy, two different types of intent are generally required-the basic intent to agree,

10  which is necessary to establish the existence of the conspiracy, and the more traditional intent to
    effectuate the object of the conspiracy.").  Indeed, the Ninth Circuit has approved and courts in

11  this District have adopted a very similar instruction to the instruction the defendant proposes here
    on the "knowingly" element.  *See United States v. Alston*, 974 F.2d 1206, 1210 (9th Cir. 1992);

12  Jury Instructions at 11, *United States v. Bai*, No. 3:09-cr-00110-SI (N.D. Cal. Dec. 9, 2013) ECF

13  1251.

14

15  In addition, the defendant continues to object to the application of the *per se* rule in this case as
    unconstitutional and proposes including the element that "the defendant intended to unreasonably

16  restrain competition."  *See supra* p. 46.

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

# DEF. NO. 3—FIRST ELEMENT—CONSPIRACY

As I have just told you, the first element the government must prove beyond a reasonable doubt, is that the conspiracy charged in the indictment actually came into existence beginning in or about November 2010 and continued until in or about December 2013.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to suppress and eliminate competition by fixing prices for canned tuna sold in the United States alleged in the indictment as an object of the conspiracy with all of you agreeing as to the particular illegal objective which the conspirators agreed to commit.

**Authority:** Ninth Circuit Model Jury Instructions for Criminal Cases, No. 8.20 (tailored)

Compared against Ninth Circuit Model Jury Instructions for Criminal Cases, No. 8.20:

~~The defendant is charged in [Count _____ of] the indictment with conspiring to _____ in violation of Section _____ of Title _____ of the United States Code.  In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:~~

~~First, beginning on or about [*date*], and ending on or about [*date*], there was an agreement between two or more persons to commit at least one crime as charged in the indictment; [and]~~

~~Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it[.] [;and]~~

~~[Third, one of the members of the conspiracy performed at least one overt act [on or after [*date*]] for the purpose of carrying out the conspiracy.]~~

As I have just told you, the first element the government must prove beyond a reasonable doubt, is that the conspiracy charged in the indictment actually came into existence beginning in or about November 2010 and continued until in or about December 2013.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to ~~commit at least one of the crimes~~ suppress and eliminate competition by fixing prices for canned tuna sold in the United States alleged in the indictment as an object of the conspiracy with all of you agreeing as to the particular ~~crime~~ illegal objective which the conspirators agreed to commit.

~~One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.~~

~~[An overt act does not itself have to be unlawful. A lawful act may be an element of a conspiracy if it was done for the purpose of carrying out the conspiracy. The government is not required to prove that the defendant personally did one of the overt acts.]~~

Defendant's Argument:
The defendant requests that the Court instruct using the Ninth Circuit Model Instruction No. 8.20 rather than the ABA Model Instruction on Conspiracy.  The defendant has tailored the Ninth Circuit Model Instruction No. 8.20 with the language from the indictment to describe the alleged goal of the conspiracy and has excluded the paragraph about membership in a conspiracy as

duplicative of the instruction on "Knowingly," *see infra* at p. 22, and the paragraph regarding overt act which is inapplicable in a Sherman Act case.

The government's proposed Conspiracy instruction unduly emphasizes what the government need not prove and unnecessarily repeats instructions included elsewhere.  Moreover, the government's proposed instruction does not instruct that the jurors must "all agree[] as to the particular illegal objective which the conspirators agreed to commit."  This is critical here where the indictment is vague as to the alleged illegal agreement and there is ample risk that the jury will find multiple separate conspiracies.  Finally, the government's inclusion of the sentence that "A single conspiracy may involve several subagreements or subgroups of conspirators" is one-sided and unnecessary in light of the separate instruction on multiple conspiracies, some version of which the Parties agree should be given.

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

### DEF. NO. 4—FIRST ELEMENT—PRICE-FIXING

The indictment charges the defendant with conspiring to suppress and eliminate competition by fixing prices for canned tuna sold in the United States. A conspiracy to fix prices is an agreement or mutual understanding between two or more competitors to fix, control, raise, lower, maintain, or stabilize the prices charged, or to be charged, for products or services.

The aim and result of every price-fixing agreement, if successful, is the elimination of one form of competition.

A price-fixing conspiracy is commonly thought of as an agreement to establish the same price; however, prices may be fixed in other ways. Prices are fixed if the range or level of prices is agreed upon by the conspirators. They are fixed because they are agreed upon. Thus, any agreement to raise or lower a price, to set a maximum price, to stabilize prices, to set a price or price range, or to maintain a price is illegal.

**Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 3, Section F (tailored)

Compared against ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 3, Section F:

The indictment charges the defendants with conspiring to fix pricessuppress and eliminate competition by fixing prices for canned tuna sold in the United States. A conspiracy to fix prices is an agreement or mutual understanding between two or more competitors to fix, control, raise, lower, maintain, or stabilize the prices charged, or to be charged, for products or services.

The aim and result of every price-fixing agreement, if successful, is the elimination of one form of competition.

A price-fixing conspiracy is commonly thought of as an agreement to establish the same price; however, prices may be fixed in other ways. Prices are fixed if the range or level of prices is agreed upon by the conspirators. They are fixed because they are agreed upon. Thus, any agreement to raise or lower a price, to set a maximum price, to stabilize prices, to set a price or

price range, or to maintain a price is illegal. [Conform description to activities charged in indictment.]

If you should find that the defendants entered into an agreement to fix prices, the fact that the defendants or their coconspirators did not abide by it, or that one or more of them may not have lived up to some aspect of the agreement, or that they may not have been successful in achieving their objectives, is no defense. The agreement is the crime, even if it is never carried out.

[Evidence that the defendants and alleged coconspirators actually competed with each other has been admitted to assist you in deciding whether they actually entered into an agreement to fix prices. If the conspiracy charged in the indictment is proved, it is no defense that the conspirators actually competed with each other in some manner or that they did not conspire to eliminate all competition. Nor is it a defense that the conspirators did not attempt to collude with all of their competitors. Similarly, the conspiracy is unlawful even if it did not extend to all products [services] sold by the conspirators or did not affect all of their customers.]

[Evidence of the prices actually charged by the defendants has been admitted to assist you in deciding whether they entered into an agreement to fix prices. Such evidence may lead you to conclude that the defendants never entered into the agreement charged in the indictment or that they did enter into the agreement. Or such evidence may show that they made an agreement but failed to live up to it, or started undercutting one another right away, or offered prices lower than those agreed upon to customers they did not want to lose, or it may show that they became convinced that the whole scheme was unwise and should be abandoned. Regardless of this type of evidence, if the conspiracy as charged existed, for any period of time, it was unlawful.

[Evidence of similarity of business practices of the defendants and alleged coconspirators, or the fact that they may have charged identical prices for the same goods, does not alone establish an agreement to fix prices, since such activities may be consistent with ordinary and proper competitive behavior in a free and open market.]

[The defendants and alleged coconspirators may charge the same prices, may copy each other's price lists or may follow and conform exactly to each other's price policies and price

13

1    changes; and such conduct would not violate the Sherman Act, unless you find it was done

2    pursuant to an agreement between two or more conspirators, as alleged in the indictment.]

3         [Nevertheless, you may consider such facts and circumstances along with all other

4    evidence in determining whether the [evidence of competition] [evidence of prices actually

5    charged] [similarity of business practices] [similarity of prices] resulted from the independent acts

6    or business judgment of the defendants and alleged coconspirators freely competing in the open

7    market, or whether it resulted from an agreement among or between two or more of them.]

8    Defendant's Argument:

9    The defendant has tailored the ABA Model Instruction only to conform to the language in the
     indictment and to remove the fourth paragraph as duplicative of the instruction on "First

10   Element—Conspiracy," *see supra* at p. 9.  With respect to the five bracketed paragraphs, the
     defendant asks that they be given as stand-alone instructions on "First Element—Independent

11   Action," *see infra* at p. 15, and "Second Element—Evidence of Competition," *see infra* at p. 25,
     as explicitly contemplated by the ABA.  *See* ABA Section of Antitrust Law, Model Jury

12   Instructions in Criminal Antitrust Cases (2009), Chapter 3, Section F, Notes ("[The bracketed

13   paragraphs] may be presented to the court as stand-alone instructions (*see, e.g.*, ABA Section of
     Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases*, Nos. 4-8 at B-26-B-31 (2005

14   ed.)) . . . .").

15   The government improperly proposes broadening the definition of a price-fixing agreement
     beyond the applicable case law and the scope of the indictment.  *Catalano v. Target Sales, Inc.*,

16   446 U.S. 643, 648-49 (1980), is inapplicable.  Unlike *Catalano*, here the government has not

17   alleged a specific agreement regarding discounts.  Indeed, the indictment only alleges that "the
     substantial terms" of the conspiracy "were to fix and maintain prices of packaged seafood sold in

18   the United States."  Indictment ¶ 8.  Nor does the indictment mention discounts or promotions in
     its list of means and methods.  *See id.* ¶ 10.  Under such circumstances, adopting the

19   Government's edits would risk an unconstitutional constructive amendment.  *See United States v.

20   Wilbur*, 674 F.3d 1160, 1177–78 (9th Cir. 2012) ("A constructive amendment of an indictment
     occurs when the charging terms of the indictment are altered, either literally or in effect, by the

21   prosecutor or a court after the grand jury has last passed upon them." (citation omitted)).  Even
     worse, the government proposes including language such as agreeing "not to price aggressively"

22   or "not to undercut pricing" or "to set or avoid certain [unidentified] promotions," without any
     supporting case law.  Moreover, the described conduct is hopelessly if not unconstitutionally

23   vague and far removed from the specific agreement at issue in *Catalano.*

24   The Court should not edit the model instruction as the government proposes.  However, if the

25   Court includes any of the government's proposed edits to the definition of price-fixing, the Court
     should make clear that there must be a unity of purpose or meeting of the minds with respect to

26   any specific agreement. *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946) ("Where the
     circumstances are such as to warrant a jury in finding that the conspirators had a unity of purpose

27   or a common design and understanding, or a meeting of minds in an unlawful arrangement, the
     conclusion that a conspiracy is established is justified.").

28

**DEF. NO. 5—FIRST ELEMENT—INDEPENDENT ACTION**

Evidence that competitors may have charged identical prices for the same goods, or engaged in identical or similar business practices, does not alone establish an agreement to fix prices. Such practices may be consistent with lawful, ordinary, and proper competitive behavior in a free and open market.

The Sherman Act prohibits conspiracies between two or more competitors to fix prices. It does not prohibit independent behavior even if such behavior is similar or identical to that of competitors; such behavior may be no more than the result of the exercise of independent judgment in response to identical or similar market conditions. Thus, the defendant may charge prices identical to those charged by hiss competitors without violating the Sherman Act. The defendant may even copy the prices of a competitor or follow and conform exactly to the price policies and price changes of his competitors. Likewise, the defendant does not violate the Sherman Act by taking some action in the hope or belief that his competitors will follow, so long as he has not reached an agreement with his competitors. Parallel conduct, without more, does not violate the law.

You should consider all of the evidence as a whole in determining whether any similarity or identity of prices or conduct resulted from the independent business judgment of the defendant freely competing in the open market, or whether it resulted from an agreement between the defendant and one or more of the alleged coconspirators.

**Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases at 33 (2016) (modified); ECF 292, 8/29/2019 Criminal Minutes at 2 ("Defendant can introduce evidence providing alternative explanations to show that similar prices or movement in prices were not the result of a price fixing agreement."); ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 3, Section F.

Compared against ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases at 33 (2016):

~~In support of its allegation of a conspiracy, plaintiff has alleged that defendants [state the alleged similar conduct, e.g., "announced identical price increases at or near the same time"].~~

Evidence that competitorsdefendants may have charged identical prices for the same goods, or

1   engaged in identical or similar business practices, does not alone establish an agreement to fix

2   prices. Such practices may be consistent with lawful, ordinary, and proper competitive behavior

3   in a free and open market.

4        The Sherman Act prohibits conspiracies between two or more competitors to fix prices. It

5   does not prohibit independent behavior even if such behavior is similar or identical to that of

6   competitors; such behavior may be no more than the result of the exercise of independent

7   judgment in response to identical or similar market conditions. Thus, the~~a~~ defendant may charge

8   prices identical to those charged by his~~its~~ competitors without violating the Sherman Act. The~~A~~

9   defendant may even copy the prices of a competitor or follow and conform exactly to the price

10  policies and price changes of his~~its~~ competitors. Likewise, the~~a~~ defendant does not violate the

11  Sherman Act by taking some action in the hope or belief that his~~its~~ competitors will follow, so

12  long as he~~it~~ has not reached an agreement with his~~its~~ competitors. Parallel conduct, without more,

13  does not violate the law.

14        You should consider all of the evidence as a whole in determining whether any similarity

15  or identity of prices or conduct resulted from the independent business judgment of the ~~individual~~

16  defendant~~s~~ freely competing in the open market, or whether it resulted from an agreement

17  between the defendant and one or more of the alleged coconspirators.~~two or more of them~~.

18

19  <u>Defendant's Argument:</u>

20  The defendant proposes that the ABA Model Instruction in Civil Antitrust Cases for "Evidence of
    Similarity" be given as a stand-alone instruction, instead of the last three bracketed paragraphs in

21  the ABA Model Instruction in Criminal Antitrust Cases for "Price-Fixing."  While the two
    versions are very similar, the civil version more clearly explains that "[the Sherman Act] does not

22  prohibit independent behavior."

23  The government does not dispute that some version of this instruction be given but asks for the
    language in the ABA Model Instruction for Criminal Antitrust Cases and as part of its instruction

24  on "Price-Fixing."  If the Court is inclined to give the language in the criminal version, the

25  defendant requests that the last sentence be tailored as follows:

26

27        [Nevertheless, you may consider such facts and circumstances along with all other

28  evidence in determining whether the [evidence of competition,][ evidence of prices actually

16

charged,] and [similarity of business practices] or [similarity of prices] resulted from the

independent acts or business judgment of the defendants and alleged coconspirators freely

competing in the open market, or whether it resulted from an agreement among or between two or

more of them.]

1

## DEF. NO. 6—FIRST ELEMENT—SINGLE V. MULITIPLE CONSPIRACIES

2

3          The indictment charges that the defendant and other alleged conspirators were all

4    members of one single, continuing conspiracy to suppress and eliminate competition by fixing

5    prices for canned tuna sold in the United States that began in or about November 2010 and

6    continued until in or about December 2013.

7          You may judge the defendant only on the charge alleged in the indictment. You may not

8    convict him of any other alleged conspiracy in the event you should conclude that he has engaged

9    in some other conspiracy not included within the charged conspiracy. Therefore, if you find that

10   he is only a member of another conspiracy and not a member of the one charged in the

11   indictment, or one included within that charged conspiracy, then you must acquit him.

12         Proof of several separate conspiracies is not proof of the single, overall conspiracy

13   charged in the indictment unless one of the several conspiracies which is proved is the single

14   conspiracy which the indictment charges.

15         When two or more people join together to further one common unlawful design or

16   purpose, a single conspiracy exists. A single conspiracy may vary in its membership from time to

17   time and may include two or more separate agreements between or among its members, provided

18   that the participants in the separate agreements are joined together by their knowledge of the

19   essential features and scope of the overall conspiracy and by their common goal. Where the

20   participants in separate agreements are not so joined, they are not members of a single, overall

21   conspiracy, even though the separate agreements may have participants in common and may have

22   similar goals.

23         You may find that there was a single conspiracy despite the fact that there were changes in

24   membership due to withdrawal or additions of conspirators, or changes in the scope of

25   conspiratorial activities, or both, so long as you find that some coconspirators continued to act for

26   the entire duration of the conspiracy for the purpose charged in the indictment. The fact that the

27   members of a conspiracy are not always identical does not necessarily imply that separate

28   conspiracies exist. On the other hand, if you find that the single conspiracy charged in the

18

indictment did not exist, you cannot find the defendant guilty of the conspiracy charged in the indictment. This is so even if you find that some conspiracy other than the one charged in this indictment existed, even though the purposes of both conspiracies may have been the same and even though there may have been some overlap in members.

Whether there was one conspiracy, several conspiracies, or no conspiracy at all, is a fact for you to determine.

**Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009) Chapter 4, Section B7 (tailored with language from the indictment and inappropriate pronouns removed); *United States v. Perry*, 550 F.2d 524, 533 (9th Cir. 1977) ("When the possibility of a variance appears between the indictment and the trial proof, the trial court should instruct the jury on multiple conspiracies."); *United States v. Abushi*, 682 F.2d 1289, 1299 (9th Cir. 1982) ("If from the evidence the jury might reasonably find one common overall plan as well as several separate and independent agreements, the court should instruct the jury on the issue of multiple conspiracies."); *United States v. Eubanks*, 591 F.2d 513, 518 (9th Cir. 1979) (per curiam) ("If it is possible under the evidence for the jury to find that multiple conspiracies existed, then the court should instruct the jury on the issue."); *see also* Jury Instructions at 10-11, *United States v. Northcutt & Scaglia*, No. 0:07-cr-60220-DTKH (S.D. Fla. Nov. 12, 2008) ECF 233; Final Jury Instructions at 23, *United States v. Marr*, No. 4:14-cr-00580-PJH (N.D. Cal. Aug. 22, 2017) ECF 337.

Compared against ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009) Chapter 4, Section B7:

The indictment charges that the defendant and other alleged conspirators were all members of one single, continuing conspiracy to ~~[fix prices] [rig bids] [allocate customers] [allocate territories] for [product or service] sold [in geographical area] [to customer(s) during the period [define]~~ suppress and eliminate competition by fixing prices for canned tuna sold in the United States that began in or about November 2010 and continued until in or about December 2013.

You may judge the defendant only on the charge alleged in the indictment. You may not convict ~~[him] [her] [it]~~ of any other alleged conspiracy in the event you should conclude that ~~[he] [he] [it]~~ he has engaged in some other conspiracy not included within the charged conspiracy. Therefore, if you find that ~~[he] [she] [it]~~ he is only a member of another conspiracy and not a

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

member of the one charged in the indictment, or one included within that charged conspiracy, then you must acquit [him] [her] [it].

Proof of several separate conspiracies is not proof of the single, overall conspiracy charged in the indictment unless one of the several conspiracies which is proved is the single conspiracy which the indictment charges.

When two or more people join together to further one common unlawful design or purpose, a single conspiracy exists. A single conspiracy may vary in its membership from time to time and may include two or more separate agreements between or among its members, provided that the participants in the separate agreements are joined together by their knowledge of the essential features and scope of the overall conspiracy and by their common goal. Where the participants in separate agreements are not so joined, they are not members of a single, overall conspiracy, even though the separate agreements may have participants in common and may have similar goals.

You may find that there was a single conspiracy despite the fact that there were changes in membership due to withdrawal or additions of conspirators, or changes in the scope of conspiratorial activities, or both, so long as you find that some coconspirators continued to act for the entire duration of the conspiracy for the purpose charged in the indictment. The fact that the members of a conspiracy are not always identical does not necessarily imply that separate conspiracies exist. On the other hand, if you find that the single conspiracy charged in the indictment did not exist, you cannot find the defendant guilty of the conspiracy charged in the indictment. This is so even if you find that some conspiracy other than the one charged in this indictment existed, even though the purposes of both conspiracies may have been the same and even though there may have been some overlap in members.

Whether there was one conspiracy, several conspiracies, or no conspiracy at all, is a fact for you to determine.

Defendant's Argument:
The Parties do not dispute that an instruction on multiple conspiracies is required.  Given that this is a central issue in this case, the defendant requests that the Court give the more comprehensive

ABA instruction.  The Ninth Circuit version that the government proposes does not instruct the jury that to find a single, continuing conspiracy, the participants in several agreements "must be joined in their knowledge of the essential features and scope of the overall conspiracy and by their common goal."  But if the Court is inclined to give the Ninth Circuit version, the Court should strike the sentence that the government added, which is wrong under the law because finding that the defendant and Mr. Cameron and/or Mr. Worsham were members of the charged conspiracy would not be sufficient to return a guilty verdict.  *See Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1034 (9th Cir. 2005) ("[T]he 'officers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy" because they are "not separate economic actors pursuing separate economic interests, so agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals.'" (citation omitted)).

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

## DEF. NO. 7—SECOND ELEMENT—"KNOWINGLY" JOINING

As I previously told you, the second element the government must prove beyond a reasonable doubt for you to find the defendant guilty is that the defendant knowingly joined the conspiracy charged in the indictment. To act "knowingly" means to act voluntarily and intentionally, and not because of a mistake, accident, or other innocent reason. Therefore, before you may convict the defendant, the evidence must establish that the defendant joined the conspiracy to suppress and eliminate competition by fixing prices for canned tuna sold in the United States with the intent to aid or advance the object or purpose of the conspiracy.

A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all of its members, or the parts they played in the charged conspiracy. Knowledge of the essential nature of the conspiracy is enough. On the other hand, a person who has no knowledge of a conspiracy but who happens to act in a way which furthers some object or purpose of the conspiracy does not thereby become a member of the conspiracy. Similarly, mere knowledge of a conspiracy without participation in the conspiracy is also insufficient to make a person a member of the conspiracy.

Your determination whether the defendant knowingly joined the conspiracy must be based solely on the actions of the defendant as established by the evidence. You should not consider what others may have said or done to join the conspiracy. Membership of the defendant in this conspiracy must be established by evidence of his own conduct—by what he said or did.

**Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 3, Section K (modified only to exclude inapplicable language); *United States v. Therm-All, Inc.*, 373 F.3d 625, 639 (5th Cir. 2004) (approving instruction stating "[t]he Government has to prove beyond a reasonable doubt that the Defendant knowingly agreed with a competitor to raise, fix and maintain prices, and that the Defendant actually intended to carry out the agreement in fact."); Jury Instructions at 24, 27, *United States v. Swanson*, No. 4:06-cr-00692-PJH (N.D. Cal. Mar. 10, 2008) ECF 337 ("In order to find that the Defendant acted knowingly, you must find that he voluntarily and intentionally became a member of the conspiracy charged in the indictment knowing of its goal and intending to help accomplish it."); *see also* Tr.at 2455:22-2455:14, *United States v. Usher* No. 1:17-cr-00019 (S.D.N.Y. November 8, 2018) ECF 239.

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

Compared against ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 3, Section K:

As I previously ~~noted~~told you, the second element the government must prove beyond a reasonable doubt for you to find the defendant guilty is that the defendant knowingly joined the conspiracy charged in the indictment. To act "knowingly" means to act voluntarily and intentionally, and not because of a mistake, accident, or other innocent reason. Therefore, before you may convict the defendant, the evidence must establish that the defendant joined the conspiracy to ~~[fix prices] [rig bids] [allocate customers] [allocate territories]~~ suppress and eliminate competition by fixing prices for canned tuna sold in the United States with the intent to aid or advance the object or purpose of the conspiracy.

A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all of its members, or the parts they played in the charged conspiracy. Knowledge of the essential nature of the conspiracy is enough. On the other hand, a person who has no knowledge of a conspiracy but who happens to act in a way which furthers some object or purpose of the conspiracy does not thereby become a member of the conspiracy. Similarly, mere knowledge of a conspiracy without participation in the conspiracy is also insufficient to make a person a member of the conspiracy.

~~But a person who knowingly joins an existing conspiracy, or participates in part of the conspiracy with knowledge of the overall conspiracy, is just as responsible as if he had been one of the originators of the conspiracy or had participated in every part of it. Likewise, a person who knowingly directs another to implement the details of the conspiracy is just as responsible as if he participated in every part of it, including its origin.~~

~~[As I have indicated, a defendant who acts to further the conspiracy as a result of mistake, accident, or other innocent reason, does not thereby become a member of the conspiracy. If, on the other hand, the defendant deliberately blinded [himself] [herself] [itself], or closed [his] [her] [its] eyes, to the existence of the conspiracy that would otherwise have been obvious to [him] [her] [it], you may infer that the defendant acted "knowingly'" to further the conspiracy.]~~

Your determination whether the defendant knowingly joined the conspiracy must be based solely on the actions of the defendant as established by the evidence. You should not consider what others may have said or done to join the conspiracy. Membership of the defendant in this conspiracy must be established by evidence of [his] [her] [its] own conduct  by what [he] [she] [it] his own conduct—by what he said or did.

If you find that the defendant joined the conspiracy, then the defendant is presumed to remain a member of the conspiracy and is responsible for all actions taken in furtherance of the conspiracy until the conspiracy has been completed or abandoned or until the defendant has withdrawn from the conspiracy.

Defendant's Argument:

The defendant proposes modifying the ABA Model Instruction on "Knowingly" to remove three paragraphs that are inapplicable here.

*First*, the defendant requests that the Court not include the third and last paragraphs of the ABA Model Instruction on "Knowingly" that contain the *Pinkerton* charge, namely the instruction that a person who knowingly joins an existing conspiracy is just as responsible as if he had been one of the originators.  This is misleading and particularly dangerous in this case where there is a risk that the jury will find multiple conspiracies.  If the Court gives this instruction, the jury may incorrectly conclude that the defendant is liable for the alleged coconspirators' price-fixing agreements because of his participation in a separate agreement without finding that the agreement he participated in was part of a single overall conspiracy charged in the indictment. Indeed, for this reason, courts have cautioned that this instruction "'should not be given as a matter of course,' particularly where the jury is being asked . . . to infer, on the basis of a series of disparate criminal acts, that a conspiracy existed."  *See United States v. Sanchez*, 917 F.2d 607, 612 (1st Cir. 1990) ((quoting *United States v. Sperling*, 506 F.2d 1323, 1341-42 (2d Cir. 1974)).

*Second*, the defendant requests that the bracketed paragraph regarding deliberate ignorance be removed.  The ABA warns that "circumstances which will support the deliberate ignorance instruction are rare."  *See* ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 3, Section K, Notes.  Likewise, the Ninth Circuit cautions that such an instruction should be given "rarely" because of "the risk that the jury will convict on a standard of negligence: that the defendant should have known the conduct was illegal." *United States v. Alvarado*, 838 F.2d 311, 314 (9th Cir. 1987).  Thus, to give such an instruction, "the facts must support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution."  *Id.*  No facts support that inference here.

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

## DEF. NO. 8—SECOND ELEMENT—EVIDENCE OF COMPETITION

Evidence that the defendant and alleged coconspirators actually competed with each other has been admitted to assist you in deciding whether they actually entered into an agreement to fix prices. If the conspiracy charged in the indictment is proved, it is no defense that conspirators actually competed with each other in some manner or that they did not conspire to eliminate all competition. Nor is it a defense that the conspirators did not attempt to collude with all of their competitors. Similarly, the conspiracy is unlawful even if it did not extend to all products sold by the conspirators or did not affect all of their customers.

Evidence of the prices actually charged by the defendant and alleged coconspirators has been admitted to assist you in deciding whether they entered into an agreement to fix prices. Such evidence may lead you to conclude that the defendant and alleged coconspirators never entered into the agreement charged in the indictment or that they did enter into the agreement. Or such evidence may show that they made an agreement but failed to live up to it, or started undercutting one another right away, or offered prices lower than those agreed upon to customers they did not want to lose, or it may show that they became convinced that the whole scheme was unwise and should be abandoned. Regardless of this type of evidence, if the conspiracy as charged existed, for any period of time, it was unlawful.

**Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 3, Section F (modified to remove references to multiple defendants and inapplicable language); ECF 292, 8/29/2019 Criminal Minutes at 2 ("Defendant can introduce evidence providing alternative explanations to show that similar prices or movement in prices were not the result of a price fixing agreement."); Jury Instructions at 7-8, *United States v. Bai*, No. 3:09-cr-00110-SI (N.D. Cal. Dec. 9, 2013) ECF 1251; Jury Instructions at 21-22, *United States v. Swanson*, No. 4:06-cr-00692-PJH (N.D. Cal. Mar. 10, 2008) ECF 337.

Compared against the first two bracketed paragraphs from ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 3, Section F:

[Evidence that the defendants and alleged coconspirators actually competed with each other has been admitted to assist you in deciding whether they actually entered into an agreement to fix prices. If the conspiracy charged in the indictment is proved, it is no defense that conspirators actually competed with each other in some manner or that they did not conspire to

eliminate all competition. Nor is it a defense that the conspirators did not attempt to collude with all of their competitors. Similarly, the conspiracy is unlawful even if it did not extend to all products [services] sold by the conspirators or did not affect all of their customers.]

[Evidence of the prices actually charged by the defendant and alleged coconspirators has been admitted to assist you in deciding whether they entered into an agreement to fix prices. Such evidence may lead you to conclude that the defendants and alleged coconspirators never entered into the agreement charged in the indictment or that they did enter into the agreement. Or such evidence may show that they made an agreement but failed to live up to it, or started undercutting one another right away, or offered prices lower than those agreed upon to customers they did not want to lose, or it may show that they became convinced that the whole scheme was unwise and should be abandoned. Regardless of this type of evidence, if the conspiracy as charged existed, for any period of time, it was unlawful.]

Defendant's Argument:
The defendant proposes that the first three bracketed paragraphs of the ABA Model Instruction in Criminal Antitrust Cases for "Price-Fixing" be given in full as a stand-alone instruction given their importance in this case.  The government agrees that the same three paragraphs be given but improperly strikes the first sentence to make it one-sided.

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

### DEF. NO. 9—CONTEMPORANEOUS LIMITING INSTRUCTIONS—LAWFUL AGREEMENTS[5]

1. You have heard references to a co-packing agreement between Bumble Bee and Chicken of the Sea.  I instruct you that this was a lawful agreement, which is being referred to only to provide background information about the case.  You may not consider this agreement in any way to be evidence against Mr. Lischewski on the charge against him.

2. You have heard references to the Tuna the Wonderfish campaign, also sometimes referred to as the category growth campaign.  I instruct you that this was a lawful business relationship, which is being referred to only to provide background information about the case.  You may not consider evidence of the Tuna the Wonderfish campaign in any way to be evidence against Mr. Lischewski on the charge against him.

**Authority:** ECF 292, 8/29/2019 Criminal Minutes at 3 ("Government will not assert the campaign and agreement were shams as a cover for the alleged conspiracy. It can refer to these incidentally to show general background and fact that there were prior lines of communication and cooperation between alleged conspiracy participants.").

Defendant's Argument:
There is no dispute that the co-packing agreement and the Tuna the Wonderfish campaign were lawful business relationships, and pursuant to the Court's ruling, the government may only make "incidental[]" references to those business relationships "to show background and fact that there were prior lines of communication and cooperation between alleged conspiracy participants."  Dkt. No. 292 at 3.  The Court also invited proposed limiting instructions to cure the confusion that will result when such references arise at trial.  *See id.*  Absent Mr. Lischewski's proposed limiting instructions, jurors will be confused into incorrectly thinking that Mr. Lischewski committed a crime when he participated in legal business relationships.  Instead of curing the confusion, the government seeks to exacerbate it with proposed limiting instructions that describe the business relationships as "part of the charged offense" and that instruct jurors to consider evidence of the Tuna the Wonderfish campaign as motive for the conspiracy.  The government's proposal contravenes the Court's ruling and incorrectly suggests that the business relationships were unlawful.

---

[5] In the event that references to co-packing or the Tuna the Wonderfish campaign arise at trial, the Court will provide the respective limiting instruction(s) to the jury at the first opportunity.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEF. NO. 10—SPECIFIC ISSUE UNANIMITY IS NECESSARY**

**[If applicable]**

To convict the defendant, you must unanimously agree that the defendant participated in the particular conspiracy that is charged in the indictment.  In other words, even if all of you find that the defendant participated in some conspiracy, if you cannot agree on the dates, the identity of participants, and intended illegal objective of such conspiracy, you must acquit the defendant.

[To be tailored depending on the evidence at trial]

**Authority:** Ninth Circuit Model Jury Instructions for Criminal Cases, No. 7.9; *United States v. Payseno*, 782 F.2d 832, 835 (9th Cir. 1986) ("[A] specific unanimity instruction is appropriate 'where the complex nature of the evidence, a discrepancy between the evidence and the indictment, or some other particular factor creates a genuine possibility of juror confusion.'" (citation omitted)); *United States v. Lapier*, 796 F.3d 1090, 1097–98 (9th Cir. 2015) ("Because the evidence in this case tended to show multiple conspiracies instead of the single charged conspiracy, the failure to give a specific unanimity instruction was plain error violating [the defendant's] substantial right to a unanimous jury verdict as granted by Article III, § 2, and the Sixth Amendment of the United States Constitution." (internal quotation marks and citation omitted)); *United States v. Echeverry*, 698 F.2d 375, 377 (9th Cir.), *reh'g denied and opinion modified,* 719 F.2d 974 (9th Cir. 1983) (holding that the district court's failure to instruct the jury that "they . . . must unanimously agree on the dates of any conspiracy or conspiracies in which they found this defendant participated" was a reversible error where there was a possibility the jury could have found multiple conspiracies within the charged period).

Defendant's Argument:
The above-cited Ninth Circuit precedent illustrates that when there is a "genuine possibility of juror confusion" about the existence of multiple conspiracies, "the district court must give a specific unanimity instruction *sua sponte* requiring the jurors to unanimously agree on which conspiracy the defendant participated in" and failure to give such an instruction is "plain error warranting reversal."  *United States v. Lapier*, 796 F.3d 1090, 1100-11 (9th Cir. 2015).  Here, juror confusion is possible (if not likely) because the indictment is extremely broad and the evidence at trial likely will show that, if any, there were multiple separate agreements that lasted different time ranges, involved different participants, and had different objectives.

**DEF. NO. 11—BACKGROUND EVIDENCE PRECEDING CHARGE PERIOD**

**[If applicable]**

Certain documents and testimony have been admitted for the limited purpose of giving you background information. Such background evidence precedes the time period stated in the indictment.

You should not consider such background evidence in making your determination about the guilt or innocence of the defendant. You should consider it only as a means of helping you understand other evidence in this case.

[To be tailored depending on the evidence at trial]

**Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 4, Section D1 (modified only to remove references to multiple defendants).

Compared against ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 4, Section D1:

Certain documents and testimony have been admitted for the limited purpose of giving you background information. Such background evidence precedes the time period stated in the indictment.

You should not consider such background evidence in making your determination about the guilt or innocence of the defendants. You should consider it only as a means of helping you understand other evidence in this case.

Defendant's Argument:
If relevant evidence is introduced at trial, this limiting instruction would be appropriate to prevent the jury from considering such background evidence for improper purpose.

1
2
3
4
5
6
7
8
9
10
11
12

### DEF. NO. 12—DEFENDANT'S REPUTATION

**[If applicable]**

You have heard testimony about the defendant's character for law-abidingness [and honesty and truthfulness]. You should consider such evidence, along with all other evidence in the case, in deciding whether the government has proved beyond a reasonable doubt that the defendant committed the crime charged.

Evidence of a defendant's reputation, inconsistent with those traits of character ordinarily involved in the commission of the crime charged, may give rise to a reasonable doubt, since you may think it improbable that a person of good character in respect to those traits would commit such a crime.

[To be tailored depending on the evidence at trial]

13
14
15
16
17
18
19
20

**Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 4, Section C12 (modified in accordance with the Court's ruling on Government's Motion in Limine No. 2); ECF 292, 8/29/2019 Criminal Minutes at 2 ("Defendant may introduce opinion and reputation evidence of Defendant's law-abidingness. It may introduce such evidence of honesty and truthfulness but only if (1) the defendant has testified on his own behalf and his credibility has been attacked; or (2) the truth of out-of-court statements made by the defendant has been attacked."); *Michelson v. United States*, 335 U.S. 469, 476 (1948) ("[A defendant] may introduce affirmative testimony that the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged. This privilege is sometimes valuable to a defendant for this Court has held that such testimony alone, in some circumstances, may be enough to raise a reasonable doubt of guilt and that in the federal courts a jury in a proper case should be so instructed.").

21

Compared against ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 4, Section C12:

22
23
24
25

You have heard testimony about the defendant's ~~[good~~ character~~]~~ for law-abidingness ~~[good reputation] [veracity] [honesty~~ and honesty and truthfulness]. You should consider such evidence, along with all other evidence in the case, in deciding whether the government has proved beyond a reasonable doubt that the defendant committed the crime charged.

26
27

~~[~~Evidence of a defendant's reputation, inconsistent with those traits of character ordinarily involved in the commission of the crime charged, may give rise to a reasonable doubt, since you

28

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

may think it improbable that a person of good character in respect to those traits would commit

such a crime.]

Defendant's Argument:
This instruction is taken verbatim form the ABA Model Instruction and tailored only to conform
to the Court's ruling on the Government's Motion in Limine No. 2.

1

2

## DEF. NO. 13—OFFICERS OF THE SAME CORPORATION CANNOT CONSPIRE AMONG THEMSELVES

3

4     A conspiracy requires at least two separate parties. This means that in order to find a

5 conspiracy, you must find that the defendant agreed with one or more other parties, to carry out
the illegal acts that the government claims they carried out.

6     A corporation cannot conspire with its own officers or employees. Nor can a corporation's

7 employees conspire among themselves. This is because a corporation, its officers, and employees

8 are so closely related that they are deemed to share a common purpose and are considered by the

9 law to be one actor. And a single actor cannot violate this part of the Sherman Act.

10

11 **Authority:** 3 L. Sand, J. Siffert, W. Loughlin & S. Reiss, *Modern Federal Jury Instructions* § 58-

12 5 (2018 ed.) (modified only to exclude inapplicable language); *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984) ("The distinction between unilateral and concerted conduct is

13 necessary for a proper understanding of the terms "contract, combination ... or conspiracy" in § 1.
Nothing in the literal meaning of those terms excludes coordinated conduct among officers or

14 employees of the same company. But it is perfectly plain that an internal "agreement" to
implement a single, unitary firm's policies does not raise the antitrust dangers that § 1 was

15 designed to police. The officers of a single firm are not separate economic actors pursuing
separate economic interests, so agreements among them do not suddenly bring together economic

16 power that was previously pursuing divergent goals."); *see also* Proposed Jury Charge at 16-17,
*United States v. Stora Enso N. Am. Corp.*, No. 3:06-cr-00323-CFD (D. Conn. July 19, 2007) ECF

17 153 ("A corporation cannot conspire with its own officers or employees. Nor can a corporation's
employees conspire among themselves."); Jury Instructions at 10, *United States v. Northcutt*, No.

18 07-60220 (S.D. Fla. Nov. 12, 2008), ECF 230 ("Section 1 of the Sherman Act cannot be violated

19 by one company acting alone. Rather, an agreement requires joint action by two or more people
working for different companies. Thus, a corporation and its employees are viewed as one entity

20 and are not legally capable of conspiring with each other.")

21 Compared against 3 L. Sand, J. Siffert, W. Loughlin & S. Reiss, *Modern Federal Jury Instructions*

22 § 58-5 (2018 ed.):

23 ~~The first thing that is required for a~~ A conspiracy ~~is~~ requires at least two separate parties.

24 This means that in order to find a conspiracy, you must find that ~~at least one~~ the defendant agreed

25 with one or more other parties, ~~including but not necessarily limited to the other defendants,~~ to

26 carry out the·illegal acts that the government claims they carried out.

27     A corporation cannot conspire with its own officers or employees. Nor can a corporation's

28 employees conspire among themselves. This is because a corporation, its officers, and employees

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

are so closely related that they are deemed to share a common purpose and are considered by the law to be one actor. And a single actor cannot violate this part of the Sherman Act.

~~For similar reasons, a corporation cannot conspire with its wholly owned subsidiary, nor can two wholly owned subsidiaries of one parent company conspire with each other. Like a corporation and its employees, a corporation and its wholly owned subsidiaries share the same purpose and are, therefore, one actor under the law.~~

~~In this case, however, there is a dispute whether _____ and _____ are in fact a single business enterprise or are instead separate corporate entities capable of conspiring with each other. It is for you to determine, on the basis of all the facts and circumstances, whether _____ and _____ are separate and distinct corporate entities or a single, integrated business enterprise.~~

~~In making this determination you may, of course, consider the extent of common ownership of the firms. You may also consider the nature of their management. For example, do the firms enjoy independent, day-to-day control of their businesses? Are they run by separate managements? To what extent do they share a unity of purpose?~~

~~(*If applicable*: Even if you find that _____ and _____ operated as a single entity, if you also find that the purpose of integrating the firms was to eliminate competition between them, then you must treat the firms as separate entities that are capable of conspiring with each other.)~~

Defendant's Argument:

The defendant proposes this instruction based on 3 L. Sand, J. Siffert, W. Loughlin & S. Reiss, Modern Federal Jury Instructions § 58-5 (2018 ed.), which is attached hereto as Exhibit A. An agreement among officers or employees of the same firm cannot constitute a violation of the Sherman Act because they are "not separate economic actors pursuing separate economic interests." *Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1034 (9th Cir. 2005); *Harvey v. Fearless Farris Wholesale, Inc.*, 589 F.2d 451, 457 (9th Cir. 1979) ("The courts have almost universally rejected the position that two or more directors, officers or agents acting on behalf of a single corporation can be capable of conspiring in restraint of trade, either among themselves or with their corporation."); *Chapman v. Rudd Paint & Varnish Co.*, 409 F.2d 635, 642–43 (9th Cir. 1969) (rejecting the plaintiff's argument that an agent of a company was "sufficiently implicated" to be viewed as coconspirator with the company). Failing to give this instruction will result in the jury incorrectly concluding that the defendant could be convicted for agreeing with Cameron and/or Worsham even though they were employees of the same company.

**DEF. NO. 14—CONSCIOUSLY FOLLOWING EACH OTHER'S PRICE IS NOT ILLEGAL**

The government contends that defendant and his competitors engaged in similar conduct, namely [*state the nature of parallel conduct*]. The government further contends that this conduct, when considered with other evidence, shows that a conspiracy existed among defendant and his competitors.

The mere fact that defendant and his competitors have [*state nature of parallel conduct*] does not by itself establish the existence of a conspiracy among them. Their behavior may be no more than the result of the exercise of independent judgment in response to identical or similar market conditions. For example, everyone might open their umbrellas on a rainy day, but that similar behavior would not necessarily mean that they had agreed or conspired to open their umbrellas. A business may lawfully adopt the same prices, conditions of sale, or other practices, as its competitors as long as it does so independently and not as part of an agreement or understanding with one or more of its competitors. If the defendant and his competitors acted similarly but independently of one another, without any agreement or understanding between two or more of them, then there would not be a conspiracy.

You must decide whether the government has proved beyond a reasonable doubt that competitors' similar conduct was, more probable than not, the result of an agreement or understanding among them. In doing so, you may consider competitors' similar conduct along with other evidence. You may infer that a conspiracy existed only if you find that the evidence, when viewed as a whole, makes it more likely that competitors had an agreement or understanding with one another than that they acted independently of one another. In making this determination, you should consider the similar conduct against the entire background in which it took place. The evidence, when viewed all together, must satisfy you beyond a reasonable doubt that it is more likely that competitors' similar actions were the product of an agreement or understanding with one another than their own independent decisions.

If after considering all of the evidence, you conclude that the government has shown beyond a reasonable doubt that it was more likely than not that competitors' similar conduct was

34

the result of an agreement or understanding among them than their independent decisions, you must find that a conspiracy existed and continue to evaluate the remaining allegations in the indictment. If, after considering all of the evidence, you conclude that the government failed to prove beyond a reasonable doubt that the defendant's similar conduct was more likely than not the result of an agreement or understanding with one or more of the competitors, then you must acquit the defendant.

[To be tailored depending on the evidence at trial]

**Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases at 113 (2016). (tailored for a criminal case with a single defendant); 3 L. Sand, J. Siffert, W. Loughlin & S. Reiss, Modern Federal Jury Instructions § 58-8 (2018 ed.); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("[C]onduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy. To survive a motion for summary judgment or for a directed verdict, a plaintiff seeking damages for a violation of § 1 must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently." (citations omitted)); Jury Instructions at 24, *United States v. Swanson*, No. 4:06-cr-00692-PJH (N.D. Cal. Mar. 10, 2008) ECF 337 ("It is not in itself unlawful for competitors to engage in price coordination. Price coordination occurs when competitors recognize that they have shared economic interests and, consequently, follow each other's conduct in setting prices."); Tr. at 2461:6-2461:9, *United States v. Usher*, No. 1:17-cr-00019 (S.D.N.Y. November 8, 2018) ECF 239 ("People responding to common perceptions of the market may take independent actions that are similar or parallel. But parallel conduct alone is not sufficient to prove an illegal agreement.").

Compared against ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases at 113 (2016):

The government~~Plaintiff~~ contends that defendant~~s~~ and his competitors engaged in similar conduct, namely [*state the nature of parallel conduct*]. ~~Plaintiff~~The government further contends that this conduct, when considered with other evidence, shows that a conspiracy existed among defendant and his competitor~~s~~. The mere fact that defendant and his competitor~~s~~ have [*state nature of parallel conduct*] does not by itself establish the existence of a conspiracy among ~~defendants~~them. Their behavior may be no more than the result of the exercise of independent judgment in response to identical or similar market conditions. For example, everyone might open their umbrellas on a rainy day, but that similar behavior would not necessarily mean that they had agreed or conspired to open their umbrellas. A business may lawfully adopt the same prices,

35

conditions of sale, or other practices, as its competitors as long as it does so independently and not as part of an agreement or understanding with one or more of its competitors. If the defendant and his competitors acted similarly but independently of one another, without any agreement or understanding between two or more of them, then there would not be a conspiracy.

You must decide whether the government has proved beyond a reasonable doubt that competitors' ~~defendants'~~ similar conduct was, more probable than not, the result of an agreement or understanding among them. In doing so, you may consider ~~defendants'~~ competitors' similar conduct along with other evidence. You may infer that a conspiracy existed only if you find that the evidence, when viewed as a whole, makes it more likely that ~~defendants~~ competitors had an agreement or understanding with one another than that they acted independently of one another. In making this determination, you should consider the similar conduct against the entire background in which it took place. The evidence, when viewed all together, must satisfy you beyond a reasonable doubt that it is more likely that ~~defendants'~~ competitors' similar actions were the product of an agreement or understanding with one another than their own independent decisions.

If after considering all of the evidence, you conclude that ~~plaintiff~~ the government has shown beyond a reasonable doubt that it was more likely than not that ~~defendants'~~ competitors' similar conduct was the result of an agreement or understanding among them than their independent decisions, you must find ~~for plaintiff on the question of whether~~ that ~~defendants participated in~~ a conspiracy existed and continue to evaluate the remaining allegations in the indictment. If, after considering all of the evidence, you conclude that ~~plaintiff~~ the government failed to prove beyond a reasonable doubt that ~~a~~ the defendant~~'~~'s similar conduct was more likely than not the result of an agreement or understanding with one or more of the ~~other defendants~~competitors, then you must ~~find against plaintiff and in favor of that defendant on the question of whether that defendant participated in a conspiracy.~~acquit the defendant.


Defendant's Argument:

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The defendant proposes the ABA Model Instruction in Civil Antitrust Cases for "Parallel Conduct". One issue in this case is whether the similarity of certain prices among different firms was product of the firms' independent decision to follow each other or product of an illegal agreement. The jury needs to be instructed that it may infer the existence of a conspiracy only if the Government has produced evidence "that tends to exclude the possibility that the alleged conspirators acted independently." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) (cleaned up).

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1

## DEF. NO. 15—EXCHANGING PRICING INFORMATION IS NOT ILLEGAL

2

3      Evidence has been introduced concerning the exchange of information among competitors

4  about their prices for canned tuna. The government has alleged that such exchanges were made in

   furtherance of a conspiracy to fix prices.

5

6      The fact that competitors exchanged price information or publicly announced prices does

7  not necessarily establish an agreement to fix prices. There may be other, legitimate reasons that

   would lead competitors to exchange price information or announce prices, and the law recognizes

8  that exchanges of price information or public announcements of prices may enhance competition

9  and benefit consumers. On the other hand, if you find that price information was exchanged or

10 announced and that the defendant offers no reasonable explanation as to why they were

11 exchanging or announcing that information, you may consider whether it was being exchanged or

12 announced as part of an agreement to fix prices, along with all of the other evidence bearing on

13 whether there was an agreement to fix prices.

14

**Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases at 34
15 (2016) (modified to remove references to multiple defendants and to include bracketed language);
   ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009),
16 Chapter 3, Section I; *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.16 (1978) ("The
   exchange of price data and other information among competitors does not invariably have
17 anticompetitive effects; indeed such practices can in certain circumstances increase economic
   efficiency and render markets more, rather than less, competitive. For this reason, we have held
18 that such exchanges of information do not constitute a per se violation of the Sherman Act.");
   *Wall Prod. Co. v. Nat'l Gypsum Co.*, 326 F. Supp. 295, 314 (N.D. Cal. 1971) ("[T]he Supreme
19 Court held lawful, and not in violation of the Sherman Act, an exchange between sellers of price
   information relating to specific customers, even under circumstances amounting to an agreement,
20 where the purpose of the exchange was to safeguard against fraud and deception, and even though
   prices might be affected thereby."); *Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.*,
21 971 F.2d 37, 54 (7th Cir. 1992) (Advance price announcements "served important purpose in the
   industry" because customers "bid on building contracts well in advance of starting construction
22 and, therefore, required sixty days' or more advance notice of price increases."); *see also* Jury
   Instructions at 23, *United States v. Swanson*, No. 4:06-cr-00692-PJH (N.D. Cal. Mar. 10, 2008)
23 ECF 337; Jury Instructions at 8, *United States v. Bai*, No. 3:09-cr-00110-SI (N.D. Cal. Dec. 9,
   2013) ECF 1251; Tr, at 2460:7-2460:24, *United States v. Usher*, No. 1:17-cr-00019 (S.D.N.Y.
24 Nov. 8, 2018) ECF 239.

25

26 Compared against ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust
   Cases at 34 (2016):

27

28

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1    Evidence has been introduced concerning the exchange of information among ~~defendants~~

2    ~~[*and/or other persons*]~~competitors about their prices for ~~[*product X*]~~canned tuna. ~~Plaintiff~~ The

3    government has alleged that such exchanges were made in furtherance of a conspiracy to fix

4    prices.

5    The fact that competitors~~defendants~~ exchanged price information ~~[or publicly announced~~

6    ~~prices]~~ does not necessarily establish an agreement to fix prices. There may be other, legitimate

7    reasons that would lead competitors to exchange price information ~~[or announce prices]~~, and the

8    law recognizes that exchanges of price information ~~[or public announcements of prices]~~ may

9    enhance competition and benefit consumers. On the other hand, if you find that price information

10   was exchanged ~~[or announced]~~ and that the defendant~~s~~ offer~~s~~ no reasonable explanation as to why

11   they were exchanging ~~[or announcing]~~ that information, you may consider whether it was being

12   exchanged ~~[or announced]~~ as part of an agreement to fix prices, along with all of the other

13   evidence bearing on whether there was an agreement to fix prices.

14

15   Defendant's Argument:
     The defendant requests that the Court give the instruction on the ABA Model Instruction in Civil
16   Antitrust Cases for "Evidence of Exchange of Price Information."  It is undisputed that
     "exchanges of information do not constitute a per se violation of the Sherman Act."  *United States*
17   *v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.16 (1978).  And a central issue in this case is whether
     alleged conspirators were exchanging information to compete more efficiently or to further a
18   price-fixing conspiracy.

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1
2

# DEF. NO. 16—POSSESSION AND USE OF COMPETITOR INFORMATION IS NOT ILLEGAL

3

It is not illegal for a competitor to obtain, rely upon, and act on pricing and other

4

information received from customers, media, internet sources, industry analysts, brokers, and

5

others involved in the production and sale of canned tuna.  This practice is sometimes referred to

6

as gathering "competitive intelligence."

7

8

**Authority:** *Wilcox v. First Interstate Bank of Oregon, N.A.*, 815 F.2d 522, 526-27 (9th Cir. 1987)
(dissemination of public information does not support an inference of price fixing); *Hanson v.*

9

*Shell Oil Co.*, 541 F.2d 1352, 1360 (9th Cir. 1976) (exchange of readily available public
information does not support inference of conspiracy); *In re Citric Acid Litigation,* 996 F. Supp.

10

951, 959 (N.D. Cal. 1998) (same).

11

Defendant's Argument:

12

The evidence in this case will likely show that the alleged coconspirators vigorously competed
with each other, including by collecting competitive intelligence through various public sources.

13

Absent this instruction, the jury could improperly believe that such evidence may support an
inference of price fixing.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEF. NO. 17—PARTICIPATING IN TRADE ASSOCIATIONS IS NOT ILLEGAL**

**[If applicable]**

Persons who are in competition with each other in an industry, trade, or profession may lawfully join together in organizations to promote or accomplish lawful objectives they share, or to assist each other in solving common industry problems. Such organizations are commonly referred to as trade associations. The law does not prohibit persons who are otherwise competitors from joining together to carry out lawful and legitimate activities.

Mere membership in a trade association does not establish guilt, even if that association is being used for an illegal purpose. No inference that the charged conspiracy was formed or existed may be drawn from the mere fact that there is a trade association, that the defendant was a member of a trade association, or that certain of defendant's subordinates attended meetings of the trade association.

Nevertheless, you may consider trade association membership, meetings, and discussions, along with all the other evidence, in determining whether the defendant entered into an agreement or mutual understanding in restraint of interstate commerce as charged in the indictment.

[To be tailored depending on the evidence at trial]

**Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 4, Section B4 (tailored).

Compared against ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 4, Section B4:

Persons who are in competition with each other in an industry, trade, or profession may lawfully join together in organizations to promote or accomplish lawful objectives they share, or to assist each other in solving common industry problems. Such organizations are commonly referred to as trade associations. The law does not prohibit persons who are otherwise competitors from joining together to carry out lawful and legitimate activities.

Mere membership in a trade association does not establish guilt, even if that association is being used for an illegal purpose. No inference that the charged conspiracy was formed or existed

may be drawn from the mere fact that there is a trade association, that the defendant was a [or its officers/employees were] member[s] member of a trade association, or that certain of defendant's [officers/employees] subordinates attended meetings of the trade association.

Nevertheless, you may consider trade association membership, meetings, and discussions, along with all the other evidence, in determining whether thea defendant entered into an agreement or mutual understanding in restraint of interstate commerce as charged in the indictment.

Defendant's Argument:
The defendant was involved in many trade associations in the tuna industry.  This instruction is necessary to avoid any risk that the jury convict the defendant based on his membership in lawful trade associations.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEF. NO. 18—GEAR-TYPE AGREEMENT CANNOT BE THE SOLE BASIS

**[If gear-type evidence is not excluded and Rule of Reason instructions are not given]**

The indictment alleges that the defendant and his coconspirators carried out the illegal agreement to suppress and eliminate competition by fixing prices of canned tuna by a number of different means and methods. The government is not required to prove all of the means and methods that are alleged in the indictment.

However, if you find that the only agreement that the defendant participated in was an agreement to limit and restrict certain types and categories of products based on the fishing methods used or an agreement not to brand canned tuna with specific fishing methods, you must find him not guilty.

[To be tailored depending on the evidence at trial]

**Authority:** Motion to Dismiss Hearing Tr. at 21:20-22:4 (May 7, 2019) ECF 162, ("If there is – after hearing the evidence, Your Honor, if you believe that there is some risk of confusion, the Government would be happy to meet and confer with Defendant and fashion an instruction to avoid any such risk . . . .").

Defendant's Argument:
At the Motion to Dismiss hearing, the government represented that it did not intend to have "the Sherman Act violation . . . pinned simply on a finding of [Paragraph] 10(c) [of the Indictment]" and agreed that "an instruction to avoid any such risk" may be appropriate depending on the evidence at trial.  Motion to Dismiss Hearing Tr. at 18:8-18:17, 20:3-20:7; 21:20-22:4 (May 7, 2019) ECF 162.  The government objects to this instruction even as the government continues to oppose the defendant's Motion to Exclude Evidence and Argument Relating to "FAD-Free" Fishing.  If the Court denies the defendant's currently pending motion, the Court must give this instruction to avoid the risk that the jury convicts the defendant solely on a finding that he entered into the agreement regarding fishing methods which would be subject to Rule of Reason analysis.

43

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

### DEF. NO. 19—PREDATORY PRICING IS ILLEGAL

In California, it is unlawful for any person engaged in business within the state to sell any article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competitors or destroying competition.

**Authority:** Cal. Bus. & Prof. Code § 17043.

Compared against Cal. Bus. & Prof. Code § 17043:

In California, Iit is unlawful for any person engaged in business within thise Sstate to sell any article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competitors or destroying competition.

Defendant's Argument:
This instruction provides the necessary context for the jury to properly interpret the evidence in this case.  For example, some evidence refers to competitors' "cheating."  It is for the jury to determine whether such evidence relates to alleged cheating on a price-fixing agreement or whether it concerns competitors selling below cost, a form of predatory pricing which is illegal in many states, including in California.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEF. NO. 20—THEORY OF DEFENSE**

**[Mr. Lischewski intends to request an instruction on the defense theory of the case. We reserve our right to submit that request at the close of trial.]**

**Authority:** Fed. R. Crim. P. 30; *United States v. Cortes*, 757 F.3d 850, 857 (9th Cir. 2014) ("A criminal defendant is entitled to jury instructions related to a defense theory so long as there is any foundation in the evidence and the instruction is supported by law." (internal quotation marks omitted)); *United States v. Burt*, 410 F.3d 1100, 1103 (9th Cir. 2005) ("A defendant is entitled to instructions relating to a defense theory for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility.").

Defendant's Argument:

"A criminal defendant is entitled to jury instructions related to a defense theory so long as there is any foundation in the evidence and the instruction is supported by law." *United States v. Cortes*, 757 F.3d 850, 857 (9th Cir. 2014).  The government has not provided any authority to support its objection to giving an instruction on the defendant's theory of defense.

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

**DEF. NO. 21—THIRD ELEMENT—INTENT TO UNREASONABLY RESTRAIN TRADE (RULE OF REASON)**

The third element that the government must prove, beyond a reasonable doubt, is that the defendant joined the conspiracy with the intent to unreasonably restrain competition. This means that even if you find that the defendant and any other coconspirators knowingly agreed to fix the price of canned tuna, you may only find the defendant guilty if you find that conduct to be unreasonable.

In making this determination, you must first determine whether the government has proved that the challenged restraint has resulted in a substantial harm to competition in a relevant product and geographic market. If you find that the government has proved that the challenged restraint resulted in a substantial harm to competition in a relevant market, then you must consider whether the restraint produced countervailing competitive benefits. If you find that it did, then you must balance the competitive harm against the competitive benefit. The challenged restraint is illegal under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighed the competitive benefit. I will come back to review each step of the analysis in more detail.

**Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases at 3 (2016).

Defendant's Argument:

The defendant objects to the application of the *per se* rule in this case and asks that this instruction and the next six instructions taken from the ABA Model Instructions in Civil Antitrust Cases be given.  "[T]he Sherman Act was intended to prohibit only unreasonable restraints of trade."  *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 98 (1984); *see also Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1155 (9th Cir. 2003) ("When a defendant advances plausible arguments that a practice enhances overall efficiency and makes markets more competitive, per se treatment is inappropriate, and the rule of reason applies.").  And the Fifth and Sixth Amendments to the U.S. Constitution "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin*, 515 U.S. 506, 509-10 (1995) (citation omitted); *see also United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019); *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000).  The intent to unreasonably restrain trade is an element of a Sherman Act violation and the jury cannot convict the defendant without finding it beyond a reasonable doubt.

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

## DEF. NO. 22—THIRD ELEMENT—RULE OF REASON—PROOF OF COMPETITIVE HARM

As I have told you, in order to prove that the price-fixing agreement is unreasonable, the government first must demonstrate that the restraint has resulted in a substantial harm to competition. Although it may be relevant to the inquiry, harm that occurs merely to any individual competitor or group of competitors is not sufficient, by itself, to demonstrate harm to competition generally. That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

Furthermore, the government must show that the harm to competition occurred in an identified market, known as a "relevant market." There are two aspects to a relevant market. The first aspect is known as the relevant product market. The second aspect is known as the relevant geographic market. I will address the question of a relevant market in greater detail momentarily.

It is the government's burden to prove the existence of a relevant market.

If you find that the government has proved the existence of a relevant market, then you must determine whether the government also has proved that the price-fixing agreement has a substantial harmful effect on competition in that market. A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, and higher product quality. If the price-fixing agreement has not resulted in higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm and you should find that the challenged conduct was not unreasonable.

In determining whether the price-fixing agreement has produced competitive harm, you may look at the following factors: the effect of the restraint on prices, output, product quality and service; the purpose and nature of the restraint; the nature and structure of the relevant market, both before and after the restraint was imposed; the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and whether the defendant's company possessed "market power."

47

1    The last factor mentioned, market power, has been defined as an ability to profitably raise

2    prices above those that would be charged in a competitive market for a sustained period of time.

3    A firm that possesses market power generally can charge higher prices for the same goods or

4    services than a firm in the same market that does not possess market power. The ability to charge

5    higher prices for better products or services, however, is not market power. An important factor in

6    determining whether a firm possesses market power is the firm's market share; that is, its

7    percentage of the products or services sold in the relevant market by all competitors. If a firm

8    does not possess a substantial market share, it is less likely that it possesses market power. If a

9    firm does not possess this kind of power, then it is less likely that the price-fixing agreement has

10   resulted in a substantial harmful effect on competition in the market.

11

12   **Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases at 5-6
     (2016).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1

**DEF. NO. 23—THIRD ELEMENT—RULE OF REASON—MARKET DEFINITION**

2

3       The government must prove beyond a reasonable doubt that the defendant's company and

4  its alleged coconspirators had market power in a relevant market. There are two aspects you must

5  consider in determining whether the government has met its burden to prove the relevant market

6  beyond a reasonable doubt. The first is the relevant product market; the second is the relevant

7  geographic market.

8  **Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases at

9  106 (2016).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEF. NO. 24—THIRD ELEMENT—RULE OF REASON—RELEVANT PRODUCT MARKET

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes.

To determine whether products are reasonable substitutes for each other, you should consider whether a small but significant permanent increase in the price of one product would result in a substantial number of consumers switching from that product to another. If you find that such switching would occur, then you may conclude that the products are in the same product market.

In evaluating whether various products are reasonably interchangeable or are reasonable substitutes for each other, you may also consider: (1) consumers' views on whether the products are interchangeable; (2) the relationship between the price of one product and sales of another; (3) the presence or absence of specialized vendors; (4) the perceptions of either industry or the public as to whether the products are in separate markets; (5) the views of the retailers and manufacturers regarding who the respective competitors are; and (6) the existence or absence of different customer groups or distribution channels.

In this case, the government contends that the relevant product market is [state the government's contention]. By contrast, the defendant asserts that the government has failed to allege the proper relevant product market. The defendant also contends that certain alternative products are also part of the relevant product market.

If, after considering all the evidence, you find that the government has proved a relevant product market comprised of products that are reasonably interchangeably, then you should continue to evaluate the remaining allegations in the indictment. However, if you find that the government has failed to prove such a market, then you must find the defendant not guilty.

[To be tailored depending on the evidence at trial]

**Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases at 108 (2016).

# DEF. NO. 25—THIRD ELEMENT—RULE OF REASON—RELEVANT GEOGRAPHIC MARKET

The relevant geographic market is the area in which the defendant faces competition from other firms that compete in the relevant product market and to which customers can reasonably turn for purchases. When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or even smaller.

The government has the burden of proving the relevant geographic market beyond a reasonable doubt. In this case, the government claims that the relevant geographic market is [state the government's contention]. In determining whether the government has met its burden and demonstrated that its proposed geographic market is proper, you may consider several factors, including: (1) the geographic area in which the defendant's company sells and where its customers are located; (2) the geographic area to which customers turn for supply of the product; (3) the geographic area to which customers have turned or have seriously considered turning; (4) the geographic areas that suppliers view as potential sources of competition; and (5) whether governmental licensing requirements, taxes, or quotas have the effect of limiting competition in certain areas.

If, after considering all the evidence, you find that the government has proved a relevant geographic market, then you should continue to evaluate the remaining allegations in the indictment. However, if you find that the government has failed to prove such a market, then you must find the defendant not guilty.

[To be tailored depending on the evidence at trial]

**Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases at 113 (2016).

1

2

### DEF. NO. 26—THIRD ELEMENT—RULE OF REASON—EVIDENCE OF COMPETITIVE BENEFITS

3

4

5

If you find that the government has proved that the price-fixing agreement resulted in substantial harm to competition in a relevant market, then you next must determine whether the restraint also benefits competition in other ways.

6

7

8

9

10

If you find that the price-fixing agreement results in competitive benefits, then you also must consider whether agreement was reasonably necessary to achieve the benefit. If the government proves that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraint.

11

[To be tailored depending on the evidence at trial]

12

13

**Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases at 8 (2016).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1

2

### DEF. NO. 27—THIRD ELEMENT—RULE OF REASON—BALANCING THE COMPETITIVE EFFECTS

3

4

5

6

7

8

9

10

11

If you find that the price-fixing agreement was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint. If the competitive harm substantially outweighs the competitive benefits, then the agreement is unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the agreement is not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors. The government bears the burden of proving beyond a reasonable doubt that the anticompetitive effect of the conduct substantially outweighs its benefits.

12

13

14

**Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases at 9 (2016).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1

2

**DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INSTRUCTION NO. 4: ON OR ABOUT—DEFINED**

3

Defendant's Argument:

The defendant objects to giving this instruction as unnecessary because the indictment does not specify any exact dates. Instead, the indictment states that the conspiracy began "in or about November 2010 and continu[ed] until in or about December 2013, the exact dates being unknown to the Grand Jury." The indictment speaks for itself and giving this instruction where no exact date is specified in the indictment will mislead the jury to disregard the charged conspiracy period altogether.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

### DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INSTRUCTION NO. 7: PER SE VIOLATION

3

<u>Defendant's Argument:</u>

The defendant objects to the government's inclusion of the instruction on the *per se* rule.  If the Court does not instruct the jury on the intent to unreasonably restrain trade, the Court need not instruct the jury on what types of agreements are considered per se under the law.  *See United States v. Bai*, No. 3:09-cr-00110-SI (N.D. Cal. Dec. 9, 2013) ECF 1251 (no instruction on *per se*). In any case, it's premature to decide whether such an instruction is necessary.  If any evidence that a price-fixing agreement was reasonable is introduced at trial, the Court can at that point decide whether an instruction on *per se* is necessary.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

56

1

2

### DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INSTRUCTION NO. 8: ACTS AND STATEMENTS OF COCONSPIRATORS

3

Defendant's Argument:

4

The Government's proposed instruction inaccurately suggests that the jury—rather than the Court—is responsible for determining whether coconspirator statements are admissible. *See Carbo v. United States*, 314 F.2d 718, 737 (9th Cir. 1963). Indeed, for this reason, the Ninth Circuit has found an instruction similar to the Government's proposed instruction "confusing"; "the admissibility of this [co-conspirator statement] evidence (concededly relevant but challenged under a technical evidentiary rule of competence) depends upon a disputed preliminary question of fact which coincides with the ultimate jury question upon the merits." *Id.* at 736. Once the Court decides that the coconspirator statements are admissible, the jury can consider such evidence "in reaching its determination upon the issue of innocence and guilty," and "[i]t will not do to tell the jury that it must reach its determination first." *Id.*

5

6

7

8

9

Despite this risk for confusion, the government seems set on requesting this instruction in the hope that the jury will improperly conclude that it can consider acts and statements of coconspirators in determining the defendant's innocence and guilt. But the Court must first find that the defendant knowingly joined the conspiracy before the jury can consider any co-conspirator acts or statements.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1

**DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INSTRUCTION NO. 10: PROOF OF OVERT ACT UNNECESSARY**

2

3

<u>Defendant's Argument:</u>

The defendant objects to this instruction as unnecessary.  As recommended by the Ninth Circuit Model Instruction No. 8.16, neither party's proposed instruction on the Element of the Sherman Act includes language concerning proof of an over act in furtherance of the conspiracy.  Without this instruction, the jury will not be looking for any overt act.  Indeed, this instruction was omitted in two of the most recent Sherman Act cases in this district.  *See United States v. Marr*, Dkt. 337 at 23, No. 4:14-cr-00580-PJH (N.D. Cal. Aug. 22, 2017); *United States v. Bai*, Dkt. 1251 at 7-8, No. 3:09-cr-00110-SI (N.D. Cal. Dec. 9, 2013).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

**DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INSTRUCTION NO. 12: INDIVIDUAL LIABILITY**

Defendant's Argument:

The defendant objects to this instruction as unnecessary and unsupported by evidence in this case. As an initial matter, the Government inserts the following instruction on deliberate ignorance based on the Seventh Circuit Pattern Jury Instruction:

> You may also find that the defendant acted knowingly if you find beyond a reasonable doubt that he believed it was highly probable that his employees were reaching agreements with competitors and that he took deliberate action to avoid learning that fact.  You may not find that the defendant acted knowingly if he was merely mistaken or careless in not discovering the truth or if he failed to make an effort to discover the truth.

*See* 7th Cir. Crim. Pattern Instr. 4.10.  But the Seventh Circuit Committee on the Federal Criminal Jury instructions notes that this paragraph, "commonly referred to as an 'ostrich' instruction, will not be appropriate in every case in which knowledge is an issue."  Similarly, the Ninth Circuit cautions that such an instruction should be given "rarely" because of "the risk that the jury will convict on a standard of negligence: that the defendant should have known the conduct was illegal."  *United States v. Alvarado*, 838 F.2d 311, 314 (9th Cir. 1987).  Thus, to give such an instruction, "the facts must support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution."  *Id.*  The government has provided no reason to believe such facts will be present in this case.

But even without the above quoted paragraph, an instruction of individual liability is inappropriate as duplicative of the instruction on "Knowingly" and confusing.  For example, in *United States v. Bai*, the government argued that an instruction on individual liability was unnecessary because (1) "the government alleges that defendant is guilty of price fixing based *on his own conduct*"; (2) such an instruction "is appropriate when an individual corporate officer is tried with his corporation"; and (3) when "'knowingly' is already defined, giving a superior liability instruction would likely confuse the jury, which would then be faced with multiple instructions defining 'knowingly.'"  United States' Opp. to Def Bai's Proposed Jury Instruction Regarding Liability of Superiors at 1-2, and 4, *United States v. Bai*, No. 3:09-cr-00110-SI (N.D. Cal. Dec. 9, 2013) ECF 1246.  In *Bai*, the Court was persuaded by the government's argument and held that the government's questioning of the defendant's subordinates did "not support a superior liability instruction," and that it "would be potentially confusing to the jury to provide such an instruction."  Like in *Bai*, the government here is alleging that the defendant is guilty of price fixing based on his own conduct, the defendant is not being tried with his corporation, and "knowingly" is comprehensively defined elsewhere.

However, if the Court finds that the evidence at trial warrants such an instruction, the defendant proposes the following alternative instruction consistent with the Ninth Circuit precedent:

**SECOND ELEMENT—INDIVIDUAL LIABILITY**

A corporate officer, such as a president of a company, is subject to prosecution under Section 1 of the Sherman Act whenever he knowingly participates in effecting the illegal conspiracy by directly participating in the conspiracy and/or indirectly or directly authorizing, ordering, or helping a subordinate perpetrate the crime. A person is responsible for conduct that he performs or causes to be performed on his behalf.

To find a defendant liable for the acts of a subordinate as distinguished from his own acts, you must find beyond a reasonable doubt that the defendant knew of the existence of the conspiracy and knowingly authorized, ordered, or consented to the participation of a subordinate in that conspiracy for the purpose of furthering the conspiracy to suppress and eliminate competition by fixing prices for canned tuna sold in the United States.

On the other hand, a person who has no knowledge of a conspiracy, but who happens to act in a way which furthers some purpose of the conspiracy, does not thereby become a member of the conspiracy.  Moreover, a person is not responsible for the conduct of others performed on behalf of a corporation merely because that person is an officer, employee, or other agent of the corporation.

**Authority:** ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 4, Section B3 (tailored); *United States v. Brown*, 936 F.2d 1042, 1047 n. 4 (9th Cir. 1991) (approving instruction that said: "Defendants Hal Brown, Jr. and Michael F. Tobey were officials of Gannett and Foster & Kleiser with subordinate employees under their supervision during the time of their alleged involvement in the conspiracy charged in the Information. To find the defendant liable for the acts of the subordinate as distinguished from his own acts, you must find beyond a reasonable doubt that the defendant knew of the existence of the conspiracy and knowingly authorized[,] ordered or consented to the participation of a subordinate in that conspiracy. A company official who knowingly participates in the conspiracy in this manner is liable to the same extent as any other member of the conspiracy."); *id.* at 1048 (approving the above-quoted instruction because "participating knowingly" was defined as "encouraging, advising or assisting for the purpose of furthering the conspiracy.").

Compared against ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases (2009), Chapter 4, Section B3:

A corporate officer, such as a president of a company, is subject to prosecution under Section 1 of the Sherman Act whenever ~~[he] [she]~~ knowingly participates in effecting the illegal conspiracy by directly participating in the conspiracy and/or indirectly or directly authorizing,

60

ordering, or helping a subordinate perpetrate the crime. A person is responsible for conduct that ~~[he] [she]~~ performs or causes to be performed on ~~[his] [her]~~ behalf.

To find a defendant liable for the acts of a subordinate as distinguished from his own acts, you must find beyond a reasonable doubt that the defendant ~~was aware~~knew of the existence of the ~~charged~~ conspiracy~~, that [he] [she] knew that the subordinate was participating in the conspiracy, and, finally, that [he] [she] was in a position to stop the subordinate from participating, but that [he] [she] failed to do so, or otherwise~~ and knowingly authorized, ordered, or consented ~~helped~~ to the participation of a subordinate in that conspiracy for the purpose of furthering the conspiracy to suppress and eliminate competition by fixing prices for canned tuna sold in the United States ~~perpetrate the crime~~.

On the other hand, a person who has no knowledge of a conspiracy, but who happens to act in a way which furthers some purpose of the conspiracy, does not thereby become a member of the conspiracy.  Moreover, a person is not responsible for the conduct of others performed on behalf of a corporation merely because that person is an officer, employee, or other agent of the corporation.

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1

2

**DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INSTRUCTION NO. 13:
IGNORANCE OF THE LAW**

3

4

<u>Defendant's Argument:</u>
The defendant objects to this instruction because it is based on the government's speculation that the defendant will introduce evidence of his ignorance of the law.  The defendant asks that the Court defer determining whether this instruction is necessary until the close of trial.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

# DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INSTRUCTION NO. 14: PROOF OF INTENT

<u>Defendant's Argument:</u>

The defendant objects to this instruction as unsupported by any legal authority.  The government's proposed instruction is not based on either the Ninth or the ABA model instructions.  Nor has the government provided an example of an Antitrust case giving a similar instruction.

Moreover, this instruction is misleading because the jury may improperly conclude that a person may enter into an agreement without a subjective intent to agree.  Thus, if the Court is inclined to give any instruction on "Proof of Intent," the defendant asks that the Court give the following alternative instruction:

## SECOND ELEMENT—PROOF OF INTENT

To prove the second element beyond a reasonable doubt, the government must prove the defendant's subjective intent.  This means a person who merely pretended to agree but did not intend to honor the agreement cannot be found to have knowingly joined a conspiracy.

**Authortiy:** *United States v. Andreas*, 216 F.3d 645, 669 (7th Cir. 2000) ("We agree that a defendant's subjective intent is a required element of a criminal antitrust violation, and that a defendant who pretended to agree but did not intend to honor the agreement could not be convicted of a crime." (citations omitted)); *United States v. U.S. Gypsum Co*., 438 U.S. 422, 443 n.20 (1978) ("In a conspiracy, two different types of intent are generally required-the basic intent to agree, which is necessary to establish the existence of the conspiracy, and the more traditional intent to effectuate the object of the conspiracy.").

**DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INSTRUCTION NO. 15:**
**DISPOSITION OF CHARGE AGAINST COCONSPIRATORS**

Defendant's Argument:

The defendant objects to this instruction because it incorrectly instructs the jury that "whether other[] [coconspirators] have been prosecuted or not prosecuted not should not influence [its] verdict."  In fact, the jury should consider the fact that the government's cooperating witnesses were given a plea deal, non-prosecution agreement, and/or immunity in assessing their credibility per the Ninth Circuit Model Instruction No. 4.9 that both Parties jointly request.  Giving this instruction will conflict with the Ninth Circuit Model Instruction No. 4.9.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  September 20, 2019

KEKER, VAN NEST & PETERS LLP

By:    /s/Elliot R. Peters

ELLIOT R PETERS
CHRISTOPHER C. KEARNEY
ELIZABETH K. MCCLOSKEY
NICHOLAS S. GOLDBERG

Attorneys for Defendant
CHRISTOPHER LISCHEWSKI

DEFENDANT CHRISTOPHER LISCHEWSKI'S FIRST AMENDED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1345785

# EXHIBIT A

# CHAPTER 58

# Criminal Antitrust Violations

## SYNOPSIS

§ 58.01 Unfair Restraint of Trade (15 U.S.C. § 1)

 [1] General Instructions

  Instruction 58-1 The Indictment and the Statute

  Instruction 58-2 The Purpose of the Statute

  Instruction 58-3 Elements of the Offense

 [2] First Element—The Conspiracy Charged in the Indictment Existed

  Instruction 58-4 First Element—The Existence of the Charged Conspiracy

  Instruction 58-5 The Possible Parties to the Conspiracy

  Instruction 58-6 Proof of the Conspiracy—Proving the Agreement

  Instruction 58-7 Independent Action

  Instruction 58-8 Proof of the Conspiracy—Conscious Parallelism

  Instruction 58-9 No Inference of Conspiracy from Common Defense

 [3] Second Element—Joining the Conspiracy

  Instruction 58-10 Second Element—Joining and Participating in the Conspiracy

  Instruction 58-11 The Statute of Limitations

 [4] Third Element—Intent to Unreasonably Restrain Trade

  Instruction 58-12 Third Element—Intent to Restrain Trade—Price Fixing

  Instruction 58-12.1 Price Fixing: Evidence of Exchange of Price Information

  Instruction 58-13 Intent To Restrain Trade—Bid Rigging

  Instruction 58-14 Intent To Restrain Trade—Horizontal Allocation of Customers

  Instruction 58-15 Intent to Restrain Trade—Horizontal Allocation of Markets

 [5] Fourth Element—Interstate Commerce

  Instruction 58-16 Fourth Element—Interstate Commerce

  Instruction 58-17 Direct Imposition on Interstate Commerce

  Instruction 58-18 Local Activities Affecting Interstate Commerce

 [6] Miscellaneous Instructions

(Rel.67B–11/2015   Pub.485)

Instruction 58-19    Relevance of Other Suits
Instruction 58-20    Liability of Corporation for Acts of Employees
Instruction 58-21    Liability of Supervisors for Acts of Subordinates
Instruction 58-22    Foreign Conduct

§ 58.02      Criminal Monopolization (15 U.S.C. § 2)
     [1]     General Instructions
             Instruction 58-23    The Indictment and the Statute
             Instruction 58-24    Purpose of the Statute
             Instruction 58-25    Elements of the Offense
     [2]     First Element—Monopoly Power
             Instruction 58-26    Monopoly Power
             Instruction 58-27    Relevant Market Defined
             Instruction 58-28    Market Share as Evidence
             Instruction 58-29    Other Evidence of Monopoly Power
     [3]     Second Element—Interstate Commerce
             Instruction 58-30    Interstate Commerce
             Instruction 58-31    Direct Imposition on Interstate Commerce
             Instruction 58-32    Local Activities Affecting Interstate Commerce
     [4]     Third Element—Intent To Obtain Monopoly Power
             Instruction 58-33    Intent To Obtain Monopoly Power
     [5]     Fourth Element—Anticompetitive Conduct
             Instruction 58-34    Anticompetitive Conduct Defined
             Instruction 58-35    Anticompetitive Conduct—Superior Skill and Foresight
             Instruction 58-36    Anticompetitive Act Charged

§ 58.03      Attempted Criminal Monopolization (15 U.S.C. § 2)
     [1]     General Instructions
             Instruction 58-37    The Indictment and the Statute
             Instruction 58-38    The Purpose of the Statute
             Instruction 58-39    Elements of the Offense
     [2]     First Element—Specific Intent To Achieve Monopoly
             Instruction 58-40    Specific Intent To Achieve Monopoly
             Instruction 58-41    Manner of Proof—Direct Evidence
             Instruction 58-42    Manner of Proof—Indirect Evidence
             Instruction 58-43    Monopoly Power
             Instruction 58-44    Relevant Market Defined
     [3]     Second Element—Interstate Commerce
             Instruction 58-45    Interstate Commerce
             Instruction 58-46    Direct Imposition on Interstate Commerce
             Instruction 58-47    Local Activities Affecting Interstate Commerce

**[4]    Third Element—Anticompetitive Conduct**

    **Instruction 58-48    Anticompetitive Conduct**

    **Instruction 58-49    Anticompetitive Conduct Defined**

    **Instruction 58-50    The Anticompetitive Acts Charged in the Indictment**

**[5]    Fourth Element—Dangerous Probability of Success**

    **Instruction 58-51    Dangerous Probability of Success**

    **Instruction 58-52    Factors in Determining Dangerous Probability**

**§ 58.04    Patent Monopoly (35 U.S.C. § 154)**

**Instruction 58-53    The Statute**

**Instruction 58-54    The Purpose of the Statute**

**Instruction 58-55    Rights Under a Patent**

**Instruction 58-56    Limitations on Rights Under a Patent**

**Instruction 58-57    Time Limits**

**Instruction 58-58    Tying Arrangements**

**Instruction 58-59    Subsequent Control of a Purchaser**

**Instruction 58-60    Subsequent Control of Licensed Customer**

**Instruction 58-61    Action Beyond Patent Rights Not Necessarily a Violation of the Antitrust Laws**

**Instruction 58-62    Relevant Market**

**Instruction 58-63    Fraudulent Procurement of Patent**

## Instruction 58-5

### The Possible Parties to the Conspiracy

The first thing that is required for a conspiracy is at least two separate parties. This means that in order to find a conspiracy, you must find that at least one defendant agreed with one or more other parties, including but not necessarily limited to the other defendants, to carry out the illegal acts that the government claims they carried out.

A corporation cannot conspire with its own officers or employees. Nor can a corporation's employees conspire among themselves. This is because a corporation, its officers, and employees are so closely related that they are deemed to share a common purpose and are considered by the law to be one actor. And a single actor cannot violate this part of the Sherman Act.

For similar reasons, a corporation cannot conspire with its wholly owned subsidiary, nor can two wholly owned subsidiaries of one parent company conspire with each other. Like a corporation and its employees, a corporation and its wholly owned subsidiaries share the same purpose and are, therefore, one actor under the law.

In this case, however, there is a dispute whether _____ and _____ are in fact a single business enterprise or are instead separate corporate entities capable of conspiring with each other. It is for you to determine, on the basis of all the facts and circumstances, whether _____ and _____ are separate and distinct corporate entities or a single, integrated business enterprise.

In making this determination you may, of course, consider the extent of common ownership of the firms. You may also consider the nature of their management. For example, do the firms enjoy independent, day-to-day control of their businesses? Are they run by separate managements? To what extent do they share a unity of purpose?

(*If applicable:* Even if you find that _____ and _____ operated as a single entity, if you also find that the purpose of integrating the firms was to eliminate competition between them, then you must treat the firms as separate entities that are capable of conspiring with each other.)

### Authority

**United States Supreme Court:** Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 104 S. Ct. 2731, 81 L. Ed. 2d 628 (1984); Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co., 370 U.S. 19, 82 S. Ct. 1130, 8 L. Ed. 2d 305 (1962); Timken Roller Bearing Co. v. United States, 341 U.S. 593, 71 S. Ct. 971, 95 L. Ed. 1199 (1951); United States v. Yellow Cab Co., 332 U.S. 218, 67 S. Ct. 1560, 91 L. Ed. 2010 (1947).

**First Circuit:** Puerto Rico Pharmaceutical, Inc. v. Pfizer Corp., 296 F. Supp. 2d 69 (D.P.R. 2003).

**Second Circuit:** Cohen v. Primerica Corp., 709 F. Supp. 63 (E.D.N.Y. 1984).

(Rel.67B–11/2015   Pub.485)

**Third Circuit:** Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125 (3d Cir. 1995).

**Fourth Circuit:** Advanced Health-Care Services, Inc. v. Radford Community Hospital, 910 F.2d 139 (4th Cir. 1990).

**Fifth Circuit:** Plueckhahn v. Farmers Ins. Exch., 749 F.2d 241 (5th Cir. 1985); Hood v. Tenneco Texas Life Ins. Co., 739 F.2d 1012 (5th Cir. 1984).

**Sixth Circuit:** Directory Sales Management Corp. v. Ohio Bell Telephone Co., 833 F.2d 606 (6th Cir. 1987).

**Ninth Circuit:** Bell Atlantic Business System Services v. Hitachi Data Systems Corp., 849 F. Supp. 702 (N.D. Cal. 1994).

**Tenth Circuit:** Hear-Wear Technologies, LLC v. Oticon, Inc., 2007 U.S. Dist. LEXIS 91365 (N.D. Okla. Dec. 12, 2007).

———————

## Comment

The Supreme Court's decision in *Copperweld Corp. v. Independence Tube Corp.*[1] and subsequent decisions by the lower courts interpreting it have clarified most questions concerning a corporation's capacity to conspire with its components. In *Copperweld*, the Court held that a parent and its wholly owned subsidiary are not capable of conspiring for purposes of section 1 of the Sherman Act.[2] Although the Court limited its decision to that precise question,[3] the lower courts have uniformly held that *Copperweld* compels the conclusion that two wholly owned subsidiaries of the same parent corporation cannot conspire with each other.[4] This rule applies as well when one of the subsidiaries is not *wholly* owned but is under the substantial control of the parent.[5]

Consequently, in cases not directly controlled by *Copperweld* and its progeny,

———————

[1] 467 U.S. 752, 104 S. Ct. 2731, 81 L. Ed. 2d 628 (1984).

[2] *Id.* at 771. The Court also reiterated the common learning that "officers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy." *Id.* at 769.

[3] *Id.* at 767.

[4] *See* Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1133–34 (3d Cir. 1995); Advanced Health-Care Servs., Inc. v. Radford Community Hosp., 910 F.2d 139, 145–47 (4th Cir. 1990); Directory Sales Management Corp. v. Ohio Bell Tel. Co., 833 F.2d 606, 611 (6th Cir. 1987); Hood v. Tenneco Texas Life Ins. Co., 739 F.2d 1012, 1015 (5th Cir. 1984); Hear-Wear Technologies, LLC v. Oticon, Inc., 2007 U.S. Dist. LEXIS 91365 (N.D. Okla. Dec. 12, 2007); Puerto Rico Pharmaceutical, Inc. v. Pfizer Corp., 296 F. Supp. 2d 69 (D.P.R. 2003); Bell Atlantic Business System Services v. Hitachi Data Systems Corp., 849 F. Supp. 702, 706–07 (N.D. Cal. 1994); Cohen v. Primerica Corp., 709 F. Supp. 63 (E.D.N.Y. 1984); *see also* Davidson & Schaaff, Inc. v. Liberty Nat'l Fire Ins. Co., 69 F.3d 868, 871 (8th Cir. 1995) (applying this rule in diversity case involving allegations of fraud and tortious interference).

[5] *See* Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1134–35 (3d Cir. 1995) (parent owned 99.9% of one subsidiary and 100% of second); Bell Atlantic Business System Services v. Hitachi Data Systems Corp., 849 F. Supp. 702, 706–07 (N.D. Cal. 1994) (parent owned 80% of one subsidiary and 100% of second).

a jury question may arise over whether two firms may be viewed as separate "persons" for purposes of their capacity to conspire with each other,[6] although the jury should not be given the question until the court has made the legal determination that *Copperweld* does not directly control the situation. Pre-*Copperweld* Supreme Court cases make clear that the jury's answer to this question ought to turn on common-sense considerations. For example, in *Timken Roller Bearing Co. v. United States*,[7] three firms were charged with conspiring to restrain trade. One of the firms owned 30% and 50% of the other two firms, respectively. Nevertheless, the Court refused to treat the firms as a single entity. The Court focused on the history of the firms and the extent to which the firms had distinct goals and purposes, and concluded that these firms should be competing with each other. On the other hand, in *Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co.*,[8] the Court treated separate but affiliated corporations as a single entity. There, the collaborators were Sunkist Growers, Inc. and Exchange Lemon, which was owned by some of the members of Sunkist Growers. The Court again seemed to focus on the history of the firms and the extent to which these firms have distinct goals and purposes.[9] These cases illustrate that a practical, common-sense approach must be taken to determine whether two partially integrated firms must be treated as separate entities for purposes of section 1.[10]

The final paragraph is designed for cases in which there is an allegation that the integration of two or more of the conspirators was itself an anticompetitive act. If the purpose of the integration was to restrain trade, then the agreement to integrate is itself a "conspiracy" under section 1 of the Sherman Act.[11] In *United States v. Yellow Cab Co.*,[12] the Court held that "any affiliation or integration flowing from an illegal conspiracy cannot insulate the conspirators from the sanctions which Congress has imposed."[13]

---

[6] Murray v. Toyota Motor Distribs., Inc., 664 F.2d 1377, 1379 (9th Cir. (1982) (it was reversible error to take this question away from jury); *see* Computer Identics Corp. v. Southern Pacific Co., 756 F.2d 200, 205 (1st Cir. 1985); Los Angeles Memorial Coliseum Comm'n v. National Football League, 726 F.2d 1381, 1387 (9th Cir. 1982).

[7] 341 U.S. 593, 71 S. Ct. 971, 95 L. Ed. 1199 (1951).

[8] 370 U.S. 19, 82 S. Ct. 1130, 8 L. Ed. 2d 305 (1962).

[9] *Id.* at 28–29.

[10] In the words of one commentator, the question is "[a]t what point . . . does it begin to be sensible to say, 'these two corporations could be competing with each other and really ought to be doing so; they are not so thoroughly integrated that they should be characterized as a single firm.' " Sullivan, Handbook on Antitrust 328 (1977).

[11] United States v. Yellow Cab Co., 332 U.S. 218, 227, 67 S. Ct. 1560, 91 L. Ed. 2010 (1947).

[12] 332 U.S. 218, 67 S. Ct. 1560, 91 L. Ed. 2010 (1947).

[13] *Id.* at 227; *see also* Timken Roller Bearing Co. v. United States, 341 U.S. 593, 598–99, 71 S. Ct. 971, 95 L. Ed. 1199 (1951) (Court refused to find the requisite common ownership or control, recognizing, among other things, that the dominant purpose of the restrictive agreements was to avoid all competition either among themselves or with others).