UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES**

**Date:** October 9, 2019     **Time:** 9:40 – 11:16;     **Judge:** EDWARD M. CHEN
                              11:27 – 1:06 =
                              3 Hours; 15 Minutes

**Case No.**: 18-cr-00203-EMC-1     **Case Name:** United States v. Christopher Lischewski

**Attorneys for Government:** Leslie Wulff, Manish Kumar, Mikal Condon, Andrew Mast, Andrew Shupanitz
**Attorneys for Defendant:** Elliot Peters, Grace Lee, Christopher Kearney, Nicholas Goldberg, Elizabeth McCloskey, Katie Joyce
**Defendant:** [X] Present   [ ] Not Present
**Defendant's Custodial Status:** [ ] In Custody  [X] Not in Custody

**Deputy Clerk:** Angella Meuleman          **Court Reporter:** Ana Dub
**Interpreter:**                            **Probation Officer:**

**PROCEEDINGS**

Final Pretrial Conference—Held.

**SUMMARY**

Parties stated appearances and proffered argument. The Court ruled on the remaining pretrial issues.

**Defendant's Objection to Untimely Evidence Re Defendant's Financial Circumstances**

The Court previously ruled on Defendant's motion in limine no. 11 regarding Defendant's financial circumstances. Docket No. 292. In so ruling, the Court ordered the parties to meet and confer regarding exhibits for the limited purpose of showing Defendant's "compensation (including base compensation and bonus/incentives) and equity in BB potentially affected by the alleged conspiracy . . . ." Since the Court's August 29, 2019 ruling, the parties have not reached a stipulation, and the Government has disclosed its intent to introduce five new exhibits regarding Defendant's financial stake in Bumble Bee.

The parties' draft stipulation does, however, demonstrate that they have agreed on the vast majority of facts regarding Defendant's financial circumstances in 2011, 2012, and 2013—*e.g.*, his fixed

salary, his bonuses under Bumble Bee's Management Incentive Plan, and his percentage of equity stake in Bumble Bee. Two disputes are preventing the parties from finalizing the stipulation: (1) the value of Defendant's equity stake in Bumble Bee; and (2) the Government's ability to offer additional evidence and argument related to Defendant's compensation and equity with Bumble Bee. The Government plans to introduce five exhibits (Trial Exs. 324–28) through a witness from Lion Capital comprised of financial data describing various models and predictions of a hypothetical Bumble Bee sale and the financial effect for its shareholders, including Defendant. The Government argues this evidence goes to state of mind—specifically, that Defendant was incentivized to enter into a price-fixing conspiracy because of the particular financial benefits he would reap from Bumble Bee growing at least 8% annually and a sale thereof. Defendant argues that these exhibits must be excluded under FRE 403 because the financial data is highly speculative, irrelevant, and confusing, which may require hiring a new expert witness to testify about their predictions.

Trial Ex. 324 is clearly relevant because it comes from Defendant. It is an e-mail exchange wherein Defendant forwarded a financial chart (authored by the CFO of Lion Capital) to Lion Capital executives purporting to discuss his expected management profit interests in a hypothetical 2014 sale of Bumble Bee. Defendant's expectation of a payout from a contemplated potential sale is relevant (irrespective of the accuracy of the numbers), because it informs his state of mind. The jury is entitled to know the parameters of the equity structure, including its value, understood by Defendant. Whether the other exhibits are necessary to explain Trial Ex. 324 presents a closer question.

The parties are ordered to further meet and confer regarding the financial incentives as may have been perceived by Defendant. More specifically, the parties should discuss stipulating, *e.g.*, to the value of Defendant's stock in Bumble Bee and the structure of the equity interests held by Defendant, etc. Parties shall provide the Court with a stipulation or a statement indicating no stipulation can be reached by **10/17/19**. If no stipulation can be reached, the Court will rule on the admissibility of the other exhibits.

**Defendant's Objection to Previously Undisclosed Coconspirator Statements**

On October 3, 2019, the Government disclosed the notes from a three-day interview with Stephen Hodge. The notes indicate that Hodge recently recalled conversations that he did not share with the Government in his six previous interviews. Defendant objects to Hodge's new statements as untimely, inconsistent, and vague. The Government responds by explaining that re-interviewing witnesses is consistent with its pretrial preparation (especially because it has not interviewed Hodge since the date of Defendant's indictment—nearly two years ago). It also argues that Hodge's statements are not inconsistent—rather, they provide further details and that the proper mechanism for objecting to this evidence would be cross-examination at trial. The Government clarified that the disclosure was not intended to serve as a formal disclosure of FRE 801(d)(2)(E) statements. The Court finds that the statements will not be barred on the basis of alleged inconsistency or timeliness. Defendant may cross-examine Hodge at trial.

However, as to the admissibility, if the Government intends to notice Hodge's new recollections as coconspirator statements, it must include them with specificity in its amended notice of coconspirator statements, pursuant to Criminal Local Rule 16-1(c)(4), in order for the Court to rule on their admissibility. The Government must file its amended notice by close of business on **10/11/19**. Defendant's deadline to respond is close of business on **10/14/19**.

The Government represented that it is still in the process of interviewing and re-interviewing witnesses in preparation for trial. The Court previously set an April 2019 deadline for notice of all coconspirator statements. *See* Docket No. 104. If the Government intends to notice additional coconspirator statements, it must demonstrate good cause for the late disclosure and make them with a high degree of specificity.

### **The Government's Amended Notice of Coconspirator Statements**

At the last pretrial conference, the Court ruled on Defendant's objections to fifteen of the Government's noticed coconspirator statements. *See* Docket No. 348. Of the fifteen statements, the Court reserved ruling on seven for lack of specificity under Criminal Local Rule 16-1(c)(4). *See id*.

The Government filed an amended notice of coconspirator statements that added specificity to six of the seven reserved rulings. The Court ruled on the remaining bellwether statements as follows (with the numbered statements corresponding with the last pretrial minute order (Docket No. 348)):

| No. | Amended Noticed 801(d)(2)(E) Statements | Defendant's Objections | The Court's Rulings |
|---|---|---|---|
| 1. | Scott Cameron's anticipated testimony re "[c]onversations with Worsham, Nestojko and Daniel Gerlach ("Gerlach") (Vice President of National Accounts Channel/Kroger) from approximately November 2011 through June 2013 regarding defendant's communications about COSI's aggressive pricing with Shue Wing Chan ("Chan")."<br><br>Gov't Witness List, First Amended Ex. A, at 4 | Vague; insufficient L.R. 16-1 (c)(4); and not in furtherance of alleged conspiracy. | **OVERRULED**.<br><br>Communications about Defendant's discussions with Chan about aggressive pricing can lead a reasonable fact finder to conclude a conspiracy existed.<br><br>Discussions about any pricing agreements with competitors is likely to be found in furtherance of the conspiracy. |

3

| No. | Amended Noticed 801(d)(2)(E) Statements | Defendant's Objections | The Court's Rulings |
|---|---|---|---|
| 5. | Stephen Hodge's anticipated testimony re "[c]onversations with Roberts, Mennona, Mecs, Lobaugh, Kavalukas, Fazioli, and Supel that he had discussed the companies' respective net prices and promotional price points with K. Worsham and his level of certainty that StarKist and Bumble Bee were in agreement.<br><br>Gov't Witness List, First Amended Ex. A, at 9 | Vague; insufficient under L.R. 16-1(c)(4); irrelevant; Rule 403; and not in furtherance of the alleged conspiracy. | **OVERRULED**.<br><br>Communication about coconspirators likely being in agreement with competitors' respective net prices and discounts can lead a reasonable fact finder to conclude a conspiracy existed.<br><br>Again, discussions about any pricing agreements with competitors is likely to be found in furtherance of the conspiracy. |
| 7. | Daniel Nestojko's anticipated testimony re "[c]onversations in February and March 2011 with Worsham, Cameron, and Donald George ("George") regarding changes to fish costs, how those changes to fish costs impacted the need to take a list price increase, information about the competitors' pricing plans, modifications to Bumble Bee's pricing plans based on competitors' pricing plans, and conversations that Worsham and Cameron were having with competitors regarding changes to fish costs, how those changes to fish costs impacted the need to take a list price increase, the competitors' pricing plans, and Bumble Bee's pricing plans."<br><br>Gov't Witness List, First Amended Ex. A, at 13 | Vague; insufficient under L.R. 16-1(c)(4); not in furtherance of the alleged conspiracy. | **OVERRULED**.<br><br>Conversations about changes to fish costs as a predicate to list-price increase and competitor pricing plans can lead a reasonable fact finder to conclude a conspiracy existed. |

| No. | Amended Noticed 801(d)(2)(E) Statements | Defendant's Objections | The Court's Rulings |
|---|---|---|---|
| 9. | Michael White's anticipated testimony re "[c]onversations with George, Worsham, Tucker, Handford, Bollmer, and Hodge regarding the following topics: fish costs and shortages, including how those developments impacted the competitors' need to increase prices; personnel changes, including who was a relevant point of contact at a competitor; each company's pricing information (list prices, pricing guidance, promotional pricing, net prices, pricing to specific customers, pricing strategy generally, notification and verification of pricing actions); and sustainability issues.  These conversations occurred throughout the course of the conspiracy."

Gov't Witness List, First Amended Ex. A, at 18 | Vague; insufficient under L.R. 16-1(c)(4). | **OVERRULED**.

Communications about pricing can lead to a conclusion that a conspiracy existed.  Specifically, conversations about how fish costs and shortages impacted the need to increase prices among competitors can be found to be in furtherance of a conspiracy.  Similarly, personnel changes can further a conspiracy if changes gave rise to an opportunity to influence prices with a specific point of contact. |
| 10. | Michael White's anticipated testimony re "[c]onversations with Worsham in which Worsham commented on defendant's hands-on management style, supervision, and awareness of Worsham's agreements and communications with competitors about pricing."

Gov't Witness List, First Amended Ex. A, at 18. | Vague; insufficient under L.R. 16-1(c)(4); irrelevant; Rule 403; and not in furtherance of the alleged conspiracy. | **OVERRULED**.

Defendant's hands-on management style can be probative of his state of mind regarding knowledge/approval of his subordinate's anti-competitive communications with competitors in furtherance of a conspiracy. |
| 13. | Kenneth Worsham's anticipated testimony re "[c]onversations with defendant, Cameron, Melbourne, McNeil, Hines, and Nestojko | Vague; insufficient under L.R. 16-1(c)(4); outside the charged conspiracy period. | **OVERRULED**.

Conversations about ending the "price war" |

| No. | Amended Noticed 801(d)(2)(E) Statements | Defendant's Objections | The Court's Rulings |
|---|---|---|---|
|  | regarding the price war of 2010, Bumble Bee's aggressive pricing on light meat and pouch, StarKist's retaliation on white meat pricing, and the need to refrain from aggressive pricing competition between the two companies thereby leading to the charged price-fixing conspiracy."<br><br>Gov't Witness List, First Amended Ex. A, at 19. |  | that led to the conspiracy falls within FRE 801(d)(2)(E) because it explains the early stages/motivation of the conspiracy. |
| 15. | Kenneth Worsham's anticipated testimony re "[c]onversations with the sales and marketing team regarding Bumble Bee's pricing at particular retailers to respond to jabs received from Handford, Hodge, or White and correct Bumble Bee's pricing if needed.  These conversations occurred throughout the conspiracy in response to competitor jabs."<br><br>Gov't Witness List, First Amended Ex. A, at 22. | Vague; insufficient under L.R. 16-1(c)(4). | **OVERRULED.**<br><br>The Government represented at the hearing that it failed to amend this disclosure. It represented on the record that the "sales and marketing team" was comprised of Cameron, Nestojko, and George.  The Court's ruling is conditioned on the Government submitting a further amended disclosure that specifies the foregoing individuals, specific retailers, and specific jabs.  As indicated earlier, the Government's amended disclosure is due by close of business on **10/11/19**. |

**Stipulation Regarding the Authenticity of Attorney Proffer Notes**

The parties were unable to reach a stipulation to refrain from attacking the authenticity and foundation of attorney proffer notes.  The purpose of the stipulation is to obviate the need to call the notetaker into trial to testify about the authenticity and the process of taking notes, of which the witnesses are likely to have no specific independent memory.  Put simply, such testimony would likely add nothing to trial and waste the Court's and jury's time.  The Government's reason for its failure to stipulate is because it continues to argue that such attorney proffer notes cannot be admitted as extrinsic evidence on a non-collateral matter since they are only written summaries and, thus, not "verbatim" or "substantially verbatim" statements adopted by the witness.

But the simple stipulation urged by the Court would not address these admissibility arguments. The Government could still argue, *e.g.*, that the attorney proffer notes do not constitute prior inconsistent statements (or statements at all) of the witnesses under FRE 613(b).  The Government was unable to identify reason to doubt the authenticity or the accuracy of the notes as heard by the notetaker.  The Court ordered the parties to stipulate.

**Defendant's Objections to The Government's Bellwether Trial Exhibits**

| The Government's Exhibits | Defendant's Objection | The Court's Ruling |
|---|---|---|
| 108<br><br>(2007 e-mails regarding can downsizing) | Hearsay; relevance; FRE 403; and FRE 404(a) | **SUSTAINED**.<br><br>As discussed in the Court's ruling on Defendant's motions in limine nos. 3 and 4 (Docket No. 292), evidence predating the charged conspiracy period may show groundwork for entering into the conspiracy (*e.g.*, general background, prior lines of communication, and cooperation between alleged conspiracy participants).  But the Government may not refer to can downsizing, and communications predating the conspiracy by three years is too remote.  Here, there is no way to redact this exhibit. Moreover, it predated the conspiracy by 3 years. |

| The Government's Exhibits | Defendant's Objection | The Court's Ruling |
|---|---|---|
| | | Evidence predating the conspiracy by more than two years will be precluded, absent a sufficient showing. |
| 114<br><br>(2009 e-mails internally within Bumble Bee regarding collecting competitive intelligence). | Hearsay; relevance; FRE 403; and FRE 404(a) | **SUSTAINED**.<br><br>Communications exclusively within Bumble Bee one year predating the charged conspiracy is not probative to show lines of communication amongst competitors.<br><br>The admissibility of evidence predating the conspiracy by less than two years applies to intercompany communications—not intracompany communications. |
| 134<br><br>(October 2010 e-mails among coconspirators regarding Kroger retail bid) | Hearsay; relevance; FRE 403; and FRE 404(a) | **OVERRULED**.<br><br>The communications are among coconspirators two weeks before the charged conspiracy regarding a retail bid to Kroger are relevant. It shows state of mind of Defendant's subordinates. |
| 137<br><br>(October 2010 e-mails among coconspirators regarding category growth campaign) | Foundation; hearsay; relevance; FRE 403; and FRE 404(a) | **OVERRULED IN PART, SUSTAINED IN PART**.<br><br>E-mail from Defendant (and those messages preceding his e-mail) regarding the category growth campaign is relevant for his state of mind. The e-mails following Defendant's email are not relevant on that basis and must be redacted. |

| The Government's Exhibits | Defendant's Objection | The Court's Ruling |
|---|---|---|
| 176<br><br>(IRS Form 1065) | Foundation; hearsay; relevance; and FRE 403 | **SUSTAINED**.<br><br>Evidence of general wealth not permissible per ruling on Defendant's motion in limine no. 11.  Docket No. 292 |
| 261, 266, and 706<br><br>(e-mails regarding FAD-free/gear-type products) | Hearsay; relevance; FRE 403; and completeness | **SUSTAINED**.<br><br>Evidence related to FAD-free/gear-type products are precluded.  Docket No. 348.  (Order granting Defendant's FAD-free motion in limine).<br><br>Although the parties agreed this exhibit was excluded by the Court's prior ruling on FAD-free evidence, an issue arose regarding redactions.  The Government represented that it has not made redactions except for personally identifiable information—*i.e.*, all other redactions are third-party redactions.  Generally when seeking the admission of an exhibit, the Government must identify all third-party redactions (if any).  If the parties wish to have a third-party redaction unredacted, they may jointly seek a court order. |
| 262 and 265<br><br>(letter from disgruntled Bumble Bee employee and Defendant's subsequent e-mail) | Authentication; foundation; hearsay; relevance; and FRE 403 | **SUSTAINED**.<br><br>Evidence in the form of exhibits and testimony regarding Mr. Simmons are precluded under FRE 403.  Docket No. 292 (Order on Defendant's MIL No. 10). |

9

| The Government's Exhibits | Defendant's Objection | The Court's Ruling |
|---|---|---|
| 416<br><br>(calendar entry with attachment) | Hearsay | **OVERRULED**.<br><br>Calendar entry involving multiple coconspirators with a StarKist-routine-pricing attachment is relevant because it is about price and was in furtherance of the conspiracy. |
| 437<br><br>(StarKist price chart) | Hearsay | **OVERRULED**.<br><br>StarKist's "executive summary of price increase model benefits" is admissible under the business record exception, subject to proper foundation.  As a document, its content was the alleged result of the conspiracy and was made in furtherance thereof. |
| 447<br><br>(e-mail regarding Tuza and Defendant breakfast in Brussels) | Foundation; hearsay; relevance; FRE 403; FRE 404(a), and completeness | **OVERRULED**.<br><br>Evidence that coconspirator Tuza wanted to have breakfast with Defendant is relevant because this meeting was in furtherance of the conspiracy. |
| 625<br><br>(conference call e-mail confirmation with attachment) | Authentication; foundation; hearsay; and relevance | **OVERRULED**.<br><br>Attachment is relevant because it is a COSI pricing guidance of tuna prices in 2012. |
| 653 | Hearsay; relevance; FRE 403; and FRE 404(a) | **STIPULATED TO EXCLUDE.** |
| 673 | Hearsay; relevance; and FRE 403 | **OVERRULED WITHOUT PREJUDICE TO** |

| The Government's Exhibits | Defendant's Objection | The Court's Ruling |
|---|---|---|
| (2014 e-mail from Defendant to David Roszmann) | | **FURTHER OBJECTION AT TRIAL.**<br><br>Evidence post-dating the conspiracy is presumed to not be in furtherance of the conspiracy because there is no ongoing conspiracy. The Government is not precluded from arguing that statements made after the charged conspiracy were used in an attempt to revive the conspiracy. Docket No. 292 (Order on Defendant's MIL No. 7). |
| 757<br><br>(e-mail from Rene Curto) | Hearsay and FRE 403 | **OVERRULED IN PART AND SUSTAINED IN PART.**<br><br>"Because Mr. Curto will have the opportunity to testify, the Court defers ruling on the admissibility of the DOJ comment in his e-mail (trial exhibit 757). The reference to the DOJ must be redacted under FRE 403 in the first instance if the e-mail is admitted as evidence. [citations.] The portion that reads "hello!" will remain unredacted to show that Mr. Curto was surprised. But, if Mr. Curto's credibility is challenged on his recollection or understanding of that conversation, the redacted material may be offered into evidence. Docket No. 310 (ruling on Defendant's motion in limine no. 9.). |

| The Government's Exhibits | Defendant's Objection | The Court's Ruling |
|---|---|---|
| 813 and 815<br><br>(Bumble Bee corporate plea agreement) | Foundation; hearsay; relevance; and FRE 403 | **SUSTAINED**.<br><br>"[N]o mention shall be made of a corporate plea by Bumble Bee. FRE 403." Docket No. 292 (Order on Defendant's MIL No. 1). |
| 855<br><br>(Defendant's internal circulation of a Wall Street Journal interview in which he partook) | Foundation; hearsay; relevance; and FRE 403 | **RESERVED**.<br><br>The Court deferred ruling subject to the parties' briefing on the adopted-admission doctrine under *Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991). Briefs due by close of business on **10/11/19**. |

**The Government's Use of Sponsoring Witness(es) for Exhibits**

The Government intends to utilize an FBI agent to serve as a sponsoring witness for certain exhibits that are admissible—the sponsoring witness would read relevant portion of the admitted exhibit to the jury. Under the Government's proposed approach, Defendant would be able to instruct the sponsoring witness to read additional portions, if he so chooses.

If the exhibit the Government seeks to have sponsored has met all the prerequisites for admissibility (*e.g.*, the business record exception is met, etc.), then the sponsoring witness may read it to the jury. The Government is ordered to identify a list of exhibits it intends to introduce through such sponsoring witness by close of business on **10/11/19**. The Government must also provide a proposed limiting instruction regarding the summary witness reading the exhibit.

**The Government's December 16, 2016 Telephone Call with Kenneth Worsham's Counsel**

On September 16, 2019, the Government disclosed that it participated in a December 16, 2016 telephone call with counsel for Kenneth Worsham wherein they discussed, *inter alia*, Kenneth Worsham's concerns about being a witness against his father, Robert Worsham. Kenneth Worsham signed a plea agreement with the Government three days later.

The Court ordered the Government to produce all notes and memoranda related to the December 16, 2016 call and a sworn declaration by an individual with personal knowledge of the attesting that there was no implicit or explicit promise from the Government to forego prosecuting Robert Worsham in exchange for Ken Worsham's cooperation and whether there were any other discussions with Ken Worsham or his attorney about Robert Worsham's potential prosecution.

The Government filed a sworn declaration from a DOJ attorney that states the following, under penalty of perjury:

- The declarant participated in the phone call on December 16, 2016;
- Prior to the December 16, 2016 call, the Government and Kenneth Worsham reached a plea agreement in principle;
- During the call, the Government responded to Kenneth Worsham's counsel's questions about the draft plea agreement and the topics of his upcoming interview, which included Robert Worsham;
- The Government indicated on the call that Robert Worsham's status in the investigation was unresolved;
- The Government reminded counsel that Kenneth Worsham, as a cooperator, must be truthful in his cooperation in all areas of the investigation, including his father's role; and
- During the call, there were no explicit or implicit promises made regarding future actions involving Robert Worsham's investigation.

The Government provided notes from the call, which reads as follows: "DOJ explained that in other antitrust cases, individuals like Bob Worsham were also cooperators or witnesses as long as they were truthful. In addition, this also implies that Ken Worsham must be honest about Bob Worsham's role in the matter. DOJ understands that Ken Worsham is worried about being a witness against his father. DOJ further explained that K. Worsham's role as a witness is primarily focused in other directions."

The Government represented at the hearing that these notes were written contemporaneously by the paralegal at the time of the December 16, 2016 call. The sworn DOJ attorney declaration stated that these notes were complete without any omission or redactions (aside from the redacted names of government personnel). The declaration further represented that "[t]o the best of my knowledge and based on a review of the government's files, there have been no other communications with counsel or Kenneth Worsham about Kenneth Worsham's concerns about Robert Worsham's status in the government's investigation.

**Hearing for The Government's *Daubert* Motion Set for October 18, 2019, at 10:00 AM.**