UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>CHRISTOPHER LISCHEWSKI,<br>Defendant. | Case No. 18-cr-00203-EMC-1<br><br>**ORDER RE SCOPE OF ALLEGED CONSPIRACY CHARGED IN THE INDICTMENT**<br><br>Docket Nos. 429, 431 |

During a hearing on the Court's proposed jury instructions, the parties disputed the scope of the conspiracy charged in the Indictment. The Court ordered briefing on whether the Government may obtain a conviction by proving an illegal agreement between Bumble Bee and *one* other tuna company (rather than having to prove such an agreement amongst all three tuna companies). *See* Docket Nos. 429, 431. In previously ruling on Defendant's motion for a bill of particulars, the Court found the Government's "September 12, 2018 letter satisfied the three functions of the bill of particulars, which are 'to inform the defendant of the nature of the charges with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his conviction or acquittal in bar of another prosecution for the same offense when the indictment is too vague, and indefinite for such purposes.'" *See* Docket No. 82 ("Order Denying BOP"). But in so doing, "this Court reserve[d] its authority to revisit this issue and order the government to commit to a theory of the case if necessary as trial approaches." *Id*. at 2. (emphasis added).

The Court finds the Government's theory of convicting based on a bilateral agreement consistent with the Indictment; however, given the risk of confusion arising from multiple alleged

conspiracies, the Court will instruct the jury on unanimity and the distinction between single v. multiple conspiracies.

# I.     BACKGROUND

The Indictment, as written, reads as follows,

> Beginning in or about November 2010 and continuing until in or about December 2013, the exact dates being unknown to the Grand Jury, in the Northern District of California and elsewhere, the defendant and coconspirators knowingly entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing prices for packaged seafood sold in the United States. The combination and conspiracy engaged in by the defendant and coconspirators was an unreasonable restraint of interstate commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1). The defendant knowingly joined and participated in the charged conspiracy beginning in or about November 2010 and continuing until in or about December 2013.

Docket No. 1, at ¶ 7. Defendant supplied the Court with the following instances where the Government represented to him and the Court that it intended to prove one overarching conspiracy involving an agreement among all tuna companies:

- "The Indictment clearly alleges a single, continuing conspiracy that ended within the statute of limitations period." Docket No. 71 ("Govt's Opp'n to Mot. for Bill of Particulars") at 19.
- "The indictment in this case is sufficiently specific and has been supplemented by discovery and voluntary disclosures." *Id*. at 12.
- "Between around November 2010 and December 2013, high-level executives ***from each of the three packaged-seafood companies*** engaged in a price-fixing conspiracy regarding canned tuna . . . . Although executives from the three companies were not on the phone together at the same time, they were aware that communications were happening among all three companies." Docket No. 133 ("Govt's Notice of Coconspirator Statements") at 5 (emphasis added).
- "[T]he issue is whether those sub agreements fit together as part of an overarching conspiracy . . . . ¶ And so the Government has done that here and has provided the testimony of witnesses regarding the existence of an overarching conspiracy." Tr.

of June 11, 2019 Hr'g, at 24:20–25:1.

- "The Court has found by a preponderance of evidence that beginning in or about November 2010 and continuing until in or about December 2013, high-level executives *from the three U.S.-based packaged-seafood companies—Bumble Bee, Tri-Union Seafoods LLC d/b/a Chicken of the Sea ("COSI"), and StarKist Co. ("StarKist")*—engaged in a conspiracy to fix the prices of shelf-stable canned tuna." Docket No. 246 ("Govt's Trial Br.") at 1 (emphasis added).

The Government's position is that its September 12, 2018 letter was neither an amendment to the indictment nor a voluntary bill of particulars. Docket No. 431 ("Govt's Brief") at 1. It further contended that its pretrial filings and notice of coconspirator statements cannot and did not constitute a constructive amendment or a variance. *Id*. at 2–3.[1]

## II.   LEGAL STANDARD

Constructive amendment and variance are based on the "rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 215–16 (1960). A constructive amendment of an indictment "occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Hartz*, 458 F.3d 1011, 1020 (9th Cir. 2006) (internal quotation marks omitted). A variance "occurs when the charging terms of the indictment are left unaltered, but the evidence offered at

---

[1] At the hearing giving rise to this issue, the Court asked whether judicial estoppel applies. Defendant did not address this argument in his brief. However, "[j]udicial estoppel, also known as the doctrine of preclusion of inconsistent positions, is an equitable doctrine invoked by a court at its discretion." *U.S. v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir.2008) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal citation omitted)). In determining whether to apply judicial estoppel, the court considers the following: (1) a party's later position is clearly inconsistent with its original one; (2) the party has successfully persuaded the court of its earlier position; and (3) allowing the inconsistent position would allow the party to "derive an unfair advantage or impose an unfair detriment on the opposing party." *Ibrahim*, 522 F.3d at 1009. While the Government has claimed—and continues to claim—an overarching conspiracy that involved all three tuna brands, there is no accusation from Defendant that the Government ever took the position that it *cannot* obtain a conviction with just a bilateral agreement. Its position remains that all three companies conspired. As noted below, what it has said is consistent with its position that should the jury find proof beyond a reasonable doubt that Bumble Bee and only one of the other two companies conspired, a conviction for conspiracy could still obtain.

trial proves facts materially different from those alleged in the indictment." *Id*. (internal quotation marks omitted). The distinction is important because a constructive amendment always requires reversal, whereas a variance only requires reversal if it prejudices the defendant's substantial rights. *Id*.

While a constructive amendment is a *per se* Fifth Amendment violation, *United States v. McCourty*, 562 F.3d 458, 470 (2d Cir. 2009); a variance violates due process only when it works "substantial prejudice" at trial. *See United States v. McDermott*, 245 F.3d 133, 139 (2d Cir. 2001). Indeed, "A variance between allegation and proof is not fatal unless the defendant has been thereby deprived of an adequate opportunity to prepare a defense or has been exposed to a risk of being prosecuted twice for the same offense." *United States v. Ratliff-White*, 493 F.3d 812, 822 (7th Cir. 2007) (internal citation and quotation omitted).

### III. DISCUSSION

The Government maintained that "so long as there are at least two participants from different companies, the government is not required to prove the participation of any particular individual or corporate coconspirator other than defendant." Govt's Brief at 3. Defendant argued that "[p]ermitting the government to change its theory on the eve of trial would deprive Mr. Lischewski of rights that the Court previously recognized he is entitled to exercise; he is 'entitled to know . . . the theory of the government's case' with sufficient notice to 'prepare for trial, to avoid surprise at trial, and to plead double jeopardy in the event of a new prosecution." Docket No. 429 ("Defendant's Brief"), at 6 (citing *United States v. Geise*, 597 F.2d 1170, 1180–81 (9th Cir. 1979)). Defendant also argued that allowing this "new" theory would make the admission of coconspirator statements prejudicial—*e.g.*, if the Government only proves a bilateral agreement between Bumble Bee and StarKist, then the admission of coconspirator statements from COSI would not have furthered the conspiracy. *Id*. at 7.

The Government recognized that a "'change in the government's theory late in the case *might* constitute prejudicial variance,' *Lincoln v. Sunn*, 807 F.2d 805, 813 (9th Cir. 1987), but only where the government changes its theory of liability during the course of trial and the 'new theory changes the offense charges.'" Govt's Brief at 6 (citations in original). It argued that

4

Defendant could not be prejudiced by a verdict based on only two corporate participants because it is simply a narrower set of facts on the same theory of liability. *Id*. While conviction based on a conspiracy between less than all the alleged coconspirators in fact broadens, not narrows, Defendant's criminal exposure, courts have rejected a similar challenge.

In *United States v. Tones*, 759 F. App'x 579 (9th Cir. 2018), *cert. denied*, No. 18-9806, 2019 WL 4922451 (U.S. Oct. 7, 2019), the Ninth Circuit concluded that it was not clear error for the trial court to permit the government to obtain a conviction without proving the participation of each of the named coconspirators. The indictment there charged sixty-two named coconspirators "and others not known to the Grand Jury" for conspiring to sell oxycodone. *Id*. at 584. The three convicted defendants argued that the trial court "deviated materially from the indictment by not requiring the trial jury to find that each of the sixty-two persons named in the indictment participated in the conspiracy." *Id*. The Ninth Circuit held the defendants "cite[d] no precedent from this or any other court vacating a conspiracy conviction because the jury was not instructed to find that each individual named in the indictment—including those not on trial who had already pleaded guilty—participated in the conspiracy." *Id*. It concluded that this was a "novel theory of error" and concluded that it was not clearly erroneous. *Id*.[2]

The Second Circuit addressed similar issues in *United States v. McDermott*, 277 F.3d 240 (2d Cir. 2002) and *United States v. Dove*, 884 F.3d 138 (2d Cir. 2018). In evaluating whether a defendant has been prejudiced by a variance, the Second Circuit considers several factors, including: (1) whether the court gave a *Pinkerton* charge; (2) whether statements of persons not in the conspiracy were used against the defendant; (3) whether there was prejudicial spillover due to a large number of joined defendants; and (4) whether any inflammatory or shocking evidence came in against the defendant. *See United States v. McDermott,* 245 F.3d 133, 139 (2d Cir. 2001) (citing *United States v. Berger*, 224 F.3d 107, 115 (2d Cir. 2000)). McDermott was the president

---

[2] To hold that failure to prove every alleged coconspirator guilty vitiates the entire criminal case could indeed create a "novel theory" of law. *Tones* at 584. For instance, if the government in a conspiracy case identified ten members of a drug conspiracy, and the jury acquitted the lowest ranking putative member (*e.g.*, a runner) for, *e.g.*, lack of knowledge or intent, surely that would not mandate acquittal of the other nine members of the conspiracy charge if there is sufficient proof of their participation.

of an investment bank that specialized in mergers and acquisitions. *Id*. at 136. McDermott began having an affair with Gannon. *Id*. During the affair, McDermott made numerous stock recommendations to Gannon. *Id*. Without McDermott's knowledge, Gannon was also having an affair with Pomponio and passing these recommendations to him. *Id*. The government indicted McDermott, Gannon and Pomponio for conspiracy to commit insider trading; McDermott and Pomponio were tried together without Gannon. *Id*. The government's three-party conspiracy theory was McDermott passed stock recommendations to Gannon, who in turn shared them with Pomponio. *Id*. The proof at trial demonstrated that Pomponio conspired with Gannon to trade on the inside information she received from McDermott. *McDermott*, 277 F.3d at 242. Thus, although the government failed to prove a single conspiracy amongst all three co-defendants, the evidence established a more limited conspiracy between Pomponio and Gannon. *Id*. The Second Circuit affirmed Pomponio's conviction—thus rejecting his variance argument—because there was little danger that Pomponio was convicted on evidence unrelated to his own activity, *i.e.*, evidence solely admitted regarding McDermott. *Id*. "Pomponio does not point to any evidence offered solely in support of the single conspiracy that would not apply to him, much less make a showing that any such evidence was prejudicial." *Id*.

The result was the same in *Dove*. There, the defendant was convicted of conspiracy to distribute and possess with intent to distribute heroin and cocaine. The indictment read:

> On or about and between January 1, 2012 and May 22, 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JASON CARTER, STEVEN DOVE, WILLIE GREEN, also known as "Floyd Goodson" and "G," ELIJAH INGRAM, also known as "EJ," DENNIS JENKINS, also known as "Meaty," and BENTLEY MARTIN, also known as "Killa" and "B," ***together with others***, did knowingly and intentionally conspire to distribute and possess with intent to distribute one or more controlled substances, which offense involved: (a) a substance containing heroin, a Schedule I controlled substance and (b) a substance containing cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).

*Dove*, 884 F.3d at 144 (emphasis added). At the close of its case-in-chief, the government requested the trial court to refrain from reading the names of the coconspirators listed in the indictment because each had already pleaded guilty. *Id*. The trial court agreed and read the

following instruction: "[o]n or about and between January 1, 2012 and May 22, 2012 . . . the defendant Steven Dove and Elijah Ingram, also known as 'EJ,' together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute one or more controlled substances." *Id*. 144–45.

The defendant argued his conviction should be overturned because (1) the indictment was constructively amended, either because the district court redacted the names of four of the five co-conspirators from the jury instructions or because the government's evidence at trial effectively altered the conspiracy charged; and (2) the government's evidence constituted a prejudicial variance from the terms of the indictment. *Id*. at 145. The Second Circuit held that

> the names did not constitute a necessary element by setting the minimum size of the conspiracy. Both the jury instructions and the indictment specified that the named co-conspirators, Dove and Ingram, conspired "with others." After the names of the conspirators other than Dove and Ingram were removed from the jury instructions, therefore, the difference in the size of the conspiracy alleged was one with at least four members as opposed to one with at least eight, six of whom were named and at least two "others." This alteration did not affect the burden on the government, which was not required to demonstrate the precise details or size of the conspiracy, but only to create a permissible inference that Dove was aware of his role in a larger scheme. [Citations.] We thus fail to see how the elimination of the names of four co-conspirators altered an essential element of the allegations set forth in the indictment.

*Id*. at 147–48. Regarding a variance, the government in *Dove* conceded a variance occurred. *Id*. at 149. But the Second Circuit held the variance was not prejudicial. *Id*. at 150. It stated that "[i]n assessing whether a defendant is prejudiced when the evidence would allow a jury to find multiple conspiracies rather than the single conspiracy alleged, '[o]ne of the principal considerations . . . is the 'spill[-]over effect' of permitting testimony regarding one conspiracy to prejudice the mind of the jury against the defendant who is not a part of that conspiracy but another.'" *Id*. The defendant in *Dove* conceded there were no *McDermott* factors present, so the Second Circuit found no prejudice. *Id*. The court also rejected the defendant's lack-of-notice argument because he had notice from the indictment regarding the type of evidence eventually used at trial. *Id*.

The dissent in *Dove* would have found a constructive amendment since allowing the jury to convict on a two-person conspiracy expanded the possible bases for conviction beyond the

7

conspiracy charged in the indictment. *Id*. at 154. While the proof at trial narrowed the scope of the charged conspiracy, the dissent found the trial court's actions to "had the effect of *broadening* the basis on which Dove could be convicted—it permitted Dove to be convicted of virtually any conspiracy involving just him and Ingram rather than a broader conspiracy that involved multiple players in addition to Ingram." *Id*. (emphasis in original). Notably, the dissenting opinion has never been endorsed in the Second or any other circuit. *Dove* remains good law.

Here there is no variance. The Indictment does not specifically name Chicken of the Sea and StarKist as coconspirators—it simply refers to "the defendant and coconspirators . . . ." *See* Indictment, at ¶ 7. Before Defendant moved for particulars, he received a disclosure (September 12, 2018 letter) from the Government indicating it would pursue its case based on an overarching conspiracy involving Bumble Bee, Chicken of the Sea, and StarKist—in other words, Defendant has always been on notice that the Government's theory is based Defendant's alleged conspiratorial agreement(s) with two other canned-tuna companies. The parties submitted preliminary objections to exhibits for which they sought rulings in advance of trial, and the Court ruled on the admission of evidence concerning all three tuna companies. The evidentiary submission by the Government anticipated to be admitted in trial is *consistent* with the Government's theory of an overarching conspiracy involving Bumble Bee, Chicken of the Sea, and StarKist. The Government does not concede, like the prosecution did in *Dove*, that a variance occurred here. The Government is correct. While this Court found proof of an industry-wide conspiracy by preponderance of the evidence in ruling on the admissibility of coconspirator statements, the jury could find only a two-company conspiracy based on the higher standard of proof beyond a reasonable doubt. As a matter of law, a conspiracy can exist if there is an agreement—event if that agreement is between two parties. *Rogers v. United States*, 340 U.S. 367, 375 (1951) ("at least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown."). In any event, even if permitting a conviction based on a jury finding of fewer than all alleged coconspirators participated somehow constitutes a variance in this case, Defendant has failed to demonstrate how he has been prejudiced

8

in his ability to put on his defense. *Cf. McDermott* and *Tones*.[3]

Because the Indictment is broad and evidence may be varied as to the involvement of particular coconspirators, and a jury could find multiple conspiracies, the Court must instruct on unanimity and inform the jury of the significance of multiple conspiracies, as the Ninth Circuit held in *United States v. Lapier*, 796 F.3d 1090 (9th Cir. 2015). "[J]urors must [] unanimously agree that the defendant is guilty of participating in a particular conspiracy—*i.e.*, of forming an agreement with at least one other particular individual to pursue a particular criminal goal[.]" *Lapier*, 796 F.3d at 1096 (citing *United States v. Monroe*, 552 F.2d 860, 862 (9th Cir.1977) ["The crime of conspiracy is established once there is an agreement to engage in criminal activity and one or more overt acts are taken to implement the agreement."]).

The charge at issue in *Lapier* read as follows:

> [B]eginning in or before September 2011, and continuing through at least December 2012, at Great Falls, in the State and District of Montana, and elsewhere, [Lapier], together and with others both known and unknown to the Grand Jury, knowingly and unlawfully conspired and agreed to possess, with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), 50 or more grams of actual (pure) methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846.

*Lapier*, 796 F.3d at 1093–94. There, the evidence at trial tended to show at least two separate conspiracies—one between Lapier and his first supplier, Kanyid, and a later one between Lapier and his second supplier, Boucher—but not a single overarching conspiracy. *Id*. at 1096. The Ninth Circuit held that "the indictment was sufficiently broad and the evidence sufficiently complex as to create a risk that different jurors voted to convict on the basis of different facts establishing different offenses. In these circumstances, the district court was required to give a specific unanimity instruction *sua sponte*." *Id*. at 1097. The court then reversed Lapier's

---

[3] *See Lincoln*, 807 F.2d at 813 where the indictment erroneously charged the offense as "murder for hire," even though the actual statutory offense was murder. *Lincoln*, 807 F.2d at 813. The defendant argued the prejudice stemmed from his defense strategy where he was led to believe he could prevail by generating reasonable doubt in the minds of the jury concerning a **contract** to murder. *Id*. The Ninth Circuit refrained from deciding this issue (which came before the court via a habeas petition), and it instead sent the issue back to the district court on remand to determine "whether the deviation . . . denied the defendant sufficient notice of the offense charged to permit him adequately to prepare and present his defense." *Id*.

9

conviction because failing to give a unanimity instruction created a genuine possibility of jury confusion and of a non-unanimous verdict in violation of the Sixth Amendment. *Id*. at 1101.

The same risk is present here. To obtain a conviction, the jury must find unanimously that Defendant participated in a conspiracy involving Bumble Bee and either StarKist *or* Chicken of the Sea (or both) during the time period charged in the Indictment. Put differently, the jury cannot render a guilty verdict if some jurors find a conspiracy only between Bumble Bee and StarKist, and other jurors find a conspiracy only between Defendant and Chicken of the Sea. They must agree unanimously there was at least one conspiracy as charged; they must agree on the same conspiracy. The Court will so instruct.

**IT IS SO ORDERED**.

Dated: November 6, 2019

_____
EDWARD M. CHEN
United States District Judge