UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> v. <br> CHRISTOPHER LISCHEWSKI, <br> Defendant. | Case No. 18-cr-00203-EMC-1 <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO ADMIT CHARLES HANDFORD'S INCONSISTENT STATEMENTS PURSUANT TO FRE 806** <br><br> Docket No. 492 |

Defendant moves to admit four statements[1] made to the FBI by Charles Handford of StarKist that are allegedly inconsistent to hearsay statements attributed to Handford but testified to by Scott Cameron. Docket No. 492 ("Mot.") at 1. Defendant relies on FRE 806, which reads as follows,

> When a hearsay statement—or a statement described in Rule 801(d)(2)(C), (D), or (E)—has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness. The court may admit evidence of the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it. If the party against whom the statement was admitted calls the declarant as a witness, the party may examine the declarant on the statement as if on cross-examination.

Fed. R. Evid. 806. Defendant argues he is entitled to introduce and admit impeachment evidence against Handford under the Sixth Amendment's Confrontation Clause. Mot. at 1. The Court

---

[1] Defendant lodged with the Court a chart labeled "Exhibit A," which provides a side-by-side of the trial testimony and the alleged inconsistent statements. It is hereafter referred to as "Defendant's Exhibit A."

previously ruled that "[i]f a coconspirator's statement is admitted under FRE 801(d)(2)(E), the coconspirator's credibility may be attacked if he or she made an inconsistent statement under FRE 806." Docket No. 310.

The Government does not challenge FRE 806's application. However, the Government argues the identified statements are not inconsistent with what came out in Cameron's testimony that was attributable to Handford. Additionally, the Government contends Handford made further inconsistent statements in subsequent interviews and attorney proffers. Docket No. 503 ("Opp.") at 5. Its position is that it will have to "impeachment with Handford's subsequent statements, and will require the testimony of the FBI agent who interviewed Handford, all of which will create a side-show concerning Handford's credibility." *Id*. This is the Government's FRE 403 argument against admissibility.

Handford's credibility is probative because he is the StarKist individual with whom Cameron allegedly entered into an agreement. The prejudice the Government raises is "a mini-trial concerning Handford." The Government would seek to call the FBI agent who interviewed him to expose untruthfulness of his prior statement elicited by Defendant. Opp. at 6–7. FRE 806 explicitly permits witness-credibility rehabilitation: "When a hearsay statement—or a statement described in Rule 801(d)(2)(C), (D), or (E)—has been admitted in evidence, the declarant's credibility may be attacked, ***and then supported***, by any evidence that would be admissible for those purposes if the declarant had testified as a witness. Fed. R. Evid. 806 (emphasis added). The parties' stipulation to admit portions of 302 reports for impeachment purposes applies and extends to rehabilitation purposes to obviate the need of calling authors of the report to testify. But during a hearing on this subject, the Government argued that in addition to offering rehabilitating statements (*i.e.*, prior consistent statements) from the 302 reports, it would have to call the FBI witness to testify or offer other extrinsic evidence about inconsistent statements from Handford. The Government has not identified such statement and evidence.

As discussed below, Defendant's motion is **GRANTED in PART and DENIED in PART**. The Court will admit some inconsistent statements identified by Defendant. If the Government intends to introduce further inconsistent statements attributable to Handford (whether

2

1  in 302 reports or via FBI witness testimony) or other evidence, it may do so in the same
2  procedural fashion—*e.g.*, file a chart identifying the predicate statement and the alleged
3  inconsistent statement or contradictory evidence. Motion and chart due by **November 14 , 2019**
4  **at 4:00 p.m.**

### 1. Handford Statement No. 1

The Government concedes Statement No. 1 is inconsistent.[2] *See* Opp. at 5–6, *see also* Trial Tr. at 780:12–16. Defendant's motion to admit Statement No. 1 is **GRANTED**.

### 2. Handford Statement No. 2

The trial transcript excerpt Defendant offers shows Cameron testified that he wrote "Read and delete" in the body of a forwarded e-mail (trial exhibit 207) because he knew it was illegal to talk to Handford. The purported inconsistent statement offered by Defendant in Handford's 302 interview demonstrates the following: "Handford stated that he did not think he was doing anything illegal by talking to Cameron about pricing." Defendant's Exhibit A at 2.

This is not an inconsistent statement, namely, because Cameron's trial testimony does not identify any statement made by Handford. That Cameron wrote "read and delete" in a subsequently-forwarded e-mail on which Handford was not included, and that Cameron understood the communication to be illegal does not make Handford's prior statement inconsistent. Nor is there any other prior statement inconsistent with the trial testimony offered by Defendant. Defendant's request to admit Statement No. 2 is **DENIED** because he has not identified a predicate statement from Handford for the prior statement to be "inconsistent."

### 3. Handford Statement No. 3

Like Statement No. 2, there is no predicate statement for Statement No. 3 which is inconsistent with a prior 302 statement. In Statement No. 3, Defendant points to trial testimony where Cameron defines his reference to "crossing the line" as entering into an agreement and gathering competitive intelligence, which differed from knowledge that was otherwise publicly

---

[2] Testimony from Cameron that Handford made a commitment to him StarKist would follow the net price increase and move away from 10-for10s and move to higher promoted price points, like 4-for-5s is inconsistent with 302 excerpts demonstrating Handford stated "he never once had like a strategic discussion on like establishing pricing." Defendant's Exhibit A at 1–2.

3

available. Defendant's Exhibit A at 4. Cameron also describes what Defendant ordered him to do: "what I was being tasked with was to figure out what their plans are, confidential information, not information that was public knowledge." *Id*. These statements are not attributable to Handford. Defendant offers an excerpt from a 302 report in which Handford's interview is summarized as "[h]e stated competitors in the industry always know what others are doing. He called it public knowledge from features, adds, etc." *Id*.

There is no trial testimony attributing a statement by Handford that is inconsistent with his statement in the 302. Admission of Statement No. 3 is **DENIED**.

4. Handford Statement No. 4

At trial, Cameron testified that, through phone conversations, Hanford told him they had an agreement where Bumble Bee would stop attacking on pouch and light meat and in return StarKist would stop attacking on albacore. Defendant's Exhibit A at 5. In the 302 report identified by Defendant, Handford claimed he never stopped driving albacore prices as long as he could in the Northeast. *Id*. Cameron's testimony that Handford told him they have reached an agreement where StarKist would stop attacking albacore prices (and, in fact, stopped) is inconsistent with Handford's prior statement that he never stopped increasing albacore prices. Defendant's request to admit Statement No. 4 as an inconsistent statement is **GRANTED**.

The Government requests the Court give a limiting instruction relating to these 302 excerpts, and offers an instruction given in the Eastern District of New York:

> The court has been informed that the [two people whose interview reports were admitted] would each invoke his right against self-incrimination under the Fifth Amendment, refusing to answer any relevant questions. The fact that a witness refuses to testify, relying on the Fifth Amendment, does not imply his guilt of a crime; it should not be considered by you in evaluating any evidence or inferring guilt of anyone. Reliance on the Fifth Amendment does, however, explain why these individuals are not witnesses . . . . Because the posture of these two individuals prevents the defendants from attacking their credibility before you, the court is permitting the defendants to read to you small excerpts from relevant 302 documents.

*United States v. Uvino*, 590 F. Supp. 2d 372, 375 (E.D.N.Y. 2008), *as amended* (Dec. 19, 2008). Defendant argues a limiting instruction is unnecessary. When the Government files its motion to

4

admit further inconsistent statements, it shall address arguments raised in Defendant's reply brief—*e.g.*, Fifth Amendment and unavailability instruction, and Defendant's entitlement to elicit that the Government did not file charges against Handford.

**IT IS SO ORDERED**.

Dated: November 13, 2019

                                             EDWARD M. CHEN
                                             United States District Judge