KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
CHRISTOPHER C. KEARNEY - # 154101
ckearney@keker.com
ELIZABETH K. MCCLOSKEY - # 268184
emccloskey@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
CHRISTOPHER LISCHEWSKI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>     v.<br><br>CHRISTOPHER LISCHEWSKI,<br><br>            Defendant. | Case No. 3:18-cr-00203-EMC<br><br>**DEFENDANT CHRISTOPHER LISCHEWSKI'S PROPOSED REVISIONS TO THE COURT'S FINAL PROPOSED JURY INSTRUCTIONS**<br><br>Dept.      Courtroom 5 – 17th Floor<br>Judge:     Hon. Edward M. Chen<br><br>Date Filed: May 16, 2018<br><br>Trial Date: November 4, 2019 |

DEFENDANT CHRISTOPHER LISCHEWSKI'S PROPOSED REVISIONS TO THE COURT'S FINAL
PROPOSED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1358004

In accordance with the Court's guidance earlier today, Defendant Christopher Lischewski hereby proposes revisions to the following instructions contained in the Court's Final Proposed Jury Instructions (ECF 454) to conform with the evidence:

1. Instruction No. 32: Testimony of Witness Involving Special Circumstances — Immunity, Benefits, Accomplice, Plea
2. Instruction No. 33: Opinion Evidence, Expert Witness
3. Instruction No. 38: *Per Se* Violation of the Antitrust Laws
4. Instruction No. 39: First Element — Conspiracy
5. Instruction No. 40: First Element — Conspiracy to Price Fix
6. Instruction No. 43: Theory of Defense
7. Instruction No. 46: Second Element — Knowingly Joined
8. Instruction No. 57: Disposition of Charges Against Coconspirators

In addition, the defendant reserves his right to address Instruction No. 52 in light of any court ruling on the defendant's pending Rule 29 motion.

To review the Court's review of the defendant's proposed revisions, for each of the above-numbered instructions, the defendant has included its proposed revisions in redline against the Court's Final Proposed Jury Instructions (ECF 454), followed by a short explanation of why the evidence or the law warrants the revisions when necessary.

The defendant does not repeat herein his previously proposed instructions and objections and reserves said proposals and objections.

1

DEFENDANT CHRISTOPHER LISCHEWSKI'S PROPOSED REVISIONS TO THE COURT'S FINAL PROPOSED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1358004

**JURY INSTRUCTION NO. 32**
**TESTIMONY OF WITNESS INVOLVING SPECIAL**
**CIRCUMSTANCES – IMMUNITY, BENEFITS, ACCOMPLICE, PLEA**

You have heard testimony from Walter Scott Cameron, Kenneth Worsham, and Stephen Hodge[name of witness], a witnesses who entered into plea agreements and [received immunity. That testimony was given in exchange for a promise by the government that [the witness will not be prosecuted] [the testimony will not be used in any case against the witness]];
[received [benefits] [compensation] [favored treatment] from the government in connection with this case];
[[admitted being] [was alleged to be] an accomplice to the crime charged. An accomplice is one who voluntarily and intentionally joins with another person in committing a crime];
[pleaded guilty to a crime arising out of the same events for which the defendant is on trial. Theiris guilty pleas areis not evidence against the defendant, and you may consider themit only in determining Mr. Cameron, Mr. Worsham, and Mr. Hodgethis witness's believability].
You have also heard testimony from Shue Wing Chan, a witness who received immunity from prosecution under the terms of an agreement between his employer, Chicken of the Sea International, Inc. and the Department of Justice pursuant to its leniency program for antitrust violations.  That testimony was given in exchange for a promise by the government that the witness will not be prosecuted, and that the testimony will not be used in any case against the witness.  Chicken of the Sea International, Inc.'s immunity agreement is not evidence against the defendant, and you may consider it only in determining Mr. Chan's believability.
For [this] [these] reason[s], in evaluating the testimony of Walter Scott Cameron, Kenneth Worsham, Stephen Hodge, and Shue Wing Chan[name of witness], you should consider the extent to which or whether their[his] [her] testimony may have been influenced by the terms of their plea agreements, guilty pleas and/or immunity agreement[this] [any of these] factor[s]. In addition, you should examine the testimony of Walter Scott Cameron, Kenneth Worsham, Stephen Hodge, and Shue Wing Chan[name of witness] with greater caution than that of other witnesses.

**Defendant's Position**:  The first paragraph simply combines the instructions the Court has already given after Mr. Cameron and Mr. Worsham's testimony.  The second paragraph this instruction tailors the Ninth Circuit Model Instruction No. 4.9 for Mr. Chan. And the government does not dispute that this instruction needs be given at the end of the trial.

**JURY INSTRUCTION NO. 33**
**OPINION EVIDENCE, EXPERT WITNESS**

You [have heard] [are about to hear] testimony from Professor James Levinsohn [name] who [testified] [will testify] to opinions and the reasons for their opinions. This opinion testimony is allowed because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**Defendant's Position**:  This instruction is tailored to add Professor Levinsohn's name.

# JURY INSTRUCTION NO. 38
# PER SE VIOLATION OF THE ANTITRUST LAWS

Section 1 of the Sherman Act makes unlawful certain agreements that, because of their harmful effect on competition and lack of any redeeming virtue, are unreasonable restraints of trade. Conspiracies to fix prices are deemed to be unreasonable restraints of trade and therefore illegal, without consideration of the precise harm they have caused or any business justification for their use.

Therefore, if you find that the government has met its burden with respect to each of the elements of the charged offense, you need not be concerned with whether the agreement was reasonable or unreasonable, the justifications for the agreement, or the harm, if any, done by it. It is not a defense ~~and not relevant~~ that the parties may have acted with good motives, ~~had a business justification~~, or may have thought that what they were doing was legal, or that the conspiracy may have had some good results. If there was, in fact, a conspiracy to fix the prices for canned tuna as alleged, it was illegal.

**Defendant's Position**: These additions to the ABA model instruction are inaccurate. That the defendant acted with good motives or had a business justification, for example, to price according to fish costs, is relevant to the defendant's knowledge of the conspiracy. The Court already held such evidence is probative and should not allow the government to argue otherwise.

4

DEFENDANT CHRISTOPHER LISCHEWSKI'S PROPOSED REVISIONS TO THE COURT'S FINAL
PROPOSED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1358004

## JURY INSTRUCTION NO. 39
## FIRST ELEMENT – CONSPIRACY

The type of relationship condemned by the Sherman Act is a conspiracy. A conspiracy is often described as a "partnership in crime," in which each person found to be a member of the conspiracy is liable for all reasonably foreseeable acts of the other members during the existence of and in furtherance of the conspiracy. To create such a relationship, two or more persons must enter into an agreement or mutual understanding that they will act together for some unlawful purpose or to achieve a lawful purpose by unlawful means. It is the agreement to act together that constitutes the crime. Whether the agreement is actually carried out or whether it succeeds or fails does not matter.

In order to establish the existence of a conspiracy, the evidence need not show that the members of the conspiracy entered into any express, formal, or written agreement; that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which the object was to be accomplished. The agreement itself may have been entirely unspoken. What the evidence must show in order to prove that a conspiracy existed is that the alleged members of the conspiracy in some way came to an agreement or mutual understanding to accomplish a common purpose.

Direct proof of a conspiracy may not be available. A conspiracy may, however, be disclosed by the circumstances or by the acts of the members. Therefore, you may infer the existence of a conspiracy from what you find the parties actually did, as well as from the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not necessarily establish the existence of a conspiracy. If actions were taken independently by them, solely as a matter of individual business judgment, without any agreement or mutual understanding among them, then there would be no conspiracy.

A conspiracy may vary in its membership from time to time. It may be formed without all parties coming to an agreement at the same time, knowing all the details of the agreement, or knowing who all the other members are. It is not essential that all members acted exactly alike or agreed to play any particular part in carrying out the agreement. The unlawful agreement may be shown if the proof establishes that the parties knowingly worked together to accomplish a common purpose.

In determining whether a conspiracy has been proved, you must view the evidence as a whole and not piecemeal. You should consider the actions and statements of all the alleged conspirators. The conspiracy may be inferred from all the circumstances and the actions and statements of the participants. Acts that are by themselves wholly innocent acts may be part of the sum of the acts that make up a conspiracy to fix prices in violation of the Sherman Act.

A conspiracy ends only when its purpose and objective have been accomplished or all the parties to the conspiracy abandon or terminate it.

~~A single conspiracy may involve several subagreements or subgroups of conspirators.~~

**Defendant's Position:** A defendant may be found guilty of a criminal offense committed by his co-conspirators only if "the offense was committed ***during the course*** and in furtherance of the conspiracy." *United States v. Gonzalez*, 906 F.3d 784, 791 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1568, 203 L. Ed. 2d 730 (2019), *and cert. denied sub nom. Luviano v. United States*, 140 S. Ct. 159 (2019) (citing *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946)) (emphasis added). As for the last sentence, which does not appear in the ABA model instruction, is one-

5

DEFENDANT CHRISTOPHER LISCHEWSKI'S PROPOSED REVISIONS TO THE COURT'S FINAL
PROPOSED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1358004

sided and unnecessary in light of the Court's instruction on multiple conspiracies.

6
DEFENDANT CHRISTOPHER LISCHEWSKI'S PROPOSED REVISIONS TO THE COURT'S FINAL
PROPOSED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1358004

# JURY INSTRUCTION NO. 40
# FIRST ELEMENT – CONSPIRACY TO PRICE FIX

A conspiracy to fix prices is an agreement or mutual understanding between two or more competitors to fix, control, raise, lower, maintain, or stabilize the prices charged, or to be charged, for goods or services. The aim and result of every price-fixing agreement, if successful, is the elimination of one form of competition.

A price-fixing conspiracy is commonly thought of as an agreement to establish the same price; however, prices may be fixed in other ways. Prices are fixed if the range or level of prices ~~or pricing strategy~~ is agreed upon. They are fixed because they are agreed on. ~~A price-fixing agreement can include an agreement regarding certain pricing behavior, such as~~Thus, an agreement to raise or lower a price, to set or avoid certain price promotions, to set a maximum price, to stabilize prices, to set a price or price range, or to maintain a price is illegal.

If you should find that the defendant entered into an agreement to fix prices, the fact that the defendant or his coconspirators did not abide by it, or that one or more of them may not have lived up to some aspect of the agreement, or that they may not have been successful in achieving their objective, is no defense. The agreement is the crime, even if it is never carried out.

Evidence that the defendant and alleged coconspirators actually competed with each other has been admitted to assist you in deciding whether they actually entered into an agreement to fix prices. If the conspiracy charged in the indictment is proved, it is no defense that the conspirators actually competed with each other in some manner or that they did not conspire to eliminate all competition. Nor is it a defense that the conspirators did not attempt to collude with all of their competitors. Similarly, the conspiracy is unlawful even if it did not extend to all goods sold by the conspirators or did not affect all of their customers.

Evidence of the prices actually charged by the defendant has been admitted to assist you in deciding whether they entered into an agreement to fix prices. Such evidence may lead you to conclude that the defendant never entered into the agreement charged in the indictment or that they did enter into the agreement. Or such evidence may show that they made an agreement but failed to live up to it, or started undercutting one another right away, or offered prices lower than those agreed upon to customers they did not want to lose, or it may show that they became convinced that the whole scheme was unwise and should be abandoned. Regardless of this type of evidence, if the conspiracy as charged existed, it was unlawful.

The mere fact that defendant and his competitors have engaged in similar or parallel pricing does not by itself establish the existence of a conspiracy among them. Evidence of similarity of business practices of the defendant and alleged coconspirators, or the fact that they may have charged identical prices for the same goods, does not alone establish an agreement to fix prices, since such activities may be consistent with ordinary and proper competitive behavior in a free and open market. A business may lawfully copy each other's price lists, follow and conform exactly to each other's price policies and price changes, and adopt the same prices, conditions of sale, or other practices, as its competitors as long as it does so independently and not as part of an agreement or understanding with one or more of its competitors.

The fact that competitors exchanged price information or publicly announced prices does not necessarily establish an agreement to fix prices. There may be other, legitimate reasons that would lead competitors to exchange price information or announce prices. It is not illegal for a competitor to obtain, rely upon, and act on pricing and other information received from customers, media, internet sources, industry analysts, brokers, and others involved in the production and sale of canned tuna so long as there is no agreement to fix prices.

7
DEFENDANT CHRISTOPHER LISCHEWSKI'S PROPOSED REVISIONS TO THE COURT'S FINAL
PROPOSED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1358004

     Nevertheless, you may consider such facts and circumstances along with all other evidence in determining whether the alleged price fixing resulted from the independent acts or business judgment of the defendant and alleged coconspirators freely competing in the open market, or whether it resulted from an agreement among or between two or more of them.

**Defendant's Position**:  The addition of "pricing strategy" and "agreement regarding certain pricing behavior" to the ABA model instruction is unsupported by any case law and extremely vague. These additions also misleadingly suggest that there are many different types of pricing behavior that could constitute price-fixing not just the ones enumerated.  But certain pricing behavior such as parallel pricing is a pricing behavior that is not illegal.  Thus, the Court should exclude this broad definition of price-fixing as it has done in its last proposed jury instructions.

The Court should add our proposed language in the third from the last paragraph, which is taken verbatim from the ABA model instruction, to clarify that it is legal to copy and follow each other's prices.  Without this clarification, the jury may believe that parallel pricing is illegal.  This revision is particularly appropriate here because there has been much evidence that companies were copying and following each other's public list prices.

8

DEFENDANT CHRISTOPHER LISCHEWSKI'S PROPOSED REVISIONS TO THE COURT'S FINAL
PROPOSED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1358004

# JURY INSTRUCTION NO. 43
# THEORY OF DEFENSE

The Indictment presents the Government's theory of the case. The Defense theory of the case is as follows:

Mr. Lischewski did not join or enter into a conspiracy to fix prices of canned tuna with any competitor.  Instead, Mr. Lischewski competed aggressively against the other canned tuna manufacturers, and the financial and other information he reviewed reflected vigorous competition among Bumble Bee, StarKist, and Chicken of the Sea.

To the extent that Mr. Cameron and/or Mr. Worsham may have agreed to coordinate the timing or content of future list price announcements or pricing guidance for canned tuna, or entered into any other agreements relating to future pricing, Mr. Lischewski did not know that such agreements existed, and he never authorized, ordered, consented, or participated in their seeking or making such agreements.  Mr. Lischewski expected his employees to gather competitive intelligence regarding competitors' costs, supply chains, pricing, promotions plans, and anything else which would assist Bumble Bee to compete.  He used and expected his employees to use competitive intelligence to reach an independent business judgment and compete more effectively, not to reach agreements to fix prices for canned tuna.

Mr. Lischewski did not enter into any price-fixing agreement with Shue Wing Chan of Chicken of the Sea.

Although this is Mr. Lischewski's defense, the burden always remains on the government to prove the elements of the offense beyond a reasonable doubt.


**Defendant's Position**:  As a criminal defendant, Mr. Lischewski is "entitled to jury instruction related to a defense theory so long as there is any foundation in the evidence and instruction is supported by the law." *United States v. Cortes*, 757 F.3d 850, 857 (9th Cir. 2014).

9

DEFENDANT CHRISTOPHER LISCHEWSKI'S PROPOSED REVISIONS TO THE COURT'S FINAL PROPOSED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1358004

# JURY INSTRUCTION NO. 46
# SECOND ELEMENT – KNOWINGLY JOINED

As previously noted, the second element the government must prove beyond a reasonable doubt is that the defendant knowingly joined the conspiracy charged in the indictment. To act "knowingly" means to act voluntarily and intentionally, and not because of a mistake, or accident or other innocent reason. Therefore, before you may convict the defendant, the evidence must establish that the defendant joined the conspiracy with the intent to advance the objective of the conspiracy—here, price fixing.

A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all of its members, or the parts they played in the charged conspiracy. Knowledge of the essential nature of the conspiracy is enough. On the other hand, a person who has no knowledge of a conspiracy but who happens to act in a way which furthers some objective of the conspiracy does not thereby become a member of the conspiracy.

Similarly, mere knowledge of a conspiracy without participation in the conspiracy is also insufficient to make a person a member of the conspiracy. But a person who knowingly joins an existing conspiracy, or participates in part of the conspiracy, with knowledge of the overall conspiracy, is just as responsible for actions of other members of the same conspiracy that were committed while the person was a member of the conspiracy, as long as the actions were committed during the course and in furtherance of the conspiracy and fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

Your determination whether the defendant knowingly joined the conspiracy must be based solely on the actions of the defendant as established by the evidence. You should not consider what others may have said or done to join the conspiracy. Membership of the defendant in this conspiracy must be established by evidence of his own conduct — by what he said or did.

If you find that the defendant joined the conspiracy, then the defendant remains a member of the conspiracy and is responsible for all actions taken in furtherance of the conspiracy until the conspiracy has been completed or abandoned or until the defendant has withdrawn from the conspiracy.

**Defendant's Position**: The Court should not omit the penultimate paragraph of the ABA model instruction, which is an accurate statement of the law.  While a defendant may be found guilty of actions committed by his coconspirators *once* he has joined the conspiracy, whether he joined the conspiracy in the first place or not must be determined solely based on his conduct.  Omitting this paragraph while keeping the paragraph above which says he may be held liable for actions of his coconspirators under certain circumstances would be misleading as the jury could find that he was responsible for the actions of Mr. Worsham and Mr. Cameron without first finding that he joined the conspiracy.  This is particularly important here because there has been so little evidence as to what the defendant actually said or did.

Similarly, no case law supports the Court's deletion of "or other innocent reason" from the sentence that defines "knowingly" in the ABA Model Instruction.

DEFENDANT CHRISTOPHER LISCHEWSKI'S PROPOSED REVISIONS TO THE COURT'S FINAL PROPOSED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1358004

# JURY INSTRUCTION NO. 57
## DISPOSITION OF CHARGES AGAINST COCONSPIRATORS

~~For reasons that do not concern you, the case against several alleged coconspirators of the defendant is not before you. Do not speculate why. Whether others have been prosecuted or not prosecuted should not influence your verdicts with respect to the defendant, and you must base your verdict solely on the evidence against the defendant.~~ You should not be concerned with or speculate about why certain persons are not on trial or have not been charged in the indictment.

**Defendant's Position**: This instruction is inappropriate. But if the Court is still inclined to give the instruction, the defendant asks that the Court follow the ABA model instruction as reflected in the above redline. It's inaccurate to suggest that the jury's verdict should not be influenced by whether certain witnesses have been prosecuted; as stated in Court's Instruction No. 32, the jury should take into account the witnesses' plea agreements and/or immunity agreement in weighing their credibility. This is particularly necessary in light of multiple witnesses who testified subject to such agreements.

11

DEFENDANT CHRISTOPHER LISCHEWSKI'S PROPOSED REVISIONS TO THE COURT'S FINAL
PROPOSED JURY INSTRUCTIONS
Case No. 3:18-cr-00203-EMC

1358004

Dated: November 25, 2019

KEKER, VAN NEST & PETERS LLP

By: */s/ Christopher C. Kearney*
ELLIOT R. PETERS
CHRISTOPHER C. KEARNEY
ELIZABETH K. MCCLOSKEY
NICHOLAS S. GOLDBERG

Attorneys for Defendant
CHRISTOPHER LISCHEWSKI