KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
CHRISTOPHER C. KEARNEY - # 154101
ckearney@keker.com
ELIZABETH K. MCCLOSKEY - # 268184
emccloskey@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
CHRISTOPHER LISCHEWSKI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:18-cr-00203-EMC |
| Plaintiff, | **DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION FOR MISTRIAL BASED ON PROSECUTORIAL MISCONDUCT** |
| v. | |
| CHRISTOPHER LISCHEWSKI, | Dept.    Courtroom 5 – 17th Floor |
| Defendant. | Judge:   Hon. Edward M. Chen |
| | Date Filed: May 16, 2018 |
| | Trial Date: November 4, 2019 |

## I. INTRODUCTION

At the outset of its cross-examination of Christopher Lischewski, the most crucial moment of this trial, the prosecutor sought leave of Court to cross-examine about a topic that had twice been excluded by the Court's unambiguous orders. The prosecutor asked for a sidebar and announced his intention to examine Mr. Lischewski about an anonymous letter (later revealed to be written by a man named Charles Simmons) that had been forwarded to Mr. Lischewski in 2012. The Court had previously excluded "evidence in the form of exhibits and testimony regarding Mr. Simmons" and had further ruled that "testimony about the letter, even though it is not the document . . . is out for the same reason." ECF Nos. 408 at 9 & 405 at 114:9-11. The Court adhered to these prior orders at sidebar, stating "the ruling stands." Trial Tr. at 2911:20.

Having been explicitly instructed three times by the Court not to elicit evidence "about the letter," most recently minutes before, the prosecutor then launched into a line of cross-examination unquestionably calculated to elicit testimony about the anonymous letter, and then when he succeeded in doing so, continued to question the witness about the excluded letter and its contents. The violation of this Court's orders could not have been clearer, and the willfulness of those violations could not have been plainer. The prosecutor engaged in misconduct under numerous applicable Ninth Circuit authorities. Mr. Lischewski now seeks appropriate relief.

In light of the severity of the government's misconduct, Mr. Lischewski moves for a mistrial. In the absence of a mistrial, Mr. Lischewski seeks a further order directing the government to comply with this Court's orders or suffer contempt, and an order forbidding any further questioning about the anonymous letter and a direction that the government is forbidden from mentioning it again during the trial, including during closings.

## II. BACKGROUND

### A. The Excluded Anonymous Letter (Exhibits 262 and 265)

At the center of this dispute is a rambling, hyperbolic, and unsigned anonymous letter ("Anonymous Letter") that Mr. Lischewski received during the conspiracy period. It was later revealed that Charles Simmons, a disgruntled former employee, authored the letter. The Anonymous Letter is filled with unsubstantiated, unfounded, and inflammatory accusations,

1

DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION FOR MISTRIAL BASED ON
PROSECUTORIAL MISCONDUCT
Case No. 3:18-cr-00203-EMC

1358009

including, for example, comments about Mr. Lischewski's "ego and stupidity" and his "need of a haircut and eye-drops for his bloodshot eyes." *See* Government's Trial Exhibit 262. Littered among Mr. Simmons' stream-of-consciousness rant were references to "Potential Anticompetitive Activity" and the "Sherman Act." *Id.*

Mr. Lischewski received the Anonymous Letter from a Bumble Bee Board Member, Mr. Lindberg, who wrote "[s]ee attached from a disgruntled and grammar-challenged BB employee," and then proceeded to make a remark about an unrelated Twitter comment that Mr. Lindberg saw earlier in the week. *Id.* Despite the fact that Mr. Lischewski had no need to take the letter seriously—as evidenced both by the content of the Anonymous Letter and by Mr. Lindberg's glib framing of the letter—Mr. Lischewski responded the next day. *See* Government's Trial Exhibit 265. Mr. Lischewski appropriately referred the issue of the Anonymous Letter to his Board, stating, "I would be happy to discuss the letter when you have time or if you have concerns. You are also free to talk to any of my senior managers at any time about my level of engagement and commitment." *Id.*

### B. The Court's Unequivocal Exclusion of the Anonymous Letter and Testimony About the Anonymous Letter

Prior to Mr. Lischewski's cross-examination, the Court excluded both the letter and testimony about the letter, on multiple occasions. The Court's rulings were based on Rule 403, concluding that evidence of the Anonymous Letter has minimal probative value that is far outweighed by its prejudicial impact. The Court held that "[e]vidence in the form of ***exhibits and testimony*** regarding Mr. Simmons are precluded under FRE 403." ECF 408 (Oct. 9, 2019 Crim. Mins.) at 9 (emphasis added). The Court's multiple rulings on the issue are as follows.

***First***, several months before trial began, the Court granted Mr. Lischewski's motion *in limine* to exclude evidence of the Anonymous Letter. *See* ECF 239 (Def.'s Mot. in Limine No. 10 to Exclude an Anonymous Letter); ECF 292 (Aug. 27, 2019 Crim. Mins.) at 4 ("No. 10: Letter from disgruntled former employee, Charlie Simmons. **GRANTED**. This evidence is excluded."). The Court excluded the Anonymous Letter under Rule 403, reasoning that "its probative value as to knowledge seems very weak because, number one, the allegation is

2

DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION FOR MISTRIAL BASED ON
PROSECUTORIAL MISCONDUCT
Case No. 3:18-cr-00203-EMC

1358009

suggesting raising prices, which is different than agreeing, reaching an agreement to fix prices. It's coming from somebody who doesn't sign, and it just doesn't seem to have much probative value as to knowledge." ECF 293 (Aug. 27, 2019 Hr'g Tr.) at 139:9-13; 140:14-15. The Court further concluded that "the irony is that if we were to redact the prejudicial part of it, it would make -- it would add more credibility to this letter than it possibly deserves." *Id.* at 140:11-13.

*Second*, about one month before trial began, when the government refused to withdraw Mr. Simmons as a witness and attempted to relitigate the issue, the Court held that "***testimony about the letter, even though it's not the document . . . is out for the same reason***" under Rule 403. ECF 405 (Tr. of Oct. 9, 2019 Pretrial Conference) at 114:9-11 (emphasis added); *see also* ECF 408 (Oct. 9, 2019 Crim. Mins.) at 9 ("Evidence in the form of exhibits and testimony regarding Mr. Simmons are precluded under FRE 403."). The Court also reiterated that both exhibits related to the Anonymous Letter, Exhibits 262 and 265, were excluded. ECF 408 (Oct. 9, 2019 Crim. Mins.) at 9.

*Third*, at the outset of Mr. Lischewski's cross-examination, the government asked for a sidebar to (yet again) relitigate the issue. The government began the sidebar by informing the Court of its intention to defy the Court's prior rulings, and in particular, its "intention to cross-examine the defendant regarding the Charlie Simmons' letter." Nov. 25, 2019 Trial Tr. at 2908:11-13. The government relied on arguments that it previously made, and that the Court previously rejected: that such evidence would be admissible regarding "the fact that he . . . received notice in contact through a letter."[1] *Id.* at 2908:19-20. The government further argued that Mr. Lischewski's testimony had somehow opened the door to such evidence, which the Court rejected. As the Court explained:

> The issue here is whether there's been a material change, a change in my view, about the probative value and the prejudicial value of this letter; and that -- the

---

[1] *Cf.* ECF 405 (Oct. 9, 2019 Tr.) at 113:22-25 (the government arguing on October 9, 2019 that "we believe in a case where the defendant's knowledge of his subordinates' actions is directly relevant to the center of the case, the fact that the defendant received and responded to a letter" warrants admission of testimony about the letter); ECF 293 (Aug. 27, 2019 Tr.) at 133:10-12 (the government arguing on August 27, 2019 that the Anonymous Letter should be admitted to show that "defendant was on notice about these accusations regarding the management team at Bumble Bee").

3
DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION FOR MISTRIAL BASED ON
PROSECUTORIAL MISCONDUCT
Case No. 3:18-cr-00203-EMC

1358009

denial that you showed me in the transcript is not square enough to change the information. So the ruling stands.

*Id.* at 2911:16-20.

### C. The Government's Willful Violation of the Court's Order by Improperly Cross-Examining Mr. Lischewski Regarding the Anonymous Letter

Despite the Court's multiple rulings, including its ultimate ruling at the start of Mr. Lischewski's cross-examination that prohibited any cross-examination about the Anonymous Letter, the government was undeterred. During its cross-examination of Mr. Lischewski, the government launched into a line of questioning that was specifically designed to elicit testimony about the excluded Anonymous Letter. Mr. Lischewski's counsel repeatedly objected and requested a sidebar, which the Court denied. The scope of the government's improper cross-examination on this issue, was as follows:

> **Q.** At no time between 2010 and 2013 were you aware that price-fixing was going on within the company; right, sir?
>
> **A.** That's correct.
>
> **Q.** You never received any kind of notice that price-fixing was going on within your company between 2010 and 2013; right, sir?
>
> **A.** From internally? I don't understand the question.
>
> **Q.** Either internally or externally, sir, did you ever receive any kind of notice that price-fixing was going on at your company between 2010 and 2013?
>
> **A.** I believe there was one note that came in through my board that was from an unidentified whistleblower. But internally, there were no other notifications.
>
> **Q.** So you received a note from an unidentified whistleblower alerting you to possible anticompetitive conduct within the company; correct, sir?
>
> **MR. PETERS:** Objection, Your Honor. The Court ruled on this in limine and at sidebar.
>
> **THE COURT:** Well, I'm going to overrule, given the response.
>
> **THE WITNESS:** Could you please ask the question again?
>
> **BY MR. KUMAR:**
>
> **Q.** Yes, sir. So you received an anonymous notification of there being price-fixing within your company between 2010 and 2013; right, sir?
>
> **A.** I'm not sure I would call it a "notification of price-fixing." It was a general rant e-mail. But there was an accusation of potential price-fixing included in it.
>
> **Q.** And you received this notice; correct, sir?
>
> **A.** I did. I received it from one of my board members.

4

DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION FOR MISTRIAL BASED ON PROSECUTORIAL MISCONDUCT
Case No. 3:18-cr-00203-EMC

1358009

| | |
|---|---|
| 1 | **Q.** Are you having a little bit of trouble recalling the substance of that notification, sir? |
| 2 | **A.** Yes. |
| 3 | **MR. KUMAR:** May I approach, Your Honor? |
| 4 | **MR. PETERS:** Your Honor, the Court ruled on this twice. |
| | **THE COURT:** It's not being admitted. You're using this to refresh recollection? |
| 5 | **MR. KUMAR:** Correct, sir -- or, Your Honor. I'm sorry. |
| 6 | **THE COURT:** All right. You may do so. |
| 7 | **MR. PETERS:** Your Honor, can we be heard at sidebar, please? |
| 8 | **THE COURT:** Well, I'm going to limit the questioning, if that's what you're concerned about. I'm going to allow him to see if it refreshes his recollection. But in terms of what I had already ruled, I'm going to maintain my ruling. |
| 9 | **MR. PETERS:** But, Your Honor, the Court had directed and made a ruling about this line of inquiry. |
| 10 | |
| 11 | **THE COURT:** Well, I ruled about the exhibit. |
| | **BY MR. KUMAR:** |
| 12 | **Q.** Have you had an opportunity to review that document, sir? |
| 13 | **A.** I have. |
| 14 | **Q.** Okay. You can put it down. In front of you is fine, sir. Sir, does that refresh your recollection that you received a written notification of price-fixing behavior going on within your company between 2010 and 2013? |
| 15 | **A.** I wouldn't characterize this as "a notice of price-fixing." I would characterize this as a poorly written document, barely comprehensible, waging a wide variety of accusations against the company. I would not characterize this as something informing us of price-fixing within the company. |
| 16 | |
| 17 | |
| 18 | **Q.** Does that document refer to a violation of the Sherman Act? |
| | **MR. PETERS:** Objection. |
| 19 | **THE COURT:** Sustained. |
| 20 | **BY MR. KUMAR:** |
| 21 | **Q.** So your testimony is that you did receive a notification regarding anticompetitive conduct within the company between 2010 and 2013; correct? |
| 22 | **A.** I received a copy of an unsigned, unedited letter from my board member that I read with interest, and that's all I got. I didn't see this as a notification. There was nothing specific in here that would give me an indication that it was telling me of a violation of the Sherman Act. |
| 23 | |
| 24 | **MR. KUMAR:** Your Honor, I'd request permission to ask questions to the witness, since he's characterizing the contents of the exhibit. |
| 25 | |
| | **THE COURT:** Objection, I assume. Sustained. |
| 26 | **MR. KUMAR:** Very well, Your Honor. |
| 27 | **Q.** After receiving the document that's in front of you, sir, you didn't take any further action, did you? |
| 28 | |

5

DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION FOR MISTRIAL BASED ON
PROSECUTORIAL MISCONDUCT
Case No. 3:18-cr-00203-EMC

1358009

**A.** I did.

**Q.** You didn't conduct any kind of internal investigation into anticompetitive conduct, did you?

**A.** No. But I sent it back to my board member and suggested he was free to contact any of my management members if he wanted to investigate further.

**Q.** When you responded to that board member, you made no mention of anticompetitive conduct within your company; correct?

**A.** I did not.

**Q.** You simply ignored the anticompetitive conduct being reported in that exhibit; correct, sir?

**MR. PETERS:** Objection. Objection. The exhibit's not in evidence. The Court's excluded it. This is improper.

**THE COURT:** Overruled. He can respond to how he responded.

**THE WITNESS:** I'm sorry. Could I bother you to ask the question again?

**BY MR. KUMAR:**

**Q.** Not at all, sir. It wouldn't be a bother. You ignored the report of anticompetitive conduct within your company when you responded to your board member; correct?

**A.** I didn't -- I didn't read this as a notice of anticompetitive activity. And I did forward it back to my board member to take whatever action he felt would be appropriate.

**Q.** We'll come back to that.

. . .

**Q.** Sir, I want to go back to the anonymous letter that you received that we were talking about a few minutes earlier. When you received that letter and responded to your board member, you made no mention of any kind of anticompetitive conduct; correct, sir?

**A.** I don't believe so, no.

Nov. 25, 2019 Trial Tr. at 2934:2-2938:10; 2944:22-2945:2.

### III. ARGUMENT

#### A. The Government Engaged in Clear Prosecutorial Misconduct.

A prosecutor's questioning of a defendant regarding evidence that has been excluded by a motion *in limine* order constitutes "serious error" properly recognized as "intentional prosecutorial misconduct." *Thomas v. Hubbard*, 273 F.3d 1164, 1176, 1180–81 (9th Cir. 2001), *overruled on other grounds by Payton v. Woodford*, 299 F.3d 815 (9th Cir. 2002). It is also "improper under the guise of cross-examination to tell the jury the substance of inadmissible evidence." *United States v. Sanchez*, 176 F.3d 1214, 1222 (9th Cir. 1999) (internal quotations

6

and citation omitted). A "prosecutor may not present inadmissible evidence through 'the back door.'" *Id.* (quoting *Goldsmith v. Witkowski*, 981 F.2d 697, 704 (4th Cir. 1992)).

In *Thomas*, the trial court granted the defendant's motion *in limine* excluding evidence that the defendant had used a firearm during the commission of a prior offense. Nevertheless, in cross-examining the defendant, the prosecutor elicited that the defendant had previously pleaded guilty to robbery with a firearm. The defendant was ultimately convicted and sought a writ of habeas corpus, arguing that the prosecution's violation of the court's *in limine* order "constituted prosecutorial misconduct rising to the level of a due process violation." 273 F.3d at 1175. The Ninth Circuit had "no difficulty in concluding" that the prosecutor's questioning regarding evidence that had been excluded *in limine* "constituted a serious error" that, together with two other serious errors, warranted granting a writ of habeas corpus. *Id.* at 1176-77.

Similarly, in *Sanchez*, the Ninth Circuit held that a prosecutor committed misconduct by attempting to impeach the defendant with an otherwise inadmissible hearsay statement supposedly attributed to the defendant's wife. 176 F.3d at 1221–22. In that case, "the prosecutor was fully aware that he could not call [the defendant's wife] as a witness," and it was "equally obvious" that the statement attributed to the defendant's wife "was hearsay." *Id.* Nevertheless, the prosecutor cross-examined the defendant regarding his wife's alleged hearsay statements under the guise of impeachment. The Ninth Circuit held that it is "improper under the guise of artful cross-examination to tell the jury the substance of inadmissible evidence," and concluded that the "the prosecutor's use of [the wife's] alleged extrajudicial statement to impeach [the defendant] was misconduct." *Id.*

Here, the prosecutor's misconduct is no different than in *Thomas* and *Sanchez*. Months after the Court had excluded the evidence, and mere minutes after the Court specifically prohibited cross-examination about it, the prosecutor designed his cross-examination to ensure the presentation of evidence about the Anonymous Letter. The prosecutor's approach was calculated to violate the Court's orders. After eliciting that Mr. Lischewski was unaware of price-fixing at any time between 2010 and 2013, the prosecutor asked: "Either internally ***or externally***, sir, did you ever receive ***any kind of*** notice that price-fixing was going on at your company

7

DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION FOR MISTRIAL BASED ON
PROSECUTORIAL MISCONDUCT
Case No. 3:18-cr-00203-EMC

1358009

between 2010 and 2013?" (emphasis added). The prosecutor's question left only two options for a response, both of which were certain to elicit testimony about the Anonymous Letter. First, Mr. Lischewski could have responded "no," in which case the prosecutor would have sought to impeach Mr. Lischewski with the Anonymous Letter. Second, Mr. Lischewski could have responded as he did—truthfully and with reference to his receipt of an external note "that was from an unidentified whistleblower." In either circumstance, the result was the same: introduction of evidence that had been repeatedly excluded.

Making matters worse, after the prosecutor posed its improper question to Mr. Lischewski, the answer to which necessarily led to the disclosure of the excluded evidence, the Court repeatedly overruled Mr. Lischewski's objections and permitted a lengthy cross-examination about the Anonymous Letter. The prosecutor repeatedly asked questions to elicit the substance of the letter and Mr. Lischewski's response to the letter, all of which the Court had previously and repeatedly excluded. For example, the prosecutor elicited that the Anonymous Letter received by Mr. Lischewski contained "an accusation of potential price-fixing" during the charged conspiracy period.[2] The prosecutor also elicited information about Mr. Lischewski's response to the letter, including, for example:

- whether Mr. Lischewski took "further action" after "receiving the document" that was "in front of [him]";

- whether Mr. Lischewski "conduct[ed] any kind of internal investigation into anticompetitive conduct";

- whether when Mr. Lischewski "responded to that board member, [he] made no mention of anticompetitive conduct within [Bumble Bee]";

- whether Mr. Lischewski "simply ignored the anticompetitive conduct being reported in that exhibit"; and

- whether Mr. Lischewski "ignored the report of anticompetitive conduct within [Bumble

---

[2] The prosecutor's questions also improperly incorporated information about the contents of the letter, including, for example, that it was "a written notification of price-fixing behavior going on within [Bumble Bee] between 2010 and 2013" and that it was "a notification regarding anticompetitive conduct within the company between 2010 and 2013." In addition, although defense counsel's objection was sustained when the government asked a question about whether the letter "refer[red] to a violation of the Sherman Act," the jury heard the prejudicial question.

8
DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION FOR MISTRIAL BASED ON
PROSECUTORIAL MISCONDUCT
Case No. 3:18-cr-00203-EMC

1358009

Bee] when [he] responded" to the Board member.

In sum, the government made a calculated and brazen decision to violate the Court's motion *in limine* order, and through the "the guise of cross-examination" told the jury about the substance of inadmissible evidence. *See Sanchez*, 176 F.3d at 1222 (internal quotations and citation omitted). Under Ninth Circuit authority, the government's misconduct is both plain and serious. *See id.*; *Thomas*, 273 F.3d at 1180–81.

### B. The Prosecutorial Misconduct Caused Mr. Lischewski Significant and Irreparable Prejudice.

As the Court repeatedly recognized in ruling on Mr. Lischewski's motion *in limine* to exclude evidence regarding the Anonymous Letter, the prejudice of this evidence is significant. Indeed, the Court excluded the evidence as unduly prejudicial under Rule 403 of the Federal Rules of Evidence. Moreover, the manner in which the government elicited and introduced the evidence during Mr. Lischewski's cross-examination—the most critical part of the trial—makes it even more prejudicial. And the government improperly used the evidence to attack Mr. Lischewski about whether he knew about the price-fixing conspiracy, which is the central dispute in this case.

It is no excuse that the government did not seek to admit the inadmissible exhibits (Trial Exhibits 262 and 265). "Although the [exhibits were] never admitted into evidence, a line of questioning that repeatedly incorporates inadmissible evidence can be just as improper as the direct admission of such evidence." *United States v. Sine*, 493 F.3d 1021, 1031 (9th Cir. 2007). In *Sine*, as here, the prosecution developed an entire line of questioning to present to the jury the substance of an inadmissible document (as found in prior court orders) through cross-examination. The court held that "[b]y presenting the thrust of" the inadmissible document "through its cross-examination technique, the government used a tactic that had the potential unfairly to prejudice" the defendant. *Id.*

///

///

### C. The Government's Willful Violation of the Court's Order Requires a Mistrial.

The government's willful violation of the Court's order and improper cross-examination of Mr. Lischewski regarding excluded evidence requires a mistrial. A party's violation of a trial court's *in limine* order, which results in prejudice to the opposing party, constitutes grounds for a mistrial. *See Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1115 n.13 (9th Cir. 2005) (affirming trial court's order granting mistrial); *see also United States v. Lewis*, 651 F.2d 1163, 1169 (6th Cir. 1981) (district court erred by denying defendant's mistrial where the government introduced evidence in violation of *in limine* order, to defendant's prejudice). Furthermore, no curative instruction can "unring the bell" or otherwise remedy the severe prejudice to Mr. Lischewski from the government's willful misconduct. *See United States v. Murray*, 784 F.2d 188, 188–89 (6th Cir. 1986) (testimony regarding inadmissible polygraph examination required new trial despite instruction to the jury to disregard it because such an instruction "is very close to an instruction to unring a bell").

Although a mistrial is required in these circumstances, to the extent the Court declines to order a mistrial, at the very least it must direct the government not to raise the Anonymous Letter, or any evidence or testimony about its contents, for the balance of trial and during closings. The Court must also order the government to comply with this Court's orders or suffer contempt.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Mr. Lischewski the requested relief.

Dated: November 25, 2019

KEKER, VAN NEST & PETERS LLP

By: */s/ Elliot R. Peters*
ELLIOT R. PETERS
CHRISTOPHER C. KEARNEY
ELIZABETH K. MCCLOSKEY
NICHOLAS S. GOLDBERG

Attorneys for Defendant
CHRISTOPHER LISCHEWSKI