UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　　v.<br>CHRISTOPHER LISCHEWSKI,<br>　　　　Defendant. | Case No. 18-cr-00203-EMC-1<br><br>**ORDER RE SPECIFIC UNANIMITY AND MULTIPLE CONSPIRACIES RELATING TO CHICKEN OF THE SEA INTERNATIONAL, INC.**<br><br>Docket Nos. 619 & 620 |

Following Defendant's motion under Fed. R. Crim. P. 29, the Court ordered briefing on whether the jury must unanimously agree on whether Shue Wing Chan and/or other Chicken of the Sea individuals specifically participated in price fixing or instead whether unanimity is only required as to Chicken of the Sea's participation. Having reviewed the papers and the authorities cited therein, the Court concludes that so long as the jury unanimously finds Defendant guilty of a conspiracy to fix prices with Chicken of the Sea, the means by which he reached the agreement— *e.g.*, via a direct understanding with Shue Wing Chan or via Kenneth Worsham's communications with Michael White and/or John Sawyer—need not be unanimously decided. The single overarching conspiracy charged in this case is the agreement to fix prices amongst the three competing tuna companies—Bumble Bee, Starkist, and Chicken of the Sea. These companies are the actors in the market with the ultimate power to set prices. *See Am. Needle, Inc. v. Natl. Football League*, 560 U.S. 183, 195 (2010) ("The relevant inquiry, therefore, is whether there is a 'contract, combination . . . [] or conspiracy' amongst 'separate economic actors pursuing separate economic interests[.]'"); *see also United States v. Hilton Hotels Corp.*, 467 F.2d 1000, 1007 (9th Cir. 1972) ("a corporation is liable under the Sherman Act for the acts of its agents in the scope of their employment, even though contrary to general corporate policy and express instructions to the

agent."). Individuals such as Kenneth Worsham, Scott Cameron, Mike White, John Sawyer, Shue Wing Chan, and the Defendant, whether or not they were indicted as co-conspirators, acted as agents for these corporate principals—the economic actors at the center of the case. The precise paths of communications (and identities of the individuals who were party to the communications) that led to or comprised the agreement(s) constitute the means of the overarching conspiracy. While the jury must unanimously agree on which economic actors were parties to the agreement, it need not unanimously agree on the precise means by which that agreement was effectuated. *See, e.g.*, *Richardson v. United States*, 526 U.S. 813, 817 (1999) ("Where . . . an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement—a disagreement about means—would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force."); *United States v. Hofus*, 598 F.3d 1171, 1176 (9th Cir. 2010) ("an indictment may allege that a defendant committed an offense by one or more specified means but we have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission . . . .") (internal quotations and citations omitted); *see also United States v. Bibbero*, 749 F.2d 581, 587 (9th Cir. 1984) ("A single conspiracy may involve several subagreements or subgroups of conspirators.").

*In re Grand Jury Proceedings*, 797 F.2d 1377, 1379 (6th Cir. 1986) relied upon by Defendant is inapposite. There the court rejected a single conspiracy theory in assessing an alleged violation of the Double Jeopardy Clause; it was not analyzing the unanimity requirement. In any event, even if the legal analysis were apt, the facts are entirely different. That case charged conspiracy to rig bids in Kentucky, which was not part of a previously-acquitted conspiracy to rig bids in Montana. The two rigged bids were distinct in scope and place and involved different transactions charged in two different courts. Here, the Government charges that Defendant fixed prices with Chicken of the Sea during the conspiracy period charged in the Indictment; it did so through Mr. Worsham's discussions with Mr. White and Mr. Sawyer and through Defendant's direct discussions with Mr. Chan. These communications occurred in the same time period,

driven by the same objective (fixing prices) directed at the same economic actor—Chicken of the Sea. *In re Grand Jury Proceedings* is distinguishable.

The Court need not address whether its conclusion on this point mandates a particular disposition of Defendant's Rule 29 motion or issuance of other relief should it find there is insufficient evidence that Mr. Chan reached an agreement to fix prices directly with Defendant. Out of abundance of caution, in taking Defendant's Rule 29 motion under submission, it will give the special verdict form attached hereto.

**IT IS SO ORDERED.**

Dated: November 29, 2019

_____
EDWARD M. CHEN
United States District Judge

3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  Plaintiff,<br>  v.<br>CHRISTOPHER LISCHEWSKI,<br>  Defendant. | Case No. 18-cr-00203-EMC-1<br><br>**VERDICT FORM** |

WE, THE JURY, in the above-entitled case, unanimously find the answer to the following:

**Question 1:**

We, the Jury, unanimously find the defendant, **Christopher Lischewski**,

GUILTY _____ or NOT GUILTY _____ (check one) of participating in a conspiracy to fix prices of canned tuna in violation of the Sherman Act, 15 U.S.C. § 1, as charged in Count One of the Indictment.

**If you checked "GUILTY" in Question 1, please answer Question 2.**

**If you checked "NOT GUILTY" in Question 1, ignore Question 2.**

**Question 2:**

We, the Jury, unanimously find the conspiracy to fix prices charged in Count One of the Indictment involved defendant and at least one other company, as specified below (check one):

(1)   Only StarKist _____, or

(2)   Only Chicken of the Sea _____, or

(3)   StarKist and Chicken of the Sea _____

**If you checked (2) on Question 2, please answer Question 3.**

**Question 3:**

We, the Jury, unanimously agree that there was at least one Chicken of the Sea participant in the conspiracy other than Shue Wing Chan.

    Yes_____                                                                              No _____

**PLEASE SIGN AND DATE BELOW.**

Dated: _____, 2019

_____
Foreperson