1
2
3
4                    UNITED STATES DISTRICT COURT
5                  NORTHERN DISTRICT OF CALIFORNIA
6
7    UNITED STATES OF AMERICA,              Case No. 18-cr-00203-EMC-1
8                          Plaintiff,
9           v.                             **ORDER PARTIALLY GRANTING**
                                           **MDL PLAINTIFFS' MOTION TO**
10   CHRISTOPHER LISCHEWSKI,               **INTERVENE AND TO MAINTAIN**
                                           **DISCLOSED GRAND JURY**
11                         Defendant.      **TESTIMONY**
12                                         Docket No. 716
13
14
15          Movants are plaintiffs ("MDL Plaintiffs") in a multidistrict litigation ("MDL").  In the

16   MDL, they allege that several companies conspired to fix the price of packaged tuna in the United

17   States in violation of federal antitrust laws.  The MDL stems from the same conduct underlying a

18   since–concluded criminal price–fixing prosecution that was brought in this Court several years

19   ago.  Christopher Lischewski, a defendant in both the MDL and the criminal prosecution, retained

20   grand jury transcripts that were produced to him in the criminal prosecution and used the

21   transcripts as part of his defense in the MDL.  Mr. Lischewski violated a protective order from the

22   criminal case by retaining and using the transcripts.  Upon request, Mr. Lischewski produced the

23   transcripts to the MDL Plaintiffs for use in the MDL.

24          Now pending before the Court is the MDL Plaintiffs' motion seeking (1) intervention in

25   the criminal case, (2) declaratory relief pursuant to 28 U.S.C. §2201(a) confirming that their use of

26   the produced grand jury transcripts did not violate the protective order, (3) declaratory relief

27   confirming that their use of the produced grand jury transcripts did not violate Federal Rule of

28   Criminal Procedure 6(e), and (4) in the alternative, an order from this Court amending the

protective order and directing disclosure of the produced grand jury transcripts for use in the MDL. The Court previously found the motions suitable for resolution on the papers and therefore **VACATED** the hearing originally scheduled for March 9, 2023. Having considered the parties' arguments, this Court hereby **DENIES** the MDL Plaintiffs' request for declaratory judgment and **TRANSFERS** the transcripts to the MDL Court for a final disclosure determination.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

A.    The Criminal Cases

This motion stems from a criminal prosecution for conspiracy to fix the price of packaged tuna sold in the United States in violation of 15 U.S.C. § 1. *See* Docket No. 1 (indictment). Beginning in 2015, the Antitrust Division of the Department of Justice ("DOJ Antitrust") began to investigate anti–competitive practices by Chicken of the Sea, Bumble Bee, and StarKist. *See* Mot. at 3. The investigation led to the indictment by a grand jury of four individuals, including Mr. Lischewski, and two of the companies in this Court.[2] *See id.*

Shortly after Mr. Lischewski was indicted by the grand jury, he and DOJ Antitrust entered into a protective order that covered, among other materials, "grand jury testimony." Docket No. 40 ("protective order") at 1. As is relevant here, the protective order provided that:

> The Protected Materials shall not be used in any civil litigation, unless such material was produced or received in such civil litigation.

*See* Protective Order at 4. The protective order was signed only by Mr. Lischewski's counsel and DOJ Antitrust.

Mr. Lischewski was the only defendant to take his case to trial. *See* Mot. at 3. He was convicted by a jury in December 2019. *See* Docket No. 640 (verdict). He has since served his sentence and has been released from prison. *See* Mot. at 3. There are no other pending criminal proceedings. *See* Mot. at 3.

---

[1] The parties do not dispute the following facts unless otherwise noted.

[2] The other individual defendants—Kenneth Worsham, Walter Scott Cameron, and Stephen Hodge—all pled guilty. *See* Mot. at 3. Bumble Bee and StarKist also pled guilty and agreed to pay substantial fines. *See id.* Chicken of the Sea agreed to cooperate with DOJ Antitrust's investigation as part of DOJ's corporate leniency program. *See id.*

United States District Court
Northern District of California

B.      The MDL

Around the same time that DOJ Antitrust commenced the criminal investigation, private litigants began filing suits against the companies alleging civil antitrust violations against Chicken of the Sea, Bumble Bee, and StarKist.  *See* Mot. at 4.  Those suits were centralized in the United States District Court for the Southern District of California ("MDL Court") under the supervision of Chief Judge Dana Sabraw by the Judicial Panel on Multidistrict Litigation.  *See id.*; *In re Packaged Seafood Prod. Antitrust Litig.*, 148 F. Supp. 3d 1375 (U.S. Jud. Pan. Mult. Lit. 2015). Mr. Lischewski was named as a defendant in one of the consolidated suits, making him a defendant in the MDL.  *See id.*  DOJ Antitrust intervened in the MDL to seek stays of discovery while the criminal proceedings in this Court were ongoing.  *See id.*  The MDL Court granted the initial stay request as well as several subsequent stays during the progression of the criminal proceedings.  *See id.* at 4–5.

The criminal proceedings have since concluded, but the MDL remains pending.  On January 24, 2023, the MDL parties deposed Kenneth Worsham, a previously convicted Bumble Bee executive.  *See id.* at 5.  Mr. Lischewski, proceeding pro se in the MDL, appeared at the deposition to question Mr. Worsham.  *See id.*  Mr. Lischewski appeared to be using grand jury testimony (in violation of the protective order) to question Mr. Worsham, so the MDL Plaintiffs requested that Mr. Lischewski produce any grand jury transcripts in his possession that had not already been produced.  *See id.*  On January 27, 2023, Mr. Lischewski produced the grand jury transcripts of seven witnesses: Walter Scott Cameron, Renato Curto, Shue Wing Chan, Stephen Hodge, David Roszmann, Michael White, and Kenneth Worsham.  *See id.* at 6.

The MDL parties were in the midst of deposing Stephen Hodge, a previously convicted StarKist executive, when the produced grand jury transcripts arrived.  *See id.* at 6.  The MDL Plaintiffs reviewed the produced transcripts and asked Mr. Hodge to confirm two statements he made to the grand jury.  *See id.*  One of his deposition answers was inconsistent with the grand jury testimony transcripts.

The MDL Plaintiffs subsequently filed this motion to allow the use of the grand jury transcripts in the MDL.

United States District Court
Northern District of California

1

## II.   DISCUSSION

2   A.   Violation of the Protective Order

3   As a preliminary matter, the MDL Plaintiffs ask this Court for a judgment declaring that

4   they can use the grand jury transcripts that were produced to them without violating the protective

5   order. *See* Mot. at 1; 28 U.S.C. § 2201(a) (permitting district courts to grant declaratory relief).

6   MDL Plaintiffs advance two arguments for why they do not violate the protective order by

7   retaining and using the grand jury transcripts.  First, they argue that the protective order

8   specifically contemplates the use of grand jury testimony in civil litigation because it provides that

9   grand jury testimony will not be used in civil litigation, "*unless such material was produced or*

10   *received in such civil litigation*." *See* Protective Order at 4 (emphasis added); Mot. at 9–10.

11   According to the MDL Plaintiffs, this language suggests that "parties to civil litigation may use

12   Protected Materials (from this action) in the civil litigation *if they were produced in the civil*

13   *litigation*," and because Mr. Lischewski produced the grand jury transcripts to the MDL Plaintiffs

14   in connection with the deposition of Mr. Worsham, they may continue using the transcripts. *See*

15   Mot. at 9–10 (emphasis in original).  Second, the MDL Plaintiffs argue that because they were not

16   signatories to the protective order, nothing in the order should be read to restrict their use of grand

17   jury transcripts, even if they acquired the transcripts because of Mr. Lischewski's violation of the

18   order. *See* Mot. at 10.

19   DOJ Antitrust vigorously disputes these arguments.  It argues that the MDL Plaintiffs' first

20   argument is "circular" and ignores a more natural reading of the order's language. *See* Opp'n at

21   3–4.  As to the second argument, DOJ Antitrust contends that "two wrongs do not make a right,"

22   and a ruling that MDL Plaintiffs' use of transcripts that Mr. Lischewski possessed and used in

23   violation of the protective order would "defy logic and the plain intent of the protective order."

24   Opp'n at 1, 3.

25   The Court agrees with DOJ Antitrust.  The plain language and spirit of the protective order

26   counsel against a declaratory judgment that permits the MDL Plaintiffs to use the grand jury

27   transcripts where they acquired those transcripts through a violation of the protective order.  First,

28   it is nonsensical to suggest that the protective order bars Mr. Lischewski from maintaining or

1    using grand jury transcripts in civil litigation but that if he improperly produces the transcripts,

2    those transcripts lose their protected status.  The whole point of the protective order is to

3    circumscribe the future use of information elicited in a confidential process so as to preserve the

4    integrity of that process.  As DOJ Antitrust rightly argues, the MDL Plaintiffs would have this

5    Court "create an end–run around the express terms of the protective order and fatally undermine

6    its central purpose."  Opp'n at 4.

7         Moreover, DOJ Antitrust persuasively argues that the crucial civil litigation provision in

8    the protective order, *see supra*, is more naturally read to say that where material produced to Mr.

9    Lischewski by the Government in the criminal case was *separately* produced by parties in

10   collateral civil litigation, that those materials (not obtained from grand jury proceedings in

11   violation of a protective order) could be used in the civil litigation by Mr. Lischewski without

12   offending the protective order.  *See* Opp'n at 4.  Read that way, the qualification in the civil

13   litigation provision of the protective order (". . . unless such material was produced or received in

14   such civil litigation") simply ensures that parties to the protective order are not disadvantaged in

15   collateral civil litigation by being the only party that is prevented from using produced material in

16   the civil litigation which was independently available to the opposing party.  That reading is in

17   concert with the protective order's spirit; MDL Plaintiffs' creative interpretation is not.

18        MDL Plaintiffs' second argument—that because they are not signatories to the protective

19   order, they cannot be bound by it—is similarly unavailing.  It is true that the MDL Plaintiffs never

20   signed the protective order, but Mr. Lischewski, the source of the transcripts, did.  Indeed, the

21   MDL Plaintiffs do not and cannot dispute that Mr. Lischewski's retention, use, and production of

22   the grand jury transcripts were a violation of the protective order.  If this Court were to hold that

23   Mr. Lischewski must destroy all the grand jury transcripts and cease using them in the MDL but

24   the MDL Plaintiffs need not do the same, it would grant the MDL Plaintiffs a strategic litigation

25   advantage and would undermine the whole purpose of the protective order.  The Court declines to

26   do so.[3]

27

28   _____

     [3] Because this Court concludes that the MDL Plaintiffs' use of the grand jury transcripts violates
     the protective order, it does not decide whether it violates Federal Rule of Criminal Procedure

United States District Court
Northern District of California

United States District Court
Northern District of California

B.      Disclosure or Transfer of Grand Jury Transcripts

Under the Federal Rules of Criminal Procedure, grand jury proceedings are secret.  *See* Fed. R. Crim. P. 6(e)(2); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958) (taking note of the "long–established policy that maintains the secrecy of the grand jury proceedings in the federal courts").  However, this Court may authorize disclosure of grand jury transcripts "preliminarily to or in connection with a judicial proceeding."  Fed. R. Crim. P. 6(e)(3)(E)(i).[4] The Supreme Court laid out the test for when a district court may authorize disclosure of grand jury transcripts pursuant to Rule 6(e)(3)(E)(i) in *Douglas Oil Co. of California v. Petrol Stops Nw*. 441 U.S. 211, 222 (1979).  The Court explained that:

> Parties seeking grand jury transcripts under Rule 6(e) must show [1] that the material they seek is needed to avoid a possible injustice in another judicial proceeding, [2] that the need for disclosure is greater than the need for continued secrecy, and that [3] their request is structured to cover only material so needed.

*Id.*

Rule 6(e)(3)(F) then provides that "[a] petition to disclose a grand–jury matter under Rule 6(e)(3)(E)(i) must be filed in the district where the grand jury *convened*." Crim. P. 6(e)(3)(F) (emphasis added).  However, the Supreme Court in *Petrol Stops* recognized that it may be difficult for the court housing the grand jury transcripts to conduct the balancing test because it lacks a specific understanding of the collateral civil litigation.  441 U.S. at 229–230.  Consequently, the Court explained that:

> Under th[ose] circumstances, the better practice [is] for the District

_____

6(e).

[4] In their motion, the MDL Plaintiffs argued that they should be permitted to intervene in the original criminal case to seek disclosure of the grand jury transcripts under Federal Rule of Civil Procedure 24(b)(1)(B).  *See* Mot. at 9.  As DOJ Antitrust correctly points out, Rule 24(b)(1)(B) does not permit intervention in a criminal case, and indeed, there is no provision in the Federal Rules of Criminal Procedure for intervention in criminal matters.  *See* Opp'n at 4–6. Nevertheless, intervention is not required to seek disclosure of grand jury transcripts under Federal Rule of Criminal Procedure 6(e)(3)(E)(i).  *See* Fed. R. Crim. P. 6(e)(3)(E)(i).  The MDL Plaintiffs can thus petition this Court for release of grand jury transcripts without satisfying any formal intervention standard.  *See Petrol Stops*, 441 U.S.  at 220 ("recognition of the occasional need for litigants to have access to grand jury transcripts led to the provision in Fed. Rule Crim. Proc. [6(e)(3)(E)(i)] that disclosure of grand jury transcripts may be made 'when so directed by a court preliminarily to or in connection with a judicial proceeding'").

> Court [where the grand jury was impaneled], after making a written evaluation of the need for continued grand jury secrecy and a determination that the limited evidence before it showed that disclosure might be appropriate, to send the requested materials to the courts where the civil cases were pending. The [court overseeing the civil litigation], armed with their special knowledge of the status of the civil actions, then [can] consider[ ] the requests for disclosure in light of the [grand jury] court's evaluation of the need for continued grand jury secrecy. In this way, both the need for continued secrecy and the need for disclosure [can be] evaluated by the courts in the best position to make the respective evaluations.

*Id.* at 230–31. This "better practice" identified by the Supreme Court in *Petrol Stops*, *see id.*, was subsequently codified in the 1983 Amendments to the Federal Rules of Criminal Procedure. Rule 6(e)(3)(G) now provides, in relevant part, that:

> If the petition to disclose arises out of a judicial proceeding in another district, the petitioned court must transfer the petition to the other court unless the petitioned court can reasonably determine whether disclosure is proper. If the petitioned court decides to transfer, it must send to the transferee court the material sought to be disclosed, if feasible, and a written evaluation of the need for continued grand–jury secrecy.

Fed. R. Crim. P. 6(e)(3)(G).

Thus, *Petrol Stops* and Rule 6(e)(3)(G) command a three–step process. First, this Court must decide if it has sufficient knowledge of the MDL such that it can "reasonably determine whether disclosure is proper." Fed R. Crim. P 6(e)(3)(G). If this Court decides that it cannot make such a determination, then it must make a preliminary determination of whether "disclosure might be appropriate." *Petro Stops*, 441 U.S. at 230–31. If this Court finds that "disclosure might be appropriate," then it must produce a "written evaluation of the continued need for grand jury secrecy." *Id.* It is then up to Judge Sabraw of the MDL Court to consider this Court's evaluation of the ongoing need for grand jury secrecy and his own determination of the need for the disclosure in deciding which portions of the grand jury transcripts, if any, ought to be disclosed and for what purpose. *See id.*

1. <u>This Court's Ability to Determine Whether Disclosure is Proper</u>

While neither party has presented specific arguments on whether this Court "can reasonably determine whether disclosure is proper," it is clear to the Court that it cannot. Fed R. Crim. P 6(e)(3)(G). Indeed, this case is on all fours with *Petrol Stops*. 441 U.S. 211. There,

7

1   plaintiffs in a civil antitrust action in the District of Arizona petitioned the District Court for the

2   Central District of California, where related criminal price–fixing proceedings had been

3   conducted, for an order releasing certain grand jury transcripts.  *See id.* at 214–16.  The District

4   Court for the Central District of California ordered the release of the grand jury transcripts for use

5   in the civil litigation, and the Ninth Circuit affirmed.  *See id.* at 216–18.  The Supreme Court then

6   reversed, holding that the District Court for the Central District of California had abused its

7   discretion in ordering the release of the transcripts because it "had no knowledge of the civil

8   proceedings pending several hundred miles away in Arizona," and thus could not evaluate if the

9   "particularized need" for the grand jury transcripts "outweighed the need for continued grand jury

10  secrecy."  *Id.* at 228.

11          Precisely the same can be said of this case.  This Court does not have a full understanding

12  of the witnesses, crucial testimony, or disputed legal issues in the MDL.  It further has no specific

13  understanding of Mr. Hodge's deposition testimony, what inconsistency was exposed by the grand

14  jury transcripts, or how central that inconsistency is to the disposition of the MDL.  As a result, it

15  cannot determine how necessary the grand jury transcripts are and, therefore, cannot conduct the

16  balancing inquiry required by *Petrol Stops* and Rule 6(e)(3)(E)(i).

17          2.          Whether Disclosure Might be Appropriate

18          The Court next must decide if the "limited evidence before it show[s] that disclosure *might*

19  be appropriate."  *Petrol Stops*, 441 U.S. at 230 (emphasis added).  If MDL Plaintiffs clear this

20  lowered threshold, the Court must transfer the grand jury transcripts to Judge Sabraw and provide

21  him with a written evaluation of the ongoing need for grand jury secrecy so that he can conduct

22  the balancing test required by *Petrol Stops* and Rule 6(e)(3)(E)(i).  *See id.*; Fed. R. Crim. P.

23  6(e)(3)(E)(i).

24          Although the parties don't specifically discuss whether "disclosure might be appropriate,"

25  they offer several arguments that sound broadly in the necessity of the transcripts.  *Petrol Stops*,

26  441 U.S. at 230.  The MDL Plaintiffs claim that they need the grand jury testimony "because it

27  will enable the parties to refresh the recollection and impeach the testimony of trial witnesses and

28  deponents."  Mot. at 12.  This is true, the MDL Plaintiffs argue, even where witnesses and

United States District Court
Northern District of California

8

deponents intend to be fully honest because "memories fade over time" and it has been at least

five years since grand jury witnesses gave their testimony.  *See id.*  Moreover, the MDL Plaintiffs

claim that because Mr. Lischewski had these grand jury transcripts and already used them in

preparation of his own defense, denying use to the MDL Plaintiffs would amount to an injustice

because it would create an "[un]even playing field." *See id.* at 11 n.6.

DOJ Antitrust offers five arguments in response.  First, it says that a single inconsistent

statement in the deposition of Mr. Hodge does not constitute an injustice under *Petrol Stops*.  *See*

Opp'n at 7.  Second, it contends that the MDL Plaintiffs have been able to sufficiently question

and impeach all deposition witnesses.  *See id.* at 6–7.  Third, it argues that the MDL Plaintiffs

have failed to identify any "particularized need" for the remaining six grand jury transcripts (i.e.,

those possessed by Mr. Lischewski but not used to find an inconsistency in Mr. Hodge's

deposition testimony).  *See id.* at 7.  Fourth, it points out that if this Court simply orders Mr.

Lischewski to destroy any remaining copies of the grand jury transcript, there will be no injustice

against the MDL Plaintiffs because each side will be on a "[ ]level playing field" as to those

transcripts.  *See id.*  Finally, it argues that the MDL Plaintiffs have insufficiently tailored their

request to only those materials that are "needed."  *See id.* at 8.

The MDL Plaintiffs have met their modest burden of showing that "disclosure *might* be

appropriate." *Petrol Stops*, 441 U.S. at 230 (emphasis added).  First, that "[t]he need to impeach

testimony or refresh recollection at trial can establish a particularized need for disclosure of grand

jury transcripts" is well established.  *United States v. Fischbach and Moore, Inc.*, 776 F.2d 839,

845 (9th Cir. 1985); *see also Petrol Stops*, 441 U.S. at 222 n.12 ("As noted in *United States v.*

*Procter & Gamble Co.*, 356 U.S., at 683 . . . the typical showing of particularized need arises

when a litigant seeks to use 'the grand jury transcript at the trial to impeach a witness, to refresh

his recollection, to test his credibility and the like.'").  Some courts have extended this use to

impeachment or refreshing recollection during depositions as well as during trial.  *See Fischbach*,

776 F.2d at 845 (collecting cases).  Here, the MDL Plaintiffs encountered a specific instance in

which a witness, Mr. Hodge, was offering deposition answers that were inconsistent with previous

grand jury testimony.  *See* Mot. at 12.  That inconsistency, in addition to the large time interval

between the initial grand jury testimony and the civil litigation, lends credence to the MDL Plaintiffs' fear that future depositions and trial testimony will also be inconsistent with grand jury testimony.

The arguments advanced by DOJ Antitrust are better directed at Judge Sabraw.  It may well turn out that these grand jury transcripts are shown to be pointless in light of the MDL Plaintiffs' existing opportunity to question and impeach witnesses or that the single inconsistency in Mr. Hodge's testimony is the only discrepancy ever discovered.  But as other courts have explained, "[t]he Supreme Court envisioned a tandem process, with the [civil] trial court . . . applying the more exacting scrutiny of 'need' traditionally associated with the actual release of grand jury material to private litigants."  *In re Grand Jury Investigation of Uranium Indus.*, No. MISC. 78–0173, 1980 WL 1854 at *3 (D.D.C. June 6, 1980).  The role of this Court is more limited.  It need only decide if disclosure "might be appropriate," and DOJ Antitrust's arguments don't prevent the MDL Plaintiffs from satisfying that relatively low bar.

3.      Continued Need for Grand Jury Secrecy

Because the Court concludes that "disclosure might be appropriate," it must next provide Judge Sabraw with a "written evaluation of the need for continued grand–jury secrecy" so that he may weigh the secrecy interest against the "particularized need" for disclosure.  *Petrol Stops*, 441 U.S. at 217, 230; Fed. R. Crim. P. 6(e)(3)(G).  The Court concludes that the "need for continued grand–jury secrecy" is low.  *Id.*

The MDL Plaintiffs offer three reasons why the need for secrecy of the grand jury proceedings is lessened in this case.  First, they point out that Mr. Lischewski was already convicted by a jury and has since served his time and been released from prison, so there is no future secrecy need of this particular grand jury.  *See* Mot. at 13.  Second, they point out that there are no outstanding indictments in this case nor is there any prospect of future criminal charges being brought.  *See id.*  Finally, they contend that Mr. Lischewski, by inappropriately using the grand jury transcript in his civil defense and producing it to the MDL Plaintiffs for use in the deposition of Mr. Worsham, has already compromised whatever secrecy interest existed.  *See id.* Therefore, permitting disclosure under the supervision of the Judge Sabraw would do no

United States District Court
Northern District of California

1    additional violence to the policy goal undergirding Rule 6(e).

2           DOJ Antitrust responds by arguing that if the Court permits disclosure in this case, there

3    will be a chilling effect on the willingness of future grand jury witnesses to testify because they

4    will not be able to count on the indefinite secrecy of their testimony.  *See* Opp'n at 7–8.

5           Once again, *Petrol Stops* is the starting point for the analysis.  There, the Supreme Court

6    said that "the interests in grand jury secrecy, although reduced, are not eliminated merely because

7    the grand jury has ended its activities."  441 U.S. at 221.  The Court further explained that:

8           [I]n considering the effects of disclosure on grand jury proceedings,
            the courts must consider not only the immediate effects upon a
9           particular grand jury, but also the possible effect upon the
            functioning of future grand juries. Persons called upon to testify will
10          consider the likelihood that their testimony may one day be
            disclosed to outside parties. Fear of future retribution or social
11          stigma may act as powerful deterrents to those who would come
            forward and aid the grand jury in the performance of its duties.

12

13   *Id.*  Subsequent case law has added detail to the general proposition delineated in *Petrol Stops*.  In

14   *Fischbach and Moore, Inc.*, for example, the Ninth Circuit held that the district court had

15   underestimated the ongoing need for grand jury secrecy even though the grand jury had ended its

16   activities, in part, because 1) one of the indicted defendants was acquitted and thus had an interest

17   in preventing the disclosure of ultimately unproven allegations and 2) there was an outstanding

18   indictment that created a "limited possibility of another criminal trial."  776 F.2d at 844.

19          However, nothing similar is present here.  Mr. Lischewski has been tried, convicted, and

20   has served his time.  All other defendants, including the employers of six of the grand jury

21   witnesses whose transcripts are being sought, pled guilty.[5]  *Cf. Petrol Stops*, 441 U.S. at 221

22   ("[c]oncern as to the future consequences of frank and full testimony is heightened where the

23   witness is an employee of a company under investigation").  There are no outstanding indictments,

24   and DOJ Antitrust does not suggest that there is even a "limited possibility" of further criminal

25   action.  *Id.*  Moreover, six of the seven grand jury witnesses whose transcripts are being sought

26   testified substantively at Mr. Lischewski's trial, which further reduces the chance that grand jury

27   _____

28   [5] The seventh, Mr. Curto, was employed by Tri Marine.  *See* Mot. at 6.  Tri Marine was never a
     defendant, nor is there any suggestion they may become a defendant at some point in the future.

1   witnesses will be subject to "future retribution or social stigma" because their participation in the

2   criminal proceedings has already been disclosed to the public.[6]  *See* Docket Nos. 488-1, 524-1,

3   545-1, 571-1, 574-1 (trial logs); Petrol *Stops*, 441 U.S. at 221.

4        Other cases have also emphasized that where some disclosure has already happened, the

5   ongoing need for secrecy is diminished.  *See, e.g.*, *In re Grand Jury Investigation of Uranium*

6   *Indus.*, 1980 WL 1854 at *2 (holding that because the judge overseeing the civil action already

7   disclosed the names of those subpoenaed by the grand jury, it is unnecessary to withhold the

8   transcripts on the ground that they might reveal allegations against third parties or identify

9   witnesses).  Similarly, here, the grand jury testimony was already (albeit improperly) retained,

10  used, and produced by Mr. Lischewski.  The parties to the MDL are aware of the identities of the

11  grand jury witnesses and the content of their testimony, so the need for this Court to closely guard

12  those transcripts is lessened.

13       DOJ Antitrust recites the generalized concerns delineated in *Petrol Stops*, but it fails to

14  identify anything particular to this case that merits heightened caution.  Those generalized

15  concerns are further assuaged by the protective order being used in the MDL and the MDL

16  Plaintiffs' uncontested assertion that the grand jury transcripts will be designated as "highly

17  confidential," thereby mitigating the risk of disclosure to the public.  *See* Mot. at 10, 11 n.7

18  (describing the civil protective order and the status of the transcripts); *In re Grand Jury*

19  *Investigation of Uranium Indus.*, 1980 WL 1854 at *2 n.4 (approving transfer of grand jury

20  transcripts and noting that "[t]here is a detailed protective order in effect in the private antitrust

21  litigation, limiting disclosure of information gathered during discovery to the general public").

22       It is, therefore, the opinion of the Court that the ongoing need for secrecy in this case is not

23  substantial or particularized.  The only interest lies in the generalized concern of deterring future

24  grand jury witnesses, a concern that is implicated in all cases where grand jury transcripts are

25  disclosed.

26

27       ─────────────────

28  [6] Mr. White, formerly of Chicken of the Sea, did not appear as a trial witness in any daily trial log or court reporter transcript even though he was listed as an expected witness in the United States' Second Amended Witness List.  *See* Docket No. 412 at 4.

United States District Court
Northern District of California

1

### III.     <u>CONCLUSION</u>

2        For the foregoing reasons, the Court hereby denies the MDL Plaintiffs' motion for

3   declaratory judgment and transfers the grand jury transcripts to the MDL Court for a final

4   disclosure determination.

5        This order disposes of Docket No. 716.

6

7        **IT IS SO ORDERED**.

8

9   Dated: March 22, 2023

10

11   _____

12   EDWARD M. CHEN
     United States District Judge